1  Todd A. Walburg (SBN 213063)
   twalburg@baileyglasser.com
2  **Bailey & Glasser LLP**
   1999 Harrison Street, Suite 660
3  Oakland, California 94612
   Telephone: (510) 272-8000
4  Facsimile: (510) 463-0291

5  C. Brooks Cutter (SBN 121407)
   bcutter@cutterlaw.com
6  John R. Parker, Jr. (SBN 257761)
   jparker@cutterlaw.com
7  **Cutter Law P.C.**
   401 Watt Avenue
8  Sacramento, California 95864
   Telephone: (916) 290-9400
9  Facsimile: (916) 588-9330

10 David C. Wright (SBN 177468)
   dcw@mccunewright.com
11 **McCune Wright Arevalo LLP**
   3281 Guasti Road, Suite 100
12 Ontario, California 91761
   Telephone: (909) 557-1250
13 Facsimile: (909) 557-1275

14 *Additional Counsel Listed on Signature Page*
   ***Attorneys for Plaintiffs and the Putative Class***
15

16           **IN THE UNITED STATES DISTRICT COURT**

17          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

18

| | |
|---|---|
| 19  CRISTIAN PASCAL; MARIA MENGONI; | Case No. 8:20-cv-00492-JLS-JDE |
| 20  DARNELL MILTON; KATHY WARNER-STANTON; KELLY KINDT; LEISA | |
| 21  JOHNSON; JORDANE JOHNSON; EBONY JONES; PATRICK | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| 22  MCMORROW; TINISHA MILLER; ANIL PRASAD; KIA SINGLETON; TRACY | |
| 23  VAN BUREN; ANNE MARIE AMARENA; JUSTIN MCNEILL; | Demand For Jury Trial |
| 24  WILLIAM GARCIA JR.; HATTIE BAILEY; REGINA STEVENS; | |
| 25  ELIZABETH RODRIGUEZ; LEMAR TAYLOR; RONALD THOMAS; EBONY | |
| 26  ROBERTSON; AVON MARTIN; JUDI MOORE; EASTER COMMON; THERESA | |
| 27  MABERY; WILLIAM JOHNSON; LYNDSY HEWEY; BARBARA MORAS; | |
| 28  MASON LOH; ROBERT CARNEVALE; LAMONT GIBSON; LAROY GIBSON; | |

Second Amended Class Action Complaint
Case No. 8:20-cv-00492-JLS-JDE

1  MICHELLE YUHAS; DORIS TUCKER;
   SHUNSETHA ALEXANDER; LAKITA
2  BUCHANAN; ANTHONY MCGLOWN;
   STACEY WAGNER; SARAI JIMENEZ;
3  JAMES MONTGOMERY; URSULA
   GERSON; and RONA TAYLOR, on behalf
4  of themselves and all others similarly
   situated,
5
              Plaintiffs,
6
        v.
7
   NISSAN NORTH AMERICA, INC.,
8
              Defendant.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Second Amended Class Action Complaint
Case No. 8:20-cv-00492-JLS-JDE

# TABLE OF CONTENTS

*Page*

TABLE OF CONTENTS..................................................................................................i

I.      INTRODUCTION ............................................................................................1

II.     PARTIES ..........................................................................................................3

III.    JURISDICTION AND VENUE ......................................................................6

IV.     PLAINTIFF-SPECIFIC ALLEGATIONS .....................................................7

        A.      California Plaintiffs .............................................................................7

                1.      Plaintiff Cristian Pascal.............................................................7

                2.      Plaintiff Maria Mengoni ...........................................................9

                3.      Plaintiff Leisa Johnson...............................................................9

                4.      Plaintiff Jordane Johnson........................................................10

                5.      Plaintiff Ebony Jones ..............................................................11

                6.      Plaintiff Patrick McMorrow....................................................12

                7.      Plaintiff Tinisha Miller ............................................................13

                8.      Plaintiff Anil Prasad................................................................14

                9.      Plaintiff Tracy Van Buren........................................................15

                10.     Plaintiff Kia Singleton.............................................................16

        B.      Alabama Plaintiffs .............................................................................17

                1.      Plaintiff Darnell Milton............................................................17

                2.      Plaintiff Kathy Warner-Stanton ..............................................18

                3.      Plaintiff Easter Common..........................................................20

        C.      Arkansas Plaintiff ..............................................................................21

                1.      Plaintiff Kelly Kindt ...............................................................21

        D.      Connecticut Plaintiff..........................................................................22

                1.      Plaintiff Anne Marie Amarena.................................................22

        E.      Delaware Plaintiff...............................................................................23

                1.      Plaintiff Justin McNeill............................................................23

i

F.   Florida Plaintiff ........................................................................24
     1.   Plaintiff William Garcia Jr. ...........................................24
G.   Georgia Plaintiffs .....................................................................25
     1.   Plaintiff Hattie Bailey ...................................................25
     2.   Plaintiff Regina Stevens .................................................26
H.   Illinois Plaintiffs ......................................................................27
     1.   Plaintiff Elizabeth Rodriguez.........................................27
     2.   Plaintiff Lemar Taylor ...................................................28
I.   Kansas Plaintiff ........................................................................29
     1.   Plaintiff Ronald Thomas .................................................29
J.   Louisiana Plaintiff ....................................................................30
     1.   Plaintiff Ebony Robertson...............................................30
K.   Maryland Plaintiff ....................................................................31
     1.   Plaintiff Avon Martin .....................................................31
L.   Michigan Plaintiff .....................................................................32
     1.   Plaintiff Judi Moore .......................................................32
M.   Missouri Plaintiff ......................................................................33
     1.   Plaintiff Theresa Mabery ................................................33
N.   Nevada Plaintiff ........................................................................34
     1.   Plaintiff William Johnson ...............................................34
O.   New Hampshire Plaintiff...........................................................35
     1.   Plaintiff Lyndsy Hewey ..................................................35
P.   New Jersey Plaintiffs.................................................................36
     1.   Plaintiff Barbara Moras...................................................36
     2.   Plaintiff Mason Loh ........................................................37
Q.   New York Plaintiff ....................................................................38
     1.   Plaintiff Robert Carnevale ..............................................38
R.   Ohio Plaintiff............................................................................39

ii

1         1.    Plaintiff Lamont Gibson ...................................................39

2    S.    Pennsylvania Plaintiffs .......................................................40

3         1.    Plaintiff LaRoy Gibson ...................................................40

4         2.    Plaintiff Michelle Yuhas .................................................41

5    T.    South Carolina Plaintiff .......................................................42

6         1.    Plaintiff Doris Tucker ....................................................42

7    U.    Tennessee Plaintiffs .............................................................43

8         1.    Plaintiff Shunsetha Alexander .......................................43

9         2.    Plaintiff Lakita Buchanan ..............................................44

10         3.    Plaintiff Anthony McGlown ..........................................45

11         4.    Plaintiff Stacey Wagner .................................................46

12    V.    Texas Plaintiffs ....................................................................47

13         1.    Plaintiff Sarai Jimenez ...................................................47

14         2.    Plaintiff James Montgomery ..........................................48

15    W.    Virginia Plaintiff ..................................................................49

16         1.    Plaintiff Ursula Gerson ..................................................49

17    X.    Washington Plaintiff .............................................................50

18         1.    Plaintiff Rona Taylor .....................................................50

19 V.    PLAINTIFFS' GENERAL ALLEGATIONS ...................................51

20 VI.    FACTS COMMON TO ALL CAUSES OF ACTION .........................62

21    A.    The Dangers of Carbon Monoxide Exposure ...............................62

22    B.    The Defect .............................................................................66

23    C.    Nissan's Technical Service Bulletins (TSBs) and Recalls Between 2012-

24         2020 Acknowledge Problems with Exhaust Leaks in Certain Class Vehicles

25         .......................................................................................67

26    D.    The September 11, 2019 TSB Specifically Discusses Exhaust Leaks in

27         Certain Nissan Altima Vehicles ...................................................70

28    E.    The Class Vehicles ...................................................................70

iii

1    F.    Class Vehicles' Warranty ...............................................................................71

2    G.    Notice .............................................................................................................71

3    H.    Nissan's Willing Omissions ...........................................................................73

4    I.    Carbon Monoxide Exposure in Nissan Vehicles Continues to be Reported by

5    Consumers ......................................................................................................74

6  VII.    TOLLING OF STATUTES OF LIMITATIONS.......................................................74

7  VIII.  CLASS ALLEGATIONS ....................................................................................75

8  IX.    CLAIMS ...........................................................................................................78

9    A.    Claims Brought on Behalf of the Nationwide Class ......................................78

10    COUNT 1: VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY

11    ACT (15 U.S.C. § 2301, et seq.).....................................................78

12    B.    Claims Brought on Behalf of the California Class .........................................80

13    COUNT 2: VIOLATIONS OF THE CONSUMER LEGAL REMEDIES

14    ACT ("CLRA") (Cal. Civ. Code § 1750, et seq.)...........................80

15    COUNT 3: VIOLATIONS OF THE CALIFORNIA UNFAIR

16    COMPETITION LAW (Cal. Bus. & Prof. Code § 17200) ...............82

17    COUNT 4: VIOLATION OF CALIFORNIA FALSE ADVERTISING

18    LAW  (Cal. Bus. & Prof. Code § 17500, et seq.) .............................83

19    COUNT 5: VIOLATIONS OF THE SONG-BEVERLY ACT – BREACH

20    OF IMPLIED WARRANTY  (Cal. Civ. Code §§ 1792, 1791.1, et

21    seq.) ................................................................................................85

22    COUNT 6: VIOLATION OF THE SONG-BEVERLY CONSUMER

23    WARRANTY ACT FOR BREACH OF EXPRESS WARRANTIES

24    (Cal. Civ. Code § 1793.2(d) & 1791.2) ............................................86

25    COUNT 7: BREACH OF IMPLIED WARRANTY  (Cal. U. Com. Code

26    § 231) ..............................................................................................88

27    COUNT 8: BREACH OF EXPRESS WARRANTY  (Cal. U. Com. Code

28    § 2313) ............................................................................................89

iv

Second Amended Class Action Complaint
Case No. 8:20-cv-00492-JLS-JDE

COUNT 9: BREACH OF CONTRACT/COMMON LAW WARRANTY
(Under California Law)....................................................................91

COUNT 10: COMMON LAW FRAUDULENT CONCEALMENT  (Under
California Law) ...............................................................................92

C.      Claims Brought on Behalf of the Alabama Class .........................................93

COUNT 11: VIOLATIONS OF ALABAMA DECEPTIVE TRADE
PRACTICES ACT  (Ala. Code § 8-19-1, et seq.)..............................93

COUNT 12: BREACH OF EXPRESS WARRANTY  (Ala. Code §§ 7-2-
313 and 7-2A-210) ...........................................................................96

COUNT 13: BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY  (Ala. Code §§ 7-2-314 and 7-2A-212).......98

D.      Claims Brought on Behalf of the Arkansas Class........................................99

COUNT 14: VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE
PRACTICES ACT  (Ark. Code. Ann. §§ 4-88-01, et seq.)...............99

COUNT 15: BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY ...................................................................102
(Ark. Code §§ 4-2-314 and 4-2A-212) ........................102

COUNT 16: BREACH OF EXPRESS WARRANTY  (Ark. Code §§ 4-2-
313 and 4-2A-210) .........................................................................104

E.      Claims Brought on Behalf of the Connecticut Class ..................................107

COUNT 17: VIOLATIONS OF CONNECTICUT UNLAWFUL TRADE
PRACTICES ACT  (Conn. Gen. Stat. § 42-110A, et seq.)..............107

COUNT 18: BREACH OF EXPRESS WARRANTY  (Conn. Gen. Stat.
Ann. § 42A-2-313).........................................................................109

COUNT 19: BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY  (Conn. Gen. Stat. Ann. § 42A-2-314)......112

F.      Claims Brought on Behalf of the Delaware Class .......................................113

Second Amended Class Action Complaint
Case No. 8:20-cv-00492-JLS-JDE

COUNT 20: VIOLATIONS OF THE DELAWARE CONSUMER FRAUD
ACT  (6 Del. Code § 2513, et seq.) ................................................. 113

COUNT 21: BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY  (6 Del. Code §§ 2-314 and 2A-212)......... 116

COUNT 22: BREACH OF EXPRESS WARRANTY  (1 Del. Code §§ 2-313
and 2A-210) ................................................................................. 117

G.    Claims Brought on Behalf of the Florida Class ................................. 120

COUNT 23: VIOLATION OF FLORIDA UNFAIR & DECEPTIVE
TRADE PRACTICES ACT  (Fla. Stat. § 501.201, et seq.) ............. 120

COUNT 24: BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY  (Fla. Stat. § 672.314) ............................... 123

COUNT 25: BREACH OF EXPRESS WARRANTY  (Fla. Stat. § 672.313)
................................................................................................... 124

COUNT 26: BREACH OF CONTRACT/COMMON LAW WARRANTY
(Based on Florida Law) ............................................................... 126

COUNT 27: FRAUD BY CONCEALMENT  (Based on Florida Law) .... 126

COUNT 28: UNJUST ENRICHMENT  (Based on Florida Law) ............. 128

H.    Claims Brought on Behalf of the Georgia Class ................................. 129

COUNT 29: BREACH OF EXPRESS WARRANTY  (Ga. Code. Ann.
§§ 11-2-313 and 11-2A-210) ......................................................... 129

COUNT 30: BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY  (Ga. Code. Ann. §§ 11-2-314 and 11-2A-
212) ............................................................................................. 130

I.    Claims Brought on Behalf of the Illinois Class ................................. 131

COUNT 31: VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND
DECEPTIVE TRADE PRACTICES ACT  (815 ILCS 505/1, et seq.
and 720 ILCS 295/1a) ................................................................... 131

Second Amended Class Action Complaint
Case No. 8:20-cv-00492-JLS-JDE

COUNT 32: BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY  (810 ILCS §§ 5/2-314 and 5/2A-212)......134
COUNT 33: BREACH OF EXPRESS WARRANTY  (810 ILCS §§ 5/2-313
and 5/2A-210) .................................................................................136
COUNT 34: BREACH OF COMMON LAW WARRANTY  (Based on
Illinois Law)...................................................................................137
COUNT 35: FRAUD BY CONCEALMENT  (Based on Illinois Law) ....138
COUNT 36: UNJUST ENRICHMENT  (Based on Illinois Law).............140
J.    Claims Brought on Behalf of the Kansas Class ................................141
COUNT 37: VIOLATIONS OF THE KANSAS CONSUMER
PROTECTION ACT  (Kan. Stat. Ann. § 50-623, et seq.) ...............141
COUNT 38: BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY  (Kan. Stat. §§ 84-2-314 and 84-2A-212) .144
COUNT 39: BREACH OF EXPRESS WARRANTY  (Kan. Stat. §§ 84-2-
314 and 84-2A-210) .......................................................................145
K.    Claims Brought on Behalf of the Louisiana Class ....................................147
COUNT 40: VIOLATIONS OF THE LOUISIANA UNFAIR TRADE
PRACTICES AND CONSUMER PROTECTION LAW  (La. Rev.
Stat. § 51:1401, et seq.)..................................................................147
COUNT 41: BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY/WARRANTY AGAINST REDHIBITORY
DEFECTS  (La. Civ. Code Art. 2520, 2524)...................................150
L.    Claims Brought on Behalf of the Maryland Class ....................................150
COUNT 42: VIOLATIONS OF THE MARYLAND CONSUMER
PROTECTION ACT  (Md. Code Com. Law § 13-101, et seq.) ......150
COUNT 43: MARYLAND LEMON LAW  (Md. Code. Com. Law § 14-
1501, et seq.) .................................................................................153

vii

COUNT 44: BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY  (Md. Code Com. Law §§ 2-314 and 2A-212)
...................................................................................................154

COUNT 45: BREACH OF EXPRESS WARRANTY  (Md. Code Com. Law
§§ 2-313 and 2a-210) .......................................................................155

M.    Claims Brought on Behalf of the Michigan Class ....................................157

COUNT 46: VIOLATIONS OF THE MICHIGAN CONSUMER
PROTECTION ACT  (Mich. Comp. Laws § 445.903, et seq.)........157

COUNT 47: BREACH OF EXPRESS WARRANTY  (Mich. Comp. Laws
§§ 440.2313 and 440.2860) ............................................................160

COUNT 48: BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Mich. Comp. Laws §§ 440.2314 and
440.2860) .......................................................................................162

N.    Claims Brought on Behalf of the Missouri Class .....................................163

COUNT 49: VIOLATIONS OF MISSOURI MERCHANDISING
PRACTICES ACT  (Mo. Rev. Stat. § 407.010, et seq.)...................163

COUNT 50: BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY  (Mo. Stat. §§ 400.2-314 and 400.2A-212)
...................................................................................................165

COUNT 51: BREACH OF EXPRESS WARRANTY  (Mo. Stat. §§ 400.2-
313 and 400.2A-210) .......................................................................166

O.    Claims Brought on Behalf of the Nevada Class .........................................168

COUNT 52: VIOLATIONS OF THE NEVADA DECEPTIVE TRADE
PRACTICES ACT  (Nev. Rev. Stat. § 598.0903, et seq.) ...............168

COUNT 53: BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY  (N.R.S. §§ 104.2314 and 104A.2212)......171

COUNT 54: BREACH OF EXPRESS WARRANTY  (N.R.S. §§ 104.2313
and 104A.2210)...............................................................................172

Second Amended Class Action Complaint
Case No. 8:20-cv-00492-JLS-JDE

P.  Claims Brought on Behalf of the New Hampshire Class............................174

COUNT 55: VIOLATIONS OF N.H. CONSUMER PROTECTION ACT  (N.H. Rev. Stat. Ann. § 358-a:1, et seq.)..........................................174

COUNT 56: BREACH OF IMPLIED WARRANTY OF  MERCHANTABILITY  (N.H. Rev. Stat. §§ 382-A:2-314 and 382-A:2A-212) .........................................................................................177

COUNT 57: BREACH OF EXPRESS WARRANTY (N.H. Rev. Stat.  §§ 382-A:2-313 and 382-A:2A-210) ................................................178

Q.  Claims Brought on Behalf of the New Jersey Class ...................................179

COUNT 58: VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT  (N.J. Stat. Ann. § 56:8-1, et seq.)........................................................179

COUNT 59: BREACH OF EXPRESS WARRANTY  (N.J. Stat. Ann.  § 12A:2-313) ........................................................................................183

COUNT 60: BREACH OF IMPLIED WARRANTY OF  MERCHANTABILITY  (N.J. Stat. Ann. § 12A:2-314) ..................184

COUNT 61: BREACH OF CONTRACT  (Based on New Jersey Law)....185

COUNT 62: UNJUST ENRICHMENT  (Based on New Jersey Law) ......186

R.  Claims Brought on Behalf of the New York Class ....................................187

COUNT 63: VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW  § 349  (N.Y. Gen. Bus. Law § 349) ..................................................187

COUNT 64: VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW  § 350  (N.Y. Gen. Bus. Law § 350) ..................................................190

COUNT 65: BREACH OF IMPLIED WARRANTY OF  MERCHANTABILITY  (N.Y. U.C.C. Law §§ 2-314 and 2A-212) 192

COUNT 66: BREACH OF EXPRESS WARRANTY  (N.Y. U.C.C. Law  §§ 2-313 and 2A-210) ..............................................................193

S.  Claims Brought on Behalf of the Ohio Class............................................194

ix

COUNT 67: VIOLATIONS OF THE OHIO CONSUMER SALES
            PRACTICES ACT  (Ohio Rev. Code §§ 1345.01, *et seq.*)..............194
COUNT 68: BREACH OF IMPLIED WARRANTY OF
            MERCHANTABILITY  (Ohio Rev. Code Ann. §§ 1302.27 and
            1310.19) ........................................................................197
COUNT 69: BREACH OF EXPRESS WARRANTY  (Ohio Rev. Code
            § 1302.26, *et seq.*) (U.C.C. § 2-313)) ...............................198
T.     Claims Brought on Behalf of the Pennsylvania Class ...............................200
COUNT 70: VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE
            PRACTICES AND CONSUMER PROTECTION LAW  (73 Pa. Stat.
            § 201-1, *et seq.*)..................................................................200
COUNT 71: BREACH OF EXPRESS WARRANTY  (Under Pennsylvania
            Law) ...............................................................................202
COUNT 72: BREACH OF IMPLIED WARRANTY  (Under Pennsylvania
            Law) ...............................................................................204
U.     Claims Brought on Behalf of the South Carolina Class.............................205
COUNT 73: VIOLATIONS OF THE SOUTH CAROLINA UNFAIR
            TRADE PRACTICES ACT  (S.C. Code Ann. § 39-5-10, *et seq.*)...205
COUNT 74: BREACH OF IMPLIED WARRANTY OF
            MERCHANTABILITY  (S.C. Code §§ 36-2-314 and 36-2A-212).208
COUNT 75: BREACH OF EXPRESS WARRANTY  (S.C. Code §§ 36-2-
            313 and 36-2A-210)...........................................................208
V.     Claims Brought on Behalf of the Tennessee Class ....................................210
COUNT 76: VIOLATIONS OF TENNESSEE  CONSUMER
            PROTECTION ACT OF 1977  (Tenn. Code Ann. § 47-18-101, et
            seq.) ................................................................................210

Second Amended Class Action Complaint
Case No. 8:20-cv-00492-JLS-JDE

COUNT 77: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY  (Tenn. Code §§ 47-2-314 and 47-2A-212) ..................................................................................213

COUNT 78: BREACH OF EXPRESS WARRANTY  (Tenn. Code §§ 47-2-313 and 47-2A-210)........................................................214

W.    Claims Brought on Behalf of the Texas Class ...........................................216

COUNT 79: VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT  (Tex. Bus. & Com. Code § 17.41, *et seq.*).......216

COUNT 80: BREACH OF EXPRESS WARRANTY  (Tex. Bus. & Com. Code § 2.313)..........................................................................218

COUNT 81: BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY  (Tex. Bus. & Com. Code § 2.314) ...........220

X.    Claims Brought on Behalf of the Virginia Class .......................................221

COUNT 82: VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT  (Va. Code Ann. §§ 59.1-196, et seq.) ...........221

COUNT 83: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY  (Va. Code §§ 8.2-314 and 8.2A-212).......223

COUNT 84: BREACH OF EXPRESS WARRANTY  (Va. Code §§ 8.2-313 and 8.2A-210) ..........................................................................224

Y.    Claims Brought on Behalf of the Washington Class ..................................226

COUNT 85: VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT  (Wash. Rev. Code Ann. § 19.86.010, et seq.) ..................................................................................226

COUNT 86: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY  (Wash. Rev. Code §§ 62A.2-313 and 62A.2A-210)....................................................................229

COUNT 87: BREACH OF EXPRESS WARRANTY  (Wash. Rev. Code §§ 62A.2-313 and 62A.2A-210).......................................230

xi

COUNT 88: FRAUDUENT CONCEALMENT AND/OR OMISSION
(Based on Washington Law)...............................................232
COUNT 89: UNJUST ENRICHMENT  (Based on Washington Law)......234
X.     PRAYER FOR RELIEF .......................................................235
JURY DEMAND ....................................................237

Second Amended Class Action Complaint
Case No. 8:20-cv-00492-JLS-JDE

1.      Plaintiffs CRISTIAN PASCAL, MARIA MENGONI, DARNELL MILTON, KATHY WARNER-STANTON, KELLY KINDT, LEISA JOHNSON, JORDANE JOHNSON, EBONY JONES, PATRICK MCMORROW, TINISHA MILLER, ANIL PRASAD, KIA SINGLETON, TRACY VAN BUREN, ANNE MARIE AMARENA, JUSTIN MCNEILL, WILLIAM GARCIA JR., HATTIE BAILEY, REGINA STEVENS, ELIZABETH RODRIGUEZ, LEMAR TAYLOR, RONALD THOMAS, EBONY ROBERTSON, AVON MARTIN, JUDI MOORE, EASTER COMMON, THERESA MABERY, WILLIAM JOHNSON, LYNDSY HEWEY, BARBARA MORAS, MASON LOH, ROBERT CARNEVALE, LAMONT GIBSON, LAROY GIBSON, MICHELLE YUHAS, DORIS TUCKER, SHUNSETHA ALEXANDER, LAKITA BUCHANAN, ANTHONY MCGLOWN, STACEY WAGNER, SARAI JIMENEZ, JAMES MONTGOMERY, URSULA GERSON, and RONA TAYLOR, on behalf of themselves and the putative class (hereinafter referred to as "Plaintiffs"), hereby bring this amended complaint against Defendant NISSAN NORTH AMERICA, INC. (hereinafter referred to as "Defendant" or "Nissan"), and allege as follows:

## I.      INTRODUCTION

2.      This nation-spanning, automotive safety defect class action was brought against Nissan because certain of its vehicles (the "Class Vehicles") contain a dangerous defect that allows carbon monoxide to enter the passenger compartment.[1] This carbon monoxide exposure puts drivers and passengers at risk, especially children seated in the rear of the vehicle where the carbon monoxide levels are most pronounced.

3.      Nissan, through testing, inspections, TSBs, recalls, industry and company knowledge, National Highway Traffic Safety Administration ("NHTSA") complaints,

---

[1] 2002-2018 Nissan Altima; 2008-2013 Nissan Altima Coupe; 2004-2018 Nissan Maxima; 2003-2018 Nissan Murano; 2012-2018 Nissan Versa; 2014-2018 Infiniti Q50; and 2014-2018 Infiniti Q70.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

consumer complaints, online messages, the strikingly similar and heavily publicized Ford Explorer carbon monoxide debacle, and other means, knew that its vehicles suffered from the carbon monoxide defect.

4.    The carbon monoxide defect manifests when the recirculation mode in the HVAC system is being used, and is exacerbated by the following: (a) the design of the tail pipes; (b) the location and design of the air duct drafter outlet (for example, Nissan part no. 76805-9DF0A in the 2015 Nissan Altima) which is not sealed and allows exhaust and carbon monoxide to enter the passenger compartment under certain conditions; (c) several unsealed seams, orifices, seals, and other openings in the rear section of the vehicle, including the trunk lid, that allow exhaust and carbon monoxide to enter the passenger compartment; (d) the lack of a carbon monoxide sensor in the passenger compartment to alert the occupants of carbon monoxide exposure; and (e) the exhaust manifold and exhaust tubes are susceptible to leaks and cracks that emit carbon monoxide-rich exhaust, as noted in Nissan's "silent recalls," including Technical Service Bulletin NTB19-0006a, dated September 11, 2019 ("Nissan TSB"), which applies to 2015-2017 Nissan Altimas. See Nissan TSB attached hereto as Exhibit A.

5.    Nissan is aware of the dangers of carbon monoxide leakage into the rear of the Class Vehicles. For example, the 2015 Nissan Altima Owner's Manual includes the following warning:

⚠ **WARNING**

- **Do not drive with the trunk lid open. This could allow dangerous exhaust gases to be drawn into the vehicle. For additional information, refer to "Exhaust gas (carbon monoxide)" in the "Starting and driving" section of the manual.**

6.    In spite of this known risk, Nissan has designed the Class Vehicles in such a manner that allows dangerous exhaust gases to be drawn into the vehicle.

2

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

7.      A feasible alternative design that would prevent dangerous carbon monoxide exposure to occupants is a simple and low-cost software reprogramming that switches the HVAC system from recirculation mode to fresh air mode under certain parameters. The lack of such a system is in itself a defect.

8.      Instead of recalling its vehicles and making this change, or otherwise actively attempting to resolve the defects, Nissan continued selling its products.  At first, Nissan did nothing, and then it conducted a series of covert recalls and inspections that revealed exhaust leakage concerns in certain Class Vehicles.

9.      But Nissan should not be able to sweep the carbon monoxide defect under the rug with half-hearted, non-publicized recalls. Numerous Class members erroneously believed that they purchased safe, reliable vehicles when, in fact, Nissan's defective vehicles leak dangerous carbon monoxide into the passenger cabin, and will require repairs to function safely. Nissan should account for the diminished value and repairs that its products require before purchasers and lessors may operate them safely.

## II.    PARTIES

10.    Plaintiff Cristian Pascal, an adult male, is currently a resident and citizen of White City, Oregon, and was previously (and at the time of filing the original complaint) a resident of Orange County, California.

11.    Plaintiff Maria Mengoni, an adult female, is a resident and citizen of Orange County, California.

12.    Plaintiff Darnell Milton, an adult male, is a resident of Birmingham, Alabama.

13.    Plaintiff Kathy Warner-Stanton, an adult female, is a resident of Decatur, Alabama.

14.    Plaintiff Kelly Kindt, an adult female, is a resident of Hot Springs, Arkansas.

15.    Plaintiff Leisa Johnson, an adult female, is a resident of Paramount, California.

3

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

16.   Plaintiff Jordane Johnson, an adult female, is a resident of Long Beach, California.

17.   Plaintiff Ebony Jones, an adult female, is a resident of Los Angeles, California.

18.   Plaintiff Patrick McMorrow, an adult male, is a resident of San Diego, California.

19.   Plaintiff Tinisha Miller, an adult female, is a resident of Oakley, California.

20.   Plaintiff Anil Prasad, an adult male, is a resident of San Francisco, California.

21.   Plaintiff Kia Singleton, an adult female, is a resident of Sylmar, California.

22.   Plaintiff Tracy Van Buren, an adult female, is a resident of Gardena, California.

23.   Plaintiff Anne Marie Amarena, an adult female, is a resident of Wethersfield, Connecticut.

24.   Plaintiff Justin McNeill, an adult male, is a resident of Wilmington, Delaware.

25.   Plaintiff William Garcia Jr., an adult male, is a resident of Tampa, Florida.

26.   Plaintiff Hattie Bailey, an adult female, is a resident of McDonough, Georgia.

27.   Plaintiff Regina Stevens, an adult female, is a resident of Jonesboro, Georgia.

28.   Plaintiff Elizabeth Rodriguez, an adult female, is a resident of Chicago, Illinois.

29.   Plaintiff Lemar Taylor, an adult male, is a resident of Chicago, Illinois.

30.   Plaintiff Ronald Thomas, an adult, male, is a resident of Kansas City, Kansas.

31.   Plaintiff Ebony Robertson, an adult female, is a resident of New Iberia, Louisiana.

4

32.    Plaintiff Avon Martin, an adult female, is a resident of Elkridge, Maryland.

33.    Plaintiff Judi Moore, an adult female, is a resident of Warren, Michigan.

34.    Plaintiff Easter Common, an adult female, is a resident of Tchula, Mississippi.

35.    Plaintiff Theresa Mabery, an adult female, is a resident of Kansas City, Missouri.

36.    Plaintiff William Johnson, an adult male, is a resident of North Las Vegas, Nevada.

37.    Plaintiff Lyndsy Hewey, an adult female, is a resident of Hampton, New Hampshire.

38.    Plaintiff Barbara Moras, an adult female, is a resident of Kenilworth, New Jersey.

39.    Plaintiff Mason Loh, an adult male, is a resident of New York, New York.

40.    Plaintiff Robert Carnevale, an adult male, is a resident of Whitesboro, New York.

41.    Plaintiff Lamont Gibson, an adult male, is a resident of Cleveland, Ohio.

42.    Plaintiff LaRoy Gibson, an adult male, is a resident of North Versailles, Pennsylvania.

43.    Plaintiff Michelle Yuhas, an adult female, is a resident of Erie, Pennsylvania.

44.    Plaintiff Doris Tucker, an adult female is a resident of Florence, South Carolina.

45.    Plaintiff Shunsetha Alexander, an adult female, is a resident of Memphis, Tennessee.

46.    Plaintiff Lakita Buchanan, an adult female, is a resident of Madison, Tennessee.

47.    Plaintiff Anthony McGlown, an adult male, is a resident of Memphis, Tennessee.

5

48.    Plaintiff Stacey Wagner, an adult female, is a resident of Hixson, Tennessee.

49.    Plaintiff Sarai Jimenez, an adult female, is a resident of Hitchcock, Texas.

50.    Plaintiff James Montgomery, an adult male, is a resident of Fort Worth, Texas.

51.    Plaintiff Ursula Gerson, an adult female, is a resident of Falls Church, Virginia.

52.    Plaintiff Rona Taylor, an adult female, is a resident of Auburn, Washington.

53.    Plaintiffs bring this lawsuit on behalf of themselves, the putative class, and the general public.

54.    Defendant Nissan North America, Inc., is a California corporation organized under the laws of the State of California with its principal place of business in the State of Tennessee.

55.    Defendant Nissan North America, Inc. is the United States entity responsible for the marketing, advertising, distribution, sales, recalls, decision-making, and other responsibilities pertaining to the Nissan and Infiniti vehicles at issue in this litigation.

56.    Defendant Nissan North America, Inc. shall hereinafter be referred to as "Nissan" or "Defendant."

57.    Infiniti is the luxury vehicle division of Nissan, which was started in 1989 in North America. Nissan owns, and is the parent corporation of, Infiniti. Therefore, hereinafter, when the term Nissan is used, it shall include Infiniti.

### III.    JURISDICTION AND VENUE

58.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the class of plaintiffs and the defendant are citizens of different states. This Court has supplemental jurisdiction over the alleged state law claims pursuant to 28 U.S.C. § 1367.

6

59.     This Court has specific personal jurisdiction over Nissan because Nissan is a California corporation that conducts business in California, has purposefully availed itself of the benefits and protections of California by systematically conducting substantial business in this judicial district, directing advertising and marketing materials to districts within California, and intentionally and purposefully placing Class Vehicles into the stream of commerce within the districts of California and throughout the United States, with the expectation and intent that consumers would purchase them. Thousands of Class Vehicles have been sold in California and are operated within the state and this judicial district.

60.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because there are one or more authorized Nissan dealers within this district, Nissan advertised in this district, and Nissan received substantial revenue and profits from their sales and/or leasing of Class Vehicles in this district; therefore, a substantial and material part of the events and/or omissions giving rise to the claims occurred within this district. Nissan is also incorporated under the laws of California and is at home in this district.

## IV.     PLAINTIFF-SPECIFIC ALLEGATIONS

**A.     California Plaintiffs**

### 1.     Plaintiff Cristian Pascal

61.     Mr. Pascal purchased his 2015 Nissan Altima 2.5S (VIN 1N4AL3AP5FN914352) new on December 17, 2015 at Costa Mesa Nissan, 2850 Harbor Boulevard, Costa Mesa, CA 92626.

62.     Prior to purchasing the Vehicle, Mr. Pascal reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Mr. Pascal relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window

7

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

63.    The vehicle was serviced and repaired at the same Nissan dealership during the short period of time that Mr. Pascal drove the vehicle.

64.    In 2016, Mr. Pascal inadvertently left a carbon monoxide meter in the Altima and he noticed that it reported an abnormal reading when he and his wife, Jamie Pascal, drove the vehicle. Later, Mr. Pascal brought the Altima to two different Nissan dealerships to have their service technicians try to diagnose the issue. The first Nissan dealership claimed that they test drove the Altima, used Mr. Pascal's carbon monoxide meter, and that there were no abnormal carbon monoxide readings. The second Nissan dealer rebuffed Mr. Pascal's concerns and refused to test drive the vehicle with Mr. Pascal's carbon monoxide meter (or their own) at all, claimed that they inspected the vehicle, and returned it to Mr. Pascal, alleging that they could not duplicate the condition.

65.    Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, at times, when Mr. Pascal and his wife drove the Altima, they felt lethargic and sick. Further, Mr. Pascal experienced other physical symptoms which resolved when he stopped driving the vehicle. Currently, Mr. Pascal refuses to drive or sell the Altima due to the risk of carbon monoxide exposure and, as such, the vehicle is stored in a secure evidence storage facility in its original condition. He was forced to purchase a new vehicle while still paying off the Nissan Altima.

66.    Plaintiff Cristian Pascal has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. He has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

8

### 2.    **Plaintiff Maria Mengoni**

67.    Ms. Mengoni purchased a 2016 Nissan Altima (VIN 1N4AL3AP6GC137824) for herself and her husband, Carlos Mengoni, to drive. When they learned of the carbon monoxide leakage defect, they became fearful of operating the vehicle.

68.    Prior to purchasing the Vehicle, Ms. Mengoni reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Ms. Mengoni relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

69.    Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure.

70.    Plaintiff Maria Mengoni has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

### 3.    **Plaintiff Leisa Johnson**

71.    Plaintiff Leisa Johnson purchased a 2018 Nissan Altima on January 27, 2019 from Enterprise Car Sales.

72.    Ms. Johnson uses the Vehicle for personal, family, and/or household uses.

73.    Prior to purchasing the Vehicle, Ms. Johnson reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various

9

features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Ms. Johnson relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

74.    Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Johnson of the carbon monoxide defect's existence prior to, or any time after, her purchase.

75.    Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, while driving with her air conditioner on, Ms. Johnson smelled exhaust fumes in the cabin of her vehicle. These fumes harmed Ms. Johnson, causing her to develop blurred vision and confusion.

76.    To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Johnson's vehicle, nor have they acknowledged or notified her of that dangerous defect.

77.    Ms. Johnson has suffered an actual injury in fact. Namely, she suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**4.     Plaintiff Jordane Johnson**

78.    Plaintiff Jordane Johnson purchased a 2018 Nissan Altima at Long Beach Nissan in Long Beach, California on June 23, 2018.

79.    Ms. Johnson uses the Vehicle for personal, family, and/or household uses.

80.    Prior to purchasing the Vehicle, Ms. Johnson reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details

10

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

and test ratings), and Ms. Johnson relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

81.     Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Johnson of the carbon monoxide defect's existence prior to, or any time after, her purchase.

82.     Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when driving, Ms. Johnson noticed a stench when she used the air conditioner or heater. This stench caused Ms. Johnson to suffer dull headaches.

83.     Plaintiff suffered an injury in fact due to her exposure to carbon monoxide. Additionally, she suffered economic loss stemming from the loss in value of her vehicle caused by the carbon monoxide defect.

84.     To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Johnson's vehicle, nor have they acknowledged or notified her of that dangerous defect.

85.     Ms. Johnson has suffered an actual injury in fact. Namely, she suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**5.    Plaintiff Ebony Jones**

86.     Plaintiff Ebony Jones purchased a 2018 Nissan Murano at Enterprise Car Sales in Culver City, California in 2019.

87.      Ms. Jones uses the Vehicle for personal, family, and/or household uses.

88.     Prior to purchasing the Vehicle, Ms. Jones reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information

11

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Ms. Jones relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

89.    Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Jones of the carbon monoxide defect's existence prior to, or any time after, her purchase.

90.    Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure.  In addition, and more specifically, when driving, Ms. Jones occasionally experiences an odor that causes her to suffer dull headaches.

91.    To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Jones's vehicle, nor have they acknowledged or notified her of that dangerous defect.

92.    Ms. Jones has suffered an actual injury in fact. Namely, she suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**6.    Plaintiff Patrick McMorrow**

93.    Plaintiff Patrick McMorrow purchased a 2016 Nissan Altima at Hertz Rental Car Dealership in San Diego, California, on May 16, 2019.

94.     Mr. McMorrow uses the Vehicle for personal, family, and/or household uses.

95.    Prior to purchasing the Vehicle, Mr. McMorrow reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the

12

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Mr. McMorrow relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

96.    Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Mr. McMorrow of the carbon monoxide defect's existence prior to, or any time after, his purchase.

97.    Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, beginning around one month after purchasing his vehicle, Mr. McMorrow began experiencing a "light exhaust smell" in the cabin of his vehicle when driving, using the vehicle's heater, and at other times. Those fumes caused Mr. McMorrow to suffer dull headaches, nausea, and shortness of breath.

98.    To this day, neither Nissan nor its agents have repaired the dangerous defect in Mr. McMorrow's vehicle, nor have they acknowledged or notified him of that dangerous defect.

99.    Mr. McMorrow has suffered an actual injury in fact. Namely, he suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**7.    Plaintiff Tinisha Miller**

100.    Plaintiff Tinisha Miller purchased a 2014 Nissan Altima at Concord Nissan in Concord, California in 2014.

101.    Ms. Miller uses the Vehicle for personal, family, and/or household uses.

102.    Prior to purchasing the Vehicle, Ms. Miller reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various

13

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Ms. Miller relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

103.   Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Miller of the carbon monoxide defect's existence prior to, or any time after, her purchase.

104.   Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when driving the Vehicle, Ms. Miller began noticing smells in the vehicle.

105.   To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Miller's vehicle, nor have they acknowledged or notified her of that dangerous defect.

106.   Ms. Miller has suffered an actual injury in fact. Namely, she suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**8.    Plaintiff Anil Prasad**

107.   Plaintiff Anil Prasad purchased a 2007 Nissan Altima from a private individual in San Leandro, California in October 2013.

108.    Mr. Prasad uses the Vehicle for personal, family, and/or household uses.

109.   Prior to purchasing the Vehicle, Mr. Prasad reviewed advertising materials, owner's manuals, and other promotional information regarding the vehicle. The various materials advertised the Vehicle's features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Mr. Prasad relied on the materials

14

when deciding to purchase the Vehicle. The promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

110.   Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Mr. Prasad of the carbon monoxide defect's existence prior to, or any time after, his purchase.

111.   Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when driving the car, particularly when driving up hills, Mr. Prasad smelled gas and exhaust in the cabin of the vehicle. Passengers in Mr. Prasad's car have noticed the smell as well. As a result of the fumes, Mr. Prasad suffers dull headaches, nausea, shortness of breath, and blurred vision.

112.   To this day, neither Nissan nor its agents have repaired the dangerous defect in Mr. Prasad's vehicle, nor have they acknowledged or notified him of that dangerous defect. Indeed, Mr. Prasad took the vehicle to Serramonte Nissan for repairs, and they alleged that nothing was wrong with the vehicle.

113.   Mr. Prasad has suffered an actual injury in fact. Namely, he suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages

### 9.   Plaintiff Tracy Van Buren

114.   Plaintiff Tracy Van Buren purchased a 2018 Nissan Altima at Enterprise Car Sales in Gardena, California on September 10, 2019.

115.    Ms. Van Buren uses the Vehicle for personal, family, and/or household uses.

116.   Prior to purchasing the Vehicle, Ms. Van Buren reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and

15

warranty details and test ratings), and Ms. Van Buren relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

117.    Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Van Buren of the carbon monoxide defect's existence prior to, or any time after, her purchase.

118.    Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when driving her vehicle, Ms. Van Buren noticed a "burning" smell, particularly when she was running her heating or cooling system and at other times. Ms. Van Buren and her children suffered frequent painful headaches, light-headedness, nausea, dizziness, and blurred vision when exposed to these fumes. Ms. Van Buren went to the doctor as a result of these symptoms.

119.    To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Van Buren's vehicle, nor have they acknowledged or notified her of that dangerous defect.

120.    Ms. Van Buren has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**10.    Plaintiff Kia Singleton**

121.    Plaintiff Kia Singleton purchased a 2015 Nissan Altima at Rydell Chrysler Dodge Jeep Ram on May 23, 2015.

122.    Ms. Singleton uses the Vehicle for personal, family, and/or household uses.

123.    Prior to purchasing the Vehicle, Ms. Singleton reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional

16

information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Ms. Singleton relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

124.   Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Singleton of the carbon monoxide defect's existence prior to, or any time after, her purchase.

125.   Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when driving her vehicle, Ms. Singleton noticed an odor. Ms. Singleton suffered a headache, weakness, dizziness, nausea, shortness of breath, confusion, and blurred vision as a result of these fumes.

126.   To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Singleton's vehicle, nor have they acknowledged or notified her of that dangerous defect.

127.   Ms. Singleton has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**B.    Alabama Plaintiffs**

**1.    Plaintiff Darnell Milton**

128.   Plaintiff Darnell Milton purchased a 2012 Nissan Altima from a private individual in Alabama in May 2019.

129.   Mr. Milton uses the Vehicle for personal, family, and/or household uses.

17

130.   Prior to purchasing the Vehicle, Mr. Milton reviewed advertising materials, owner's manuals, and other promotional information regarding the vehicle. The various materials advertised the Vehicle's features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Mr. Milton relied on the materials when deciding to purchase the Vehicle. The promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

131.   Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Mr. Milton of the carbon monoxide defect's existence prior to, or any time after, his purchase.

132.   Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when driving the car, Mr. Milton smells "combustion." Mr. Milton suffers from lightheadedness, headaches, nausea, and blurred vision as a result of the fumes.

133.   To this day, neither Nissan nor its agents have repaired the dangerous defect in Mr. Milton's vehicle, nor have they acknowledged or notified him of that dangerous defect.

134.   Mr. Milton has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. He has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

### 2.     Plaintiff Kathy Warner-Stanton

135.   Plaintiff Kathy Warner-Stanton purchased a 2017 Nissan Maxima from Benton Nissan in Hoover, Alabama in 2016. She also purchased a 2010 Nissan Maxima from Landers in Huntsville, Alabama in 2010. The 2010 Nissan is now driven primarily by her daughter, Adonica Stanton.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

136. Ms. Warner-Stanton uses the Vehicles for personal, family, and/or household uses.

137. Prior to purchasing the Vehicle, Ms. Warner-Stanton reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Ms. Warner-Stanton relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

138. Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Warner-Stanton of the carbon monoxide defect's existence prior to, or any time after, her purchase. Ms. Warner-Stanton took both vehicles to licensed Nissan dealerships and complained of the exhaust smell in her vehicle numerous times, but she was repeatedly told the car had no issues.

139. Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when driving her vehicle, Ms. Warner-Stanton noticed an exhaust scent. Ms. Warner-Stanton suffered a headache, dizziness, and blurred vision as a result of the fumes. For example, in 2015, Ms. Warner-Stanton drove from Alabama to Kentucky and, by the end of the trip, was feeling very light-headed and dizzy following exposure to the fumes.

140. To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Warner-Stanton's vehicle, nor have they acknowledged or notified her of that dangerous defect.

141. Ms. Warner-Stanton has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the

19

carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

### 3. Plaintiff Easter Common

142. Plaintiff Easter Common purchased a 2010 Nissan Maxima from Landers McLarty in Huntsville, Alabama in 2010.

143. Ms. Common uses the Vehicle for personal, family, and/or household uses.

144. Prior to purchasing the Vehicle, Ms. Common reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Ms. Common relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

145. Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Common of the carbon monoxide defect's existence prior to, or any time after, her purchase.

146. Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when driving her vehicle, Ms. Common smells exhaust, which causes her to suffer headaches, weakness, dizziness, and burning eyes. Ms. Common has vomited as a result of the smell.

147. To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Common's vehicle, nor have they acknowledged or notified her of that dangerous defect.

148. Ms. Common has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon

20

monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

## C.    Arkansas Plaintiff

### 1.    Plaintiff Kelly Kindt

149.    Plaintiff Kelly Kindt purchased a 2012 Nissan Altima from Riser Nissan in Hot Spring, Arkansas in August 2012.

150.    Ms. Kindt uses the Vehicles for personal, family, and/or household uses.

151.    Prior to purchasing the Vehicle, Ms. Kindt reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Ms. Kindt relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

152.    Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Kindt of the carbon monoxide defect's existence prior to, or any time after, her purchase.

153.    Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when using her car and operating her car's heating and cooling systems, Ms. Kindt noticed an exhaust smell. Ms. Kindt suffered a headache, dizziness, nausea, and shortness of breath as a result of the smell.

154.    To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Kindt's vehicle, nor have they acknowledged or notified her of that dangerous defect.

155.    Ms. Kindt has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses

21

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**D.    Connecticut Plaintiff**

**1.    Plaintiff Anne Marie Amarena**

156.    Plaintiff Anne Marie Amarena purchased a 2016 Nissan Versa from a used car dealer in Weathersfield, Connecticut in 2018.

157.    Ms. Amarena uses the Vehicles for personal, family, and/or household uses.

158.    Prior to purchasing the Vehicle, Ms. Amarena reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Ms. Amarena relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

159.    Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Amarena of the carbon monoxide defect's existence prior to, or any time after, her purchase.

160.    Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, any time Ms. Amarena drives her car, she notices a musty smell permeating the cabin. These fumes cause Ms. Amarena to suffer headaches.

161.    To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Amarena's vehicle, nor have they acknowledged or notified her of that dangerous defect.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

162.    Ms. Amarena has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**E.    Delaware Plaintiff**

    **1.    Plaintiff Justin McNeill**

163.    Plaintiff Justin McNeill purchased a 2015 Nissan Altima using eBay in May 2019. Mr. McNeill received and primarily uses the vehicle in Delaware.

164.    Mr. McNeill uses the Vehicle for personal, family, and/or household uses.

165.    Prior to purchasing the Vehicle, Mr. McNeill reviewed advertising materials, owner's manuals, and other promotional information regarding the vehicle. The various materials advertised the Vehicle's features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Mr. McNeill relied on the materials when deciding to purchase the Vehicle. The promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

166.    Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Mr. McNeill of the carbon monoxide defect's existence prior to, or any time after, his purchase.

167.    Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when using his car, Mr. McNeill smells an odor, which causes him to suffer lightheadedness.

168.    To this day, neither Nissan nor its agents have repaired the dangerous defect in Mr. McNeill's vehicle, nor have they acknowledged or notified him of that dangerous defect.

169.    Mr. McNeill has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. He has also suffered economic losses

23

as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**F.    Florida Plaintiff**

   **1.    Plaintiff William Garcia Jr.**

170.    Plaintiff William Garcia Jr. leased a 2018 Infiniti Q50 from Infiniti of Greenwich in Greenwich, Tennessee, on March 30, 2018.

171.    Mr. Garcia uses the Vehicle for personal, family, and/or household uses.

172.    Prior to leasing the Vehicle, Mr. Garcia reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Mr. Garcia relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

173.    Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Mr. Garcia of the carbon monoxide defect's existence prior to, or any time after, his leasing the Vehicle.

174.    Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, while driving, Mr. Garcia frequently notices a "bad gasoline" type of smell.

175.    To this day, neither Nissan nor its agents have repaired the dangerous defect in Mr. Garcia's vehicle, nor have they acknowledged or notified her of that dangerous defect.

176.    Mr. Garcia has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses

24

as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

## G.    Georgia Plaintiffs

### 1.    Plaintiff Hattie Bailey

177.    Plaintiff Hattie Bailey purchased a 2017 Nissan Altima from Nissan of McDonough in McDonough, Georgia, in 2017.

178.     Ms. Bailey uses the Vehicle for personal, family, and/or household uses.

179.    Prior to purchasing the Vehicle, Ms. Bailey reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Ms. Bailey relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

180.    Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Bailey of the carbon monoxide defect's existence prior to, or any time after, her purchase.

181.    Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, while driving, Ms. Bailey frequently smells an odor that causes her to suffer dull headaches.

182.    To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Bailey's vehicle, nor have they acknowledged or notified her of that dangerous defect.

183.    Ms. Bailey has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses

25

as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

### 2. Plaintiff Regina Stevens

184.   Plaintiff Regina Stevens purchased a 2011 Nissan Altima from Nissan South of Morrow in Morrow, Georgia, in May 2011.

185.   Ms. Stevens uses the Vehicle for personal, family, and/or household uses.

186.   Prior to purchasing the Vehicle, Ms. Stevens reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Ms. Stevens relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

187.   Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Stevens of the carbon monoxide defect's existence prior to, or any time after, her purchase.

188.   Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, while operating her car, Ms. Stevens frequently smells a scent that causes her to suffer dull headaches, dizziness, nausea, and shortness of breath.

189.   To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Stevens's vehicle, nor have they acknowledged or notified her of that dangerous defect.

190.   Ms. Stevens has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses

as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**H.    Illinois Plaintiffs**

      **1.    Plaintiff Elizabeth Rodriguez**

191.    Plaintiff Elizabeth Rodriguez purchased a 2018 Infiniti Q50 from Motor Werks in Hoffman Estates, Illinois, in 2019.

192.    Ms. Rodriguez and her significant other use the Vehicles for personal, family, and/or household uses.

193.    Prior to purchasing the Vehicle, Ms. Rodriguez reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Ms. Rodriguez relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

194.    Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Rodriguez of the carbon monoxide defect's existence prior to, or any time after, her purchase.

195.    Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when driving her Vehicles, operating her Vehicle's air conditioning unit, and at other times, Ms. Rodriguez frequently smells an exhaust scent that causes her to suffer dull headaches.

196.    To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Rodriguez's Vehicle, nor have they acknowledged or notified her of that

27

dangerous defect. This is despite the fact that she has presented the Vehicle to numerous Infiniti dealerships for repair.

197.    Ms. Rodriguez has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

### 2.    Plaintiff Lemar Taylor

198.    Plaintiff Lemar Taylor purchased a 2008 Nissan Altima from McGrath Nissan in Elgin, Illinois, in June 2008.

199.    Mr. Taylor uses the Vehicle for personal, family, and/or household uses.

200.    Prior to purchasing the Vehicle, Mr. Taylor reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Mr. Taylor relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

201.    Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Mr. Taylor of the carbon monoxide defect's existence prior to, or any time after, his purchase.

202.    Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when using his Vehicle or operating the climate control system, Mr. Taylor frequently smells a gassy smell that causes him headaches and nausea.

203.   To this day, neither Nissan nor its agents have repaired the dangerous defect in Mr. Taylor's vehicle, nor have they acknowledged or notified him of that dangerous defect.

204.   Mr. Taylor has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. He has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

## I.     Kansas Plaintiff

### 1.     Plaintiff Ronald Thomas

205.   Plaintiff Ronald Thomas purchased a 2015 Nissan Altima from Stateline Nissan in Kansas City, Missouri, on August 30, 2016.

206.   Mr. Thomas uses the Vehicle for personal, family, and/or household uses.

207.   Prior to purchasing the Vehicle, Mr. Thomas reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Mr. Thomas relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

208.   Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Mr. Thomas of the carbon monoxide defect's existence prior to, or any time after, his purchase.

209.   Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when using his Vehicle, Mr. Thomas frequently smells exhaust fumes that cause him headaches, nausea, and burning eyes.

210.   To this day, neither Nissan nor its agents have repaired the dangerous defect in Mr. Thomas's vehicle, nor have they acknowledged or notified him of that dangerous defect. Mr. Thomas drives his other vehicle, a Honda, to avoid the fumes in the Class Vehicle.

211.   Mr. Thomas has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. He has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

## J.   Louisiana Plaintiff

### 1.   Plaintiff Ebony Robertson

212.   Plaintiff Ebony Robertson purchased a 2016 Nissan Maxima from Giles Nissan in Opelousas, Louisiana, in 2018.

213.   Ms. Robertson uses the Vehicle for personal, family, and/or household uses.

214.   Prior to purchasing the Vehicle, Ms. Robertson reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Ms. Robertson relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicles. The window sticker and other promotional materials did not disclose that the Vehicles possessed any defects, including the carbon monoxide defect.

215.   Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Robertson of the carbon monoxide defect's existence prior to, or any time after, her purchase.

216.   Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

exposure. In addition, and more specifically, when driving her vehicle, Ms. Robertson experienced an exhaust odor that caused her headaches and lightheadedness.

217.   To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Robertson's Vehicle, nor have they acknowledged or notified her of that dangerous defect. In fact, after presenting her vehicle for repairs, she was told the smell was "nothing to worry about."

218.   Ms. Robertson has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**K.     Maryland Plaintiff**

**1.     Plaintiff Avon Martin**

219.   Plaintiff Avon Martin purchased a 2009 Nissan Murano from Norris Nissan in Elliot City, Maryland, on January 31, 2010.

220.    Ms. Martin uses the Vehicle for personal, family, and/or household uses.

221.   Prior to purchasing the Vehicle, Ms. Martin reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Ms. Martin relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicles. The window sticker and other promotional materials did not disclose that the Vehicles possessed any defects, including the carbon monoxide defect.

222.   Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Reynolds of the carbon monoxide defect's existence prior to, or any time after, her purchase.

31

223.    Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when driving her vehicle, Ms. Martin experienced a smell "like a burnt grill" that caused her to suffer headaches, weakness, and dizziness.

224.    To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Martin's Vehicle, nor have they acknowledged or notified her of that dangerous defect. She paid $464 to have the issue addressed, but the smell continues to permeate her car.

225.    Ms. Martin has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**L.    Michigan Plaintiff**

**1.    Plaintiff Judi Moore**

226.    Plaintiff Judi Moore purchased a 2017 Nissan Murano from Carvana in Michigan, in October 2018.

227.    Ms. Moore uses the Vehicle for personal, family, and/or household uses.

228.    Prior to purchasing the Vehicle, Ms. Moore reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Ms. Moore relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicles. The window sticker and other promotional materials did not disclose that the Vehicles possessed any defects, including the carbon monoxide defect.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

229.    Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Moore of the carbon monoxide defect's existence prior to, or any time after, her purchase.

230.    Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when using her car, Ms. Moore experiences a smoky smell that causes her to suffer exhaustion and migraines.

231.    To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Moore's Vehicle, nor have they acknowledged or notified her of that dangerous defect.

232.    Ms. Moore has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**M.    Missouri Plaintiff**

**1.    Plaintiff Theresa Mabery**

233.    Plaintiff Theresa Mabery purchased a 2013 Nissan Altima from Tiffany Spring Honda in Kansas City, Missouri, in March 2017.

234.    Ms. Mabery uses the Vehicle for personal, family, and/or household uses.

235.    Prior to purchasing the Vehicle, Ms. Mabery reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Ms. Mabery relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicles. The window sticker and other promotional materials did not disclose that the Vehicles possessed any defects, including the carbon monoxide defect.

33

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

236.   Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Mabery of the carbon monoxide defect's existence prior to, or any time after, her purchase.

237.   Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when she operates her car, Ms. Mabery experiences an exhaust smell that causes her headaches, dizziness, and nausea.

238.   To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Mabery's Vehicle, nor have they acknowledged or notified her of that dangerous defect.

239.   Ms. Mabery has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**N.    Nevada Plaintiff**

    **1.    Plaintiff William Johnson**

240.   Plaintiff William Johnson purchased a 2012 Nissan Altima from Drivetime Car Sales in Las Vegas, Nevada, on November 28, 2017.

241.   Mr. Johnson uses the Vehicle for personal, family, and/or household uses.

242.   Prior to purchasing the Vehicle, Mr. Johnson reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Mr. Johnson relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

34

243.    Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Mr. Johnson of the carbon monoxide defect's existence prior to, or any time after, his purchase.

244.    Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when operating his vehicle, Mr. Johnson frequently smells fumes that smell like coal, hot motor oil, and exhaust that cause him headaches, nausea, and burning eyes. One time, it suffered a "blowout," causing visible exhaust to enter the cabin. Mr. Johnson vomited as a result of this incident.

245.    To this day, neither Nissan nor its agents have repaired the dangerous defect in Mr. Johnson's vehicle, nor have they acknowledged or notified him of that dangerous defect.

246.    Mr. Johnson has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. He has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

## O.    New Hampshire Plaintiff

### 1.    Plaintiff Lyndsy Hewey

247.    Plaintiff Lyndsy Hewey purchased a 2019 Nissan Altima from Peters Nissan in Nashua, New Hampshire in July 2019.

248.    Ms. Hewey uses the Vehicle for personal, family, and/or household uses.

249.    Prior to purchasing the Vehicle, Ms. Hewey reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Ms. Hewey relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicles. The window

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

sticker and other promotional materials did not disclose that the Vehicles possessed any defects, including the carbon monoxide defect.

250.   Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Hewey of the carbon monoxide defect's existence prior to, or any time after, her purchase.

251.   Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when driving long distances, Ms. Hewey experiences a "gas" smell that has caused her to suffer coughing fits, headaches, dizziness, and confusion.

252.   To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Hewey's Vehicle, nor have they acknowledged or notified her of that dangerous defect.

253.   Ms. Hewey has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**P.    New Jersey Plaintiffs**

**1.    Plaintiff Barbara Moras**

254.   Plaintiff Barbara Moras purchased a 2013 Nissan Altima from Marano and Sons Auto Sales in Garwood, New Jersey, in 2016.

255.   Ms. Moras uses the Vehicle for personal, family, and/or household uses.

256.   Prior to purchasing the Vehicle, Ms. Moras reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Ms. Moras relied on the advertisements contained within the

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

window sticker and other materials when deciding to purchase the Vehicles. The window sticker and other promotional materials did not disclose that the Vehicles possessed any defects, including the carbon monoxide defect.

257.  Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Moras of the carbon monoxide defect's existence prior to, or any time after, her purchase.

258.  Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when driving, Ms. Moras experiences a chemical smell that has caused her to feel sleepy and spacey.

259.  To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Moras' Vehicle nor notified her of that dangerous defect.

260.  Ms. Moras has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**2.  Plaintiff Mason Loh**

261.  Plaintiff Mason Loh purchased a 2015 Nissan Versa from Auto Eastern in Englewood Cliffs, New Jersey, on July 24, 2015.

262.  Mr. Loh uses the Vehicle for personal, family, and/or household uses.

263.  Prior to purchasing the Vehicle, Mr. Loh reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Mr. Loh relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker

37

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

264.   Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Mr. Loh of the carbon monoxide defect's existence prior to, or any time after, his purchase.

265.   Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when his Vehicle's interior ventilation system is turned on, Mr. Loh frequently smells exhaust fumes that cause him headaches and nausea.

266.   To this day, neither Nissan nor its agents have repaired the dangerous defect in Mr. Loh's vehicle, nor have they acknowledged or notified him of that dangerous defect.

267.   Mr. Loh has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. He has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**Q.    New York Plaintiff**

**1.    Plaintiff Robert Carnevale**

268.   Plaintiff Robert Carnevale purchased a 2017 Nissan Altima from Carbone Nissan in Yorkville, New York on August 18, 2017.

269.   Mr. Carnevale uses the Vehicle for personal, family, and/or household uses.

270.   Prior to purchasing the Vehicle, Mr. Carnevale reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Mr. Carnevale relied on the advertisements

38

contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

271.    Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Mr. Carnevale of the carbon monoxide defect's existence prior to, or any time after, his purchase.

272.    Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when driving long distances or operating the Vehicle's climate control system, Mr. Carnevale frequently smells exhaust fumes that have caused him to suffer headaches, eye irritation, and dry mouth.

273.    To this day, neither Nissan nor its agents have repaired the dangerous defect in Mr. Carnevale's vehicle, nor have they acknowledged or notified him of that dangerous defect.

274.    Mr. Carnevale has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. He has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**R.    Ohio Plaintiff**

**1.    Plaintiff Lamont Gibson**

275.    Plaintiff Lamont Gibson purchased a 2014 Infiniti Q50 from Bedford Auto Mall in Bedford Heights, Ohio in January 2017.

276.    Mr. Gibson uses the Vehicle for personal, family, and/or household uses.

277.    Prior to purchasing the Vehicle, Mr. Gibson reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details

39

and test ratings), and Mr. Gibson relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

278.   Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Mr. Gibson of the carbon monoxide defect's existence prior to, or any time after, his purchase.

279.   Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when stuck in traffic, Mr. Gibson smells exhaust that makes him feel very sick.

280.   To this day, neither Nissan nor its agents have repaired the dangerous defect in Mr. Gibson's vehicle, nor have they acknowledged or notified him of that dangerous defect. He took his vehicle to the dealership and was told nothing was wrong with his exhaust.

281.   Mr. Gibson has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. He has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**S.     Pennsylvania Plaintiffs**

**1.     Plaintiff LaRoy Gibson**

282.   Plaintiff LaRoy Gibson purchased a 2009 Nissan Altima from Drivetime in Pittsburgh, Pennsylvania, on August 17, 2018.

283.   Mr. Gibson uses the Vehicle for personal, family, and/or household uses.

284.   Prior to purchasing the Vehicle, Mr. Gibson reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various

40

features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Mr. Gibson relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

285. Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Mr. Gibson of the carbon monoxide defect's existence prior to, or any time after, his purchase.

286. Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when he starts his vehicle, Mr. Gibson smells exhaust that causes him to suffer slight headaches and nausea.

287. To this day, neither Nissan nor its agents have repaired the dangerous defect in Mr. Gibson's vehicle, nor have they acknowledged or notified him of that dangerous defect.

288. Mr. Gibson has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. He has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**2.    Plaintiff Michelle Yuhas**

289. Plaintiff Michelle Yuhas purchased a 2009 Nissan Altima from Interstate Nissan in Erie, Pennsylvania, on July 31, 2013.

290. Ms. Yuhas uses the Vehicle for personal, family, and/or household uses.

291. Prior to purchasing the Vehicle, Ms. Yuhas reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

and test ratings), and Ms. Yuhas relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicles. The window sticker and other promotional materials did not disclose that the Vehicles possessed any defects, including the carbon monoxide defect.

292.    Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Yuhas of the carbon monoxide defect's existence prior to, or any time after, her purchase.

293.    Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when using her vehicle, Ms. Yuhas smells a gas-like smell that causes her to suffer headaches, dizziness, and nausea.

294.    To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Yuhas' Vehicle, nor have they acknowledged or notified her of that dangerous defect.

295.    Ms. Yuhas has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**T.    South Carolina Plaintiff**

**1.    Plaintiff Doris Tucker**

296.    Plaintiff Doris Tucker purchased a 2013 Nissan Altima from Quality Auto in Hartsville, South Carolina, in February 2016.

297.    Ms. Tucker uses the Vehicle for personal, family, and/or household uses.

298.    Prior to purchasing the Vehicle, Ms. Tucker reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details

42

and test ratings), and Ms. Tucker relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicles. The window sticker and other promotional materials did not disclose that the Vehicles possessed any defects, including the carbon monoxide defect.

299.    Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Tucker of the carbon monoxide defect's existence prior to, or any time after, her purchase.

300.    Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when driving or operating her climate control systems, Ms. Tucker smells a gas-like smell that causes her to suffer headaches and respiratory issues.

301.    To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Tucker's Vehicle, nor have they acknowledged or notified her of that dangerous defect.

302.    Ms. Tucker has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**U.    Tennessee Plaintiffs**

**1.    Plaintiff Shunsetha Alexander**

303.    Plaintiff Shunsetha Alexander purchased a 2012 Nissan Maxima from Acura Memphis in Memphis, Tennessee, in 2015.

304.    Ms. Alexander uses the Vehicle for personal, family, and/or household uses.

305.    Prior to purchasing the Vehicle, Ms. Alexander reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the

43

Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Ms. Alexander relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicles. The window sticker and other promotional materials did not disclose that the Vehicles possessed any defects, including the carbon monoxide defect.

306.   Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Alexander of the carbon monoxide defect's existence prior to, or any time after, her purchase.

307.   Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when driving long distances, Ms. Alexander smells a gas-like smell that causes her to suffer headaches, dizziness, nausea, shortness of breath, and drowsiness.

308.   To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Alexander's Vehicle, nor have they acknowledged or notified her of that dangerous defect.

309.   Ms. Alexander has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**2.    Plaintiff Lakita Buchanan**

310.   Plaintiff Lakita Buchanan purchased a 2012 Nissan Maxima from a dealer auction in Tennessee in 2014.

311.   Ms. Buchanan uses the Vehicle for personal, family, and/or household uses.

312.   Prior to purchasing the Vehicle, Ms. Buchanan reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the

44

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Ms. Buchanan relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicles. The window sticker and other promotional materials did not disclose that the Vehicles possessed any defects, including the carbon monoxide defect.

313.   Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Buchanan of the carbon monoxide defect's existence prior to, or any time after, her purchase.

314.   Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when accelerating her vehicle and at other times, Ms. Buchanan smells a gas-like smell that causes her to suffer headaches, dizziness, shortness of breath, and blurred vision.

315.   To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Buchanan's Vehicle, nor have they acknowledged or notified her of that dangerous defect.

316.   Ms. Buchanan has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**3.    Plaintiff Anthony McGlown**

317.   Plaintiff Anthony McGlown purchased a 2008 Nissan Altima from Auto Nation in Tennessee on October 24, 2008.

318.   Mr. McGlown uses the Vehicle for personal, family, and/or household uses.

319.   Prior to purchasing the Vehicle, Mr. McGlown reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the

45

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Mr. McGlown relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

320.   Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Mr. McGlown of the carbon monoxide defect's existence prior to, or any time after, his purchase.

321.   Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when driving his vehicle, Mr. McGlown smells exhaust that causes him to suffer shortness of breath and headaches.

322.   To this day, neither Nissan nor its agents have repaired the dangerous defect in Mr. McGlown's vehicle, nor have they acknowledged or notified him of that dangerous defect.

323.   Mr. McGlown has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. He has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**4.     Plaintiff Stacey Wagner**

324.   Plaintiff Stacey Wagner purchased a 2012 Nissan Altima from Infiniti of Cool Springs in Franklin, Tennessee, on February 27, 2019.

325.   Ms. Wagner uses the Vehicle for personal, family, and/or household uses.

326.   Prior to purchasing the Vehicle, Ms. Wagner reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details

46

and test ratings), and Ms. Wagner relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicles. The window sticker and other promotional materials did not disclose that the Vehicles possessed any defects, including the carbon monoxide defect.

327.   Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Wagner of the carbon monoxide defect's existence prior to, or any time after, her purchase.

328.   Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when driving her vehicle long distances, Ms. Wagner smells a chemical smell that causes her to suffer headaches, fatigue, nausea, and lethargy.

329.   To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Wagner's Vehicle, nor have they acknowledged or notified her of that dangerous defect.

330.   Ms. Wagner has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

## V.   Texas Plaintiffs

### 1.    Plaintiff Sarai Jimenez

331.   Plaintiff Sarai Jimenez purchased a 2017 Nissan Altima from Ron Carter in Friendswood, Texas in April 2018.

332.    Ms. Jimenez uses the Vehicle for personal, family, and/or household uses.

333.   Prior to purchasing the Vehicle, Ms. Jimenez reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the Vehicle's various

47

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Ms. Jimenez relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicles. The window sticker and other promotional materials did not disclose that the Vehicles possessed any defects, including the carbon monoxide defect.

334.   Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Jimenez of the carbon monoxide defect's existence prior to, or any time after, her purchase.

335.   Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when using her Vehicle, Ms. Jimenez smells a gassy scent that causes her blurred vision.

336.   To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Jimenez's Vehicle, nor have they acknowledged or notified her of that dangerous defect.

337.   Ms. Jimenez has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

## 2.   Plaintiff James Montgomery

338.   Plaintiff James Montgomery purchased a 2012 Nissan Maxima from Capital Auto Sale in Irving, Texas in 2014.

339.    Mr. Montgomery uses the Vehicle for personal, family, and/or household uses.

340.   Prior to purchasing the Vehicle, Mr. Montgomery reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information regarding the vehicle. The window sticker, for example, advertised the

48

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Mr. Montgomery relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

341.   Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Mr. Montgomery of the carbon monoxide defect's existence prior to, or any time after, his purchase.

342.   Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when he uses his car, Mr. Montgomery smells exhaust that causes him to suffer headaches, pain in his nostrils, lightheadedness, nausea, and loss of perception.

343.   To this day, neither Nissan nor its agents have repaired the dangerous defect in Mr. Montgomery's vehicle, nor have they acknowledged or notified him of that dangerous defect.

344.   Mr. Montgomery has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. He has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

**W.   Virginia Plaintiff**

**1.     Plaintiff Ursula Gerson**

345.   Plaintiff Ursula Gerson purchased a 2017 Infiniti Q50 from Hertz Car Sales in Leesburg, Virginia on October 31, 2018.

346.   Ms. Gerson uses the Vehicle for personal, family, and/or household uses.

347.   Prior to purchasing the Vehicle, Ms. Gerson reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information

49

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Ms. Gerson relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicle. The window sticker and other promotional materials did not disclose that the Vehicle possessed any defects, including the carbon monoxide defect.

348.   Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Gerson of the carbon monoxide defect's existence prior to, or any time after, her purchase.

349.   Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, while driving, Ms. Gerson smells an odor of exhaust or gas fumes that causes her to suffer headaches and blurred vision.

350.   To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Gerson's vehicle, nor have they acknowledged or notified her of that dangerous defect.

351.   Ms. Gerson has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

## X.    Washington Plaintiff

### 1.    Plaintiff Rona Taylor

352.   Plaintiff Rona Taylor purchased a 2017 Nissan Altima from Tacoma Subaru in Tacoma, Washington on February 15, 2020.

353.    Ms. Taylor uses the Vehicle for personal, family, and/or household uses.

354.   Prior to purchasing the Vehicle, Ms. Taylor reviewed the sticker placed on the window, advertising materials, owner's manuals, and other promotional information

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

regarding the vehicle. The window sticker, for example, advertised the Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and test ratings), and Ms. Taylor relied on the advertisements contained within the window sticker and other materials when deciding to purchase the Vehicles. The window sticker and other promotional materials did not disclose that the Vehicles possessed any defects, including the carbon monoxide defect.

355. Indeed, neither Nissan, nor any of its agents, dealers, or other representatives informed Ms. Taylor of the carbon monoxide defect's existence prior to, or any time after, her purchase.

356. Plaintiff was exposed to exhaust and carbon monoxide fumes while driving in the Vehicle, which caused Plaintiff to suffer the symptoms of carbon monoxide exposure. In addition, and more specifically, when driving her car, Ms. Taylor smells a scent that causes her to suffer headaches, dizziness, and nausea.

357. To this day, neither Nissan nor its agents have repaired the dangerous defect in Ms. Taylor's Vehicle, nor have they acknowledged or notified her of that dangerous defect.

358. Ms. Taylor has suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm. She has also suffered economic losses as a result of Nissan's omissions and/or misrepresentations associated with the carbon monoxide defect, including, but not limited to, out-of-pocket losses, diminished value to the Vehicle, and other consequential damages.

## V. PLAINTIFFS' GENERAL ALLEGATIONS

359. Plaintiffs allege that their vehicles were defective at the time of their manufacture, design, development, production, assembly, building, testing, inspection, installation, equipping, endorsement, exportation, importation, wholesaling, retailing, selling, renting, leasing, modification, and repair and entrustment, and that they failed to meet the reasonable expectations of safety of the class of persons of which Plaintiffs were members, and that any benefits derived from the design of said vehicles were

51

substantially outweighed by the risk of harm inherent in said design, in that, and not by way of limitation, despite the availability to Defendant of safer alternative designs, said vehicles presented a substantial and unreasonable risk of injury to the users of said vehicles or those in the vicinity of their use.

360.    Specifically, said vehicles were defective in their design, construction, assembly, and manufacture, and were dangerous to life and limb of the users and occupants thereof, in that, among other things and not by way of limitation, said vehicles were prone to leak carbon monoxide into the passenger compartment during operation, as described below. The aforementioned defects created substantial dangers which were unknown to Plaintiffs and the public in general, and would not be recognized by the ordinary user, and said Defendant failed to give adequate warning of such dangers.

361.    The defects in the design, manufacture, configuration, and assembly of the subject vehicles were a substantial factor in causing the Plaintiffs' vehicles to leak carbon monoxide into the passenger compartment.

362.    Specifically, the Class Vehicles are defective and dangerous because they allow carbon monoxide to enter the passenger cabin, especially when the recirculation mode in the HVAC system is used.

363.    Nissan is aware of the dangers of carbon monoxide leakage into the rear of the Class Vehicles. For example, the 2015 Nissan Altima Owner's Manual includes the following warning:

> **⚠ WARNING**
>
> - Do not drive with the trunk lid open. This could allow dangerous exhaust gases to be drawn into the vehicle. For additional information, refer to "Exhaust gas (carbon monoxide)" in the "Starting and driving" section of the manual.

364.    In spite of this known risk, Nissan has designed the Class Vehicles in such a manner that allows dangerous exhaust gases to be drawn into the vehicle.

52

365.    A feasible alternative design that would prevent dangerous carbon monoxide exposure to occupants is a simple and low-cost software reprogramming that switches the HVAC system from recirculation mode to fresh air mode under certain parameters.  The lack of such a system is in itself a defect.

366.    This feasible alternative design and a recommended inspection and repair protocol is described in Ford Motor Company's Technical Service Bulletin, Customer Satisfaction Program 17N03 – Supplement #2, dated January 9, 2019 ("Ford TSB").  The Ford TSB is attached hereto as Exhibit B, which states the following:

> <u>SERVICE ACTION</u>
>
> At the request of the customer, dealers are to reprogram the climate control module (using IDS release 107.04 or higher), inspect rear-of-vehicle sealing and repair as necessary. This service must be performed at no charge to the vehicle owner.
>
> NOTE: Climate control module reprogramming brings fresh air into the vehicle cabin during rapid acceleration. Some customers in extremely hot and humid climates may notice a momentary change in max air conditioning output.

See *Exhibit B*, Ford TSB, at page 1.

367.    The following conditions have also been observed, and contribute to the defect in the Class Vehicles:

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

a. The design and length of the tail pipes in the Class Vehicles allow exhaust and carbon monoxide to enter the passenger compartment under certain conditions (see photograph below).



//

//

//

//

//

//

//

//

54

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

1        b.     The air duct drafter outlet (for example, Nissan part no. 76805-

2 9DF0A in the 2015 Nissan Altima) in the Class Vehicles is improperly located,

3 defectively designed, not sealed, and allows exhaust and carbon monoxide to enter the

4 passenger compartment under certain conditions (see photograph below);



19        c.     There are several unsealed seams, orifices, seals, and other openings

20 in the rear section of the vehicle, including the trunk lid, that allow exhaust and carbon

21 monoxide to enter the passenger compartment (see examples in the several photographs

22 below).

23 //

24 //

25 //

26 //

27 //

28 //

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)





Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)





57





58





59

d. The Class Vehicles lack a carbon monoxide sensor in the passenger compartment to alert the occupants of carbon monoxide exposure; and

e. The Class Vehicles' exhaust manifold and exhaust tubes are susceptible to leaks and cracks that emit carbon monoxide-rich exhaust, as noted in Nissan's "silent recalls," including Technical Service Bulletin NTB19-0006a, dated September 11, 2019 ("Nissan TSB"), which applies to 2015-2017 Nissan Altimas. (as pictured in the figures from the Nissan TSB, below). (*See* Nissan TSB attached hereto as ***Exhibit A***.)



Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

368.    Prior to the sale and distribution of said vehicles, Defendant Nissan knew the vehicles were in a defective condition as previously described. Further, said Defendant, through its officers, directors and managing agents, had prior notice and knowledge from several sources before the subject incident, including but not limited to the results of testing, inspections, TSBs, recalls, reports, complaints, documents, internal memoranda, correspondence, news reports, and industry publications, that the subject vehicles were defective and presented a substantial and unreasonable risk of harm to the American motoring public, including Plaintiffs, in that said defects unreasonably subjected occupants to carbon monoxide exposure.

369.    For example, numerous individuals have posted on automotive review sites that Nissan routinely monitors that the carbon monoxide defect manifested itself in several of the Class Vehicles' model lines, yet Nissan continued selling its products without providing warning regarding this dangerous defect.

370.    Despite such knowledge Defendant Nissan, acting through their officers, directors and managing agents, for the purpose of enhancing Defendant's profits, knowingly and deliberately failed to remedy the known defects in said vehicles, and failed to warn the public, including Plaintiffs, of the extreme risk of injury occasioned by said defects. Said Defendant and individuals intentionally proceeded with the design, manufacture, sale, distribution, and marketing of said vehicles, knowing persons would be exposed to serious potential danger in order to advance their own pecuniary interest. Defendant's conduct was despicable, and so contemptible that it would be looked down upon and despised by ordinary decent people, and said conduct was carried on by Defendant with a willful and conscious disregard for the safety of Plaintiffs and others, entitling Plaintiffs to exemplary or punitive damages under the laws of each respective Plaintiffs' jurisdiction.

371.    Nissan's cavalier attitude toward the carbon monoxide defect is hardly surprising given the actions of its parent company, Nissan Motor Corporation (also known as Nissan Motor Company, Ltd., which directs the actions of Nissan North

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

America, Inc.). In 2018, for example, Nissan Motor Corporation was caught skewing emissions data required to comply with Japanese regulations. An article in the Detroit News on July 9, 2018 discusses how Nissan admitted that it falsified emissions data.

372.   As a result of the negligent and wrongful conduct of Nissan, Plaintiffs have sustained injuries.

373.   As a further result of the conduct of said Defendant, Plaintiffs incurred property and other pecuniary losses as a result of the actions and inactions herein described.

374.   As a further result of the conduct of said Defendant, Plaintiffs suffered both past and future economic damages as a result of the actions and inactions herein described.

375.   As a further direct and proximate result of the acts and omissions of Defendant, and each of them, Plaintiffs have incurred general damages in an amount according to proof at trial.

## VI.     FACTS COMMON TO ALL CAUSES OF ACTION

### A.     The Dangers of Carbon Monoxide Exposure

376.   Carbon monoxide (CO) is a gas produced by incomplete combustion. In its pure form, CO is colorless, tasteless, and odorless to human senses. The density of carbon monoxide is slightly less than that of air and it distributes rapidly within spaces.

377.   Carbon Monoxide is a component of motor vehicle exhaust, which contributes about 55 percent of all CO emissions nationwide.

378.   When carbon monoxide is mixed with other components of vehicle exhaust, it can and does exhibit a smell, which each of the Plaintiffs have noticed.

379.   Symptoms and signs of poisoning are dependent upon the ambient carbon monoxide level, the duration of exposure, mass of the individual, and co-morbidities of the exposed person. For example, at extremely high levels, symptoms are almost non-existent since the individual loses consciousness before they can develop symptoms. At lower levels, some of the common symptoms include headache, malaise, fatigue, muscle

aches, slowed mentation, and confusion. If ambient levels are enough, unconsciousness
or death can follow.

380.   As discussed in the World Health Organization ("WHO") Guidelines for
Indoor Air Quality, even lower levels of carbon monoxide exposure can cause serious
health effects (many of which would be especially dangerous to a driver in a vehicle, and
other motorists and pedestrians nearby).[2]  In a clinical review, Weaver states that "lower
level CO exposures can cause headache, malaise, and fatigue and can result in cognitive
difficulties and personality changes".[3] This assertion is borne out by Chambers et al. (see
Hopkins), who prospectively followed 256 patients, 55 with "less severe" and 201 with
"more severe" carbon monoxide poisoning.[4][5] Less severe poisoning was defined as no
loss of consciousness and a COHb level of $\leq$ 15%, while more severe poisoning was
defined as loss of consciousness or a COHb of >15%. Of the less severely poisoned
patients, 39% had cognitive deficits at six weeks. Of those more severely poisoned, 35%
had cognitive deficits. In the less vs more severe groups, the incidence of depression was
21% and 16%, respectively, and that of anxiety was 30% and 11%, respectively. There
was no difference in cognitive outcomes between the two groups. Interestingly, the
prevalence of depression was higher in patients with the less compared with the more
severe poisoning at six months. Likewise, the prevalence of anxiety was higher in
patients with the less compared with the more severe poisoning at six weeks. These
results suggest that loss of consciousness is not a requirement for carbon-monoxide-

---

[2] WHO Guidelines for Indoor Air Quality: Selected Pollutants. Geneva: World Health
Organization; 2010. Available from: https://www.ncbi.nlm.nih.gov/books/NBK138705/
[3] Weaver LK. Environmental emergencies: carbon monoxide poisoning. Critical Care
Clinics. 1999;15:297–317.
[4] Chambers CA, et al. Cognitive and affective outcomes of more severe compared to less
severe carbon monoxide poisoning. Brain Injury. 2008;22:387–395.
[5] Hopkins RO. Neurocognitive and affective sequelae of carbon monoxide poisoning. In:
Penney DG, editor. Carbon monoxide poisoning. Boca Raton, FL: CRC Press
LLC/Taylor & Francis Group; 2008. pp. 477–495.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

induced brain damage, and that carbon-monoxide-related cognitive (and other) outcomes may be independent of poisoning severity when that severity is based on COHb saturation.

381.    Several United States federal agencies and trade groups have stated that carbon monoxide levels as low as 9 ppm (parts per million) can be dangerous to humans. These include the World Health Organization (WHO), the United States Environmental Protection Agency (EPA), and the American Society of Heating, Refrigerating and Air-Conditioning Engineers (ASHRAE).

382.    In Russia and other Eurasian Customs Union countries, test methods and regulations have focused not only on VOC emission from interior materials but also vehicle exhaust gases that can be found in vehicle interior air during driving. The national standard GOST R 51206, Pollutant Contents in the Air of Passenger Compartment and Driver's Cab, was developed in 2004 to set limits for combustion gases and certain VOCs. Cabin air levels are monitored in idling mode and while operating the vehicle at 50 km/hr. The maximum allowable concentrations defined for inside the passenger compartment of vehicles is 5 ppm (5 mg/m3, which converts to about 5 ppm). *Underwriters Laboratory ("UL"), Vehicle Interior Air Quality: Addressing Chemical Exposure in Automobiles* (2015) at page 6.

383.    Coronary artery disease, also known as coronary heart disease, is the most important susceptibility characteristic for increased risk due to carbon monoxide exposure.

384.    When inhaled, CO is absorbed from the lungs into the bloodstream. Because CO binds with hemoglobin with an affinity of more than 200 times that of oxygen, it forms a tight but reversible complex with hemoglobin, called carboxyhemoglobin (COHb). The COHb complex impairs the oxygen-carrying capacity of blood, causing reduced tissue oxygenation and ischemia. Because the COHb releases CO slowly, less hemoglobin will be available to transport oxygen from the lungs to the rest of the body, damaging tissue, and gradually suffocating the organs.

64

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

385.   Patients may have an uneventful recovery following carbon monoxide poisoning, however, adverse sequelae following carbon monoxide poisoning are common. Adverse sequelae can follow poisoning immediately and persist, or can manifest symptoms days, weeks, or months following poisoning. The late sequelae following poisoning may be due to apoptosis, adaptive immunological processes, including inflammation and alteration in neurotransmitters. Those who develop sequelae often have persistent headaches, cognitive impairments, generally in the domains of short-term memory, executive function and speed of processing, affective problems, and other neurological sequelae.

386.   According to the Centers for Disease Control ("CDC"), the most common symptoms of CO poisoning are headache, dizziness, weakness, upset stomach, vomiting, chest pain, and confusion.

387.   Given the data associated with distracted driving, dizziness and confusion are two of the CDC's most common symptoms of CO poisoning that can be especially hazardous when drivers are operating a motor vehicle.

388.   Carbon monoxide exposure can also cause drowsiness, a particular danger that may affect a driver's ability to safely operate a motor vehicle. This can increase the risk of a crash resulting in injuries or death to themselves, other vehicle occupants, pedestrians, or the occupants of other motor vehicles who encounter them on the roadways.

389.   If poisoning is associated with prolonged loss of consciousness, more dramatic neurocognitive impairments can occur. Nevertheless, as discussed above, the peer-reviewed literature supports that loss of consciousness does not correlate and is not required for patients to have cognitive impairments or affective problems following poisoning.

390.   Other common sequelae include depression and anxiety, as discussed above, which occur in approximately 50% of accidentally poisoned patients, likely from brain injury. Patients with sequelae often complain of headaches, dizziness, and fatigue. Subtle

65

motor and sensory abnormalities are seen, as well as vestibular dysfunction. Patients with sequelae behave similarly to those with sequelae following traumatic brain injury.

391.    Magnetic resonance brain imaging (MRI) of poisoned patients has shown increased numbers of hyperintensities, hippocampal atrophy, dilated perivascular spaces, and abnormalities in fiber tracking (by diffusion tensor imaging), MR Spectroscopy, and functional MRI. Brain perfusion studies have shown abnormal brain blood flow due to carbon monoxide poisoning. As patients with brain injury age, they are at risk for early cognitive decline and Alzheimer's disease.

392.    Occasionally, poisoned patients manifest cardiac conditions such as mild heart failure and an unexpected number of poisoning patients have mild pulmonary diffusion abnormalities.

393.    Curative therapy for carbon monoxide-related brain injury and its associated adverse sequelae does not exist.

**B.    The Defect**

394.    The Class Vehicles all have a defect that allows exhaust and carbon monoxide to leak from the vehicles' exhaust system into the passenger compartment. The carbon monoxide defect manifests when the recirculation mode in the HVAC system is being used, and is exacerbated by the following: (a) the design of the tail pipes; (b) the location and design of the air duct drafter outlet (for example, Nissan part no. 76805-9DF0A in 2015 Nissan Altimas) which is not sealed and allows exhaust and carbon monoxide to enter the passenger compartment under certain conditions; (c) numerous unsealed seams, orifices, seals, and other openings in the rear of the vehicle (including the trunk lid) that allow exhaust and carbon monoxide to enter the vehicle; (d) the lack of a carbon monoxide sensor in the passenger compartment to alert the occupants of carbon monoxide exposure; and (e) the exhaust manifold and exhaust tubes are susceptible to leaks and cracks that emit carbon monoxide-rich exhaust, as noted in Nissan's "silent recalls," including Technical Service Bulletin NTB19-0006a, dated September 11, 2019

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

("Nissan TSB"), which applies to 2015-2017 Nissan Altimas. See Nissan TSB attached hereto as Exhibit A.

395.   A feasible alternative design that would prevent dangerous carbon monoxide exposure to occupants is a simple and low-cost software reprogramming that switches the HVAC system from recirculation mode to fresh air mode under certain parameters, such as during vehicle acceleration, while climbing hills or pulling a trailer, as well as simply over lengthy operational time periods. The lack of such a system is in itself a defect.

396.   In short, the Class Vehicles exhibit a universal defect (carbon monoxide leaks into the passenger cabin while driving with the HVAC recirculation mode on) and there is a universal fix (reprogram the software that controls the HVAC system so that it switches from recirculation mode to fresh air mode before the occupants are exposed to dangerous levels of carbon monoxide).

397.   Nissan has provided no warnings of this defect to its customers or consumers.

398.   The carbon monoxide defect is the result of a series of engineering failures, as described in more detail, above.

**C.    Nissan's Technical Service Bulletins (TSBs) and Recalls Between 2012-2020 Acknowledge Problems with Exhaust Leaks in Certain Class Vehicles**

399.   Since at least 2012, Nissan has quietly been conducting emissions-related recalls and TSBs involving the Nissan Altima. These recalls and TSBs appear to obfuscate some of the concerns – including exhaust leaks (and intrusion) – and contain inspection procedures, and even replacement of exhaust parts like the manifold, and attaching hardware in some instances, even when there are no signs of leaks or failure. The following is a brief overview of these recalls and bulletins:

a.    **Recall PC130 – ECM Reprogram and Manifold Catalyst (October 11, 2012)**: This covers the 2009 Altima Sedan and Coupe (C/L32) with SULEV (California Specification) 2.5 engine. The repair for this condition is a reprogram of the ECM. However, it is notable that most

67

of the repair procedure is specific to inspecting the exhaust manifold and front exhaust tube, which appears to be unrelated to the ECM's detecting ability. The repair bulletin guides the technician to separate the exhaust components at the front exhaust tube from the center exhaust tube underneath the vehicle, in order to check for exhaust leaks from the front exhaust tube to the manifold.  The technician is then instructed to install a special tool (gauge connected to shop air) on the front exhaust in order to read the pressure in the exhaust system while rotating the engine's crankshaft by hand in order to close the exhaust valves. If enough air escapes during this test, the technician is guided to determine where the leak is coming from, and to replace the front exhaust tube, manifold, or gasket, depending on the source of the leak. This is an atypical practice to replace the exhaust manifold even if it is not leaking and suggests a larger and known problem. As noted in this TSB and others addressed below, the exhaust manifold stay hardware is removed, with specific instructions to discard it upon removal. The hardware is not replaced with a new set – they are told to simply remove the factory-installed hardware, and discard.

b.    **Recall PC131 – ECM Reprogram and Manifold Catalyst (September 3, 2013)**: This campaign covers the 2007 – 2008 Altima Sedan and Coupe (C/L32) with SULEV (California specification) 2.5 engine and appears to be identical to the PC130 recall addressed above, but includes the 2007-2008 MY Altima Sedan and Coupe vehicles. Similarly, it is noteworthy that it prescribes replacement of the exhaust manifold for vehicles over 50k miles, and removal and discarding of the manifold stay hardware.

c.    NTB12-120a – Exhaust Manifold and Three-Way Catalyst Service Information (September 5, 2014): This TSB covers 2007 – 2010

68

Altima Sedan and Coupe (L32) with QR25DE engine only and 2007 – 2011 Altima Hybrid (HL32). This general bulletin stipulates that whenever the exhaust manifold and three-way catalyst assembly are removed for any reason, the exhaust manifold stay and associated hardware must be removed and discarded. The bulletin also specifies that this is required only for certain VINs in the specified model year range provided, and only those equipped with the QR25DE engine.

d. **PC666 – Front Exhaust Tube Dealer Inventory (November 6, 2018)**: This campaign affects 2019 Altima (L34) and calls for an inspection, and if necessary, replacement of the front exhaust pipe. To verify whether or not the vehicle requires a new front exhaust pipe or not, the dealer is instructed to check their internal open campaign programs, and to visually inspect the stamped markings on the underside of the exhaust pipe No information is provided on why certain front exhaust pipes require replacement.

e. **Recall PC689 – Front Exhaust Tube (March 14, 2019)**: This emission recall covers the 2019 Altima (L34) front wheel drive with the PR25DD engine only and includes the same inspection procedure as PC666 outlined above. Again, no specifics are provided as to why the front exhaust tube is being inspected/replaced.

f. **Recall PC717 – Exhaust Manifold and Three-Way Catalyst Assembly (April 24, 2020)**: This emissions recall affects 2018 Altima (L33) and 2018 Rogue (T32) with the QR25DE (4-cyl engine) and specifies replacement of the exhaust manifold, three-way catalyst, and exhaust sensors. No further information is provided regarding the replacement of these exhaust parts.

69

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

**D.    The September 11, 2019 TSB Specifically Discusses Exhaust Leaks in Certain Nissan Altima Vehicles**

400.    Nissan acknowledged a defect in some of the Class Vehicles when it issued NTB19-006a, a technical service bulletin, on September 11, 2019.

401.    This technical service bulletin taught Nissan dealerships how to address cracked exhaust manifolds in 2015-2017 Nissan Altimas—which are Class Vehicles.

402.    These cracked manifolds, according to the technical service bulletin, can cause an exhaust leak—the very defect at issue in this case. (See Nissan TSB attached hereto as Exhibit A.)

403.    Unsurprisingly, this technical service bulletin was not widespread, and consumers remain by and large unaware of the dangerous carbon monoxide defect in the Class Vehicles.

**E.    The Class Vehicles**

404.    The below vehicles are believed to be subject to the Defect. As further testing and discovery is conducted, the population of Class Vehicles may change, but the following list is the current group of years, makes, and models that are alleged to be subject to the Defect:

- 2002-2006 Nissan Altima (L31 built on Nissan FF-L Platform)
- 2007-2012 Nissan Altima (L32A built on Nissan D Platform)
- 2013-2018 Nissan Altima (L33 built on Nissan D Platform)
- 2008-2013 Nissan Altima Coupe (D32 built on Nissan D Platform)
- 2004-2008 Nissan Maxima (A34 built on Nissan FF-L Platform)
- 2009-2014 Nissan Maxima (A35 built on Nissan D Platform)
- 2015-2018 Nissan Maxima (A36 built on Nissan D Platform)
- 2003-2007 Nissan Murano (Z50 built on Nissan FF-L Platform)
- 2009-2014 Nissan Murano (Z51 built on Nissan FF-L Platform)
- 2015-2018 Nissan Murano (Z52 built on Nissan D Platform)
- 2012-2018 Nissan Versa (N17 built on Nissan V Platform)

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

1    • 2014-2018 Infiniti Q50 (Built on Nissan FM Platform)

2    • 2014-2018 Infiniti Q70 (Built on Nissan FM Platform)

3  **F.    Class Vehicles' Warranty**

4    405.   The Class Vehicles are covered by a largely uniform warranty that provides

5  broad coverage for three years or 36,000 miles and powertrain coverage for five years or

6  60,000 miles.

7  **G.    Notice**

8    406.   Nissan knew of the Defect pursuant to several means, including the

9  following:

10    a.    Testing;

11    b.    Inspections;

12    c.    TSBs;

13    d.    Recalls;

14    e.    Industry and company knowledge;

15    f.    NHTSA complaints;

16    g.    Consumer complaints;

17    h.    Online messages and online forums;

18    i.    Receipt of CLRA letters from Plaintiffs;

19    j.    Awareness and news of the well-publicized Ford carbon monoxide
20        defect investigation and litigation regarding Ford Explorers and law
21        enforcement vehicles; and

22    k.    Internal discussions and documents at Nissan regarding the carbon
23        monoxide defect.

24    407.   Some of the publicly-available complaints and comments regarding the

25  carbon monoxide defect in the Class Vehicles include the following:

26    a.    1/22/2003 – Nissan Club Forum Online: Owner complained of exhaust
27        smell when running heat for a long time;

28

71

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

b.    4/2/2009 – NicoClub Forum Online: Owner of Nissan Altima complained of the "dreaded exhaust leak;"

c.    2/2011 – CarComplaints.com: Nissan Altima owner complained about an exhaust smell in vehicle;

d.    2013/2014 – Yahoo Online Forum: Owner of 2002 Altima complained of possibly getting CO poisoning;

e.    12/18/2013 – CarGurus Online Forum: Owner of a 2006 Altima 2.5 S mentions the smell of gasoline when AC is on and asks "Why is there a gas smell inside the car when starting car in A/C heater on?;"

f.    1/6/2015 – NissanForums.com: Owner of 2002 Altima 3.5 SE complained of exhaust fumes when running heater and when stopped:

g.    1/2015 – CarComplaints.com: Nissan Altima owner complained about an exhaust smell in vehicle;

h.    5/15/2016 – NHTSA Customer Complaint: Owner of 2015 Nissan Versa complained of vehicle filling with either exhaust fumes or gas fumes after long operation and driving. Passengers have complained of being lightheaded and sick;

i.    4/20/2017 – NicoClub Forum Online: Numerous website comments regarding post about "Carbon Monoxide exhaust leak inside Altima!!!"

j.    5/2019 – CarComplaints.com: Nissan Altima owner complains about an exhaust smell in vehicle

408.   Nissan's dealerships have even warned of carbon monoxide exposure inside Nissan vehicles. For example, on the Carr Nissan dealership's webpage, attached hereto as Exhibit C, it states (in pertinent part) the following:

**1. AN EXHUAST LEAK IS DANGEROUS**

> **Leaking exhaust is bad news.** It's dangerous for you to inhale, and could give you carbon monoxide poisoning. Breathing exhaust fumes while driving can cause a host of problems including nausea, drowsiness, and even unconsciousness. If you've noticed the smell of exhaust in

72

your vehicle's cabin, **don't try to drive to the dealership.**
Instead, call a tow truck. Driving can put you in grave danger.

## 2. WHEN YOU SMELL THE EXHAUST CAN HELP PINPOINT THE LOCATION

**Do you small exhaust at all times?** If this is the case, the leak is probably near the front of the system, and could be related to the exhaust manifold. If you smell exhaust only when idling, but not in motion, the problem may be somewhere further down the line.

## 3. THE MOST LIKELY CAUSE IS AN EXHAUST LEAK

If it's your vehicle that's making the smell, the **most probable cause is an exhaust leak.** The exhaust system is extensive, running the whole length of your vehicle. With a system this big, leaks can come from all types of places… Whatever the cause may be, smalling exhaust in your cabin means that exhaust is escaping the system from somewhere it shouldn't.

*www.carrnissan.com/service/information-learn-about-causes-for-exhaust-smells-inside-your-nissan-vehicle,* dated December 7, 2018 and last accessed on October 16, 2020 (emphasis in original).

## H. Nissan's Willing Omissions

409.   Despite knowing, through a variety of sources, that the Class Vehicles contained the carbon monoxide defect, Nissan continually failed to make the carbon monoxide defect known in its advertising, marketing, and instructional materials.

410.   For example, the window stickers on for-sale Nissans contained no mention of the carbon monoxide defect, the instructional manuals contained no mention of the carbon monoxide defect, and Nissan's advertisements contained no mention of the carbon monoxide defect.

411.   Indeed, even once the carbon monoxide defect came to light, Nissan did not implement a widespread recall to address the defect. Instead, on September 11, 2019, it clandestinely issued NTB19-006a, a technical service bulletin that informed Nissan dealerships how to deal with exhaust manifold issues in 2015-2017 Altimas—a portion of the Class Vehicles.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

# I.     Carbon Monoxide Exposure in Nissan Vehicles Continues to be Reported by Consumers

412.   In just the first three months of 2020, there have been several complaints by consumers, including the following:

a. On January 21, 2020, a consumer posted on Twitter that that they were "blasting music in their 2003 Nissan Altima with the windows down in 20-degree weather because it has a CO leak;"

b. On January 27, 2020, in a NHTSA complaint, an owner of 2012 Nissan Altima complained of "exhaust fumes inside the car from a cracked exhaust manifold;" and

c. On March 3, 2020, in a NHTSA complaint, an owner of a 2015 Nissan Versa complained of "exhaust fumes."

413.   Given the continuing complaints, the carbon monoxide defect is a continuing danger to the public.

## VII.     TOLLING OF STATUTES OF LIMITATIONS

414.   Any applicable statute(s) of limitations have been tolled by Nissan's knowing and active concealment and denial of the facts alleged herein. For example, despite knowing, through online forums and other sources, that the Class Vehicles exhibited the carbon monoxide defect, Nissan continued selling them without updating their promotional materials to include information regarding the defect. Plaintiffs and the Members of the Class could not have reasonably discovered the true, latent nature of the Defect until shortly before this class action litigation was commenced.

415.   In addition, even after Plaintiffs and Class Members contacted Nissan concerning the Defect, they were routinely told by Nissan that the Class Vehicles were not defective, as set forth above, when the true cause of the carbon monoxide exposure was Defendant's defectively designed or manufactured vehicles.

416.   Nissan was and remains under a continuing duty to disclose to Plaintiffs and the Members of the Class the true character, quality, and nature of the Class Vehicles,

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

that they will require costly repairs, pose safety concerns, and diminish the resale value of the Class Vehicles. As a result of the active concealment by Nissan, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## VIII.    CLASS ALLEGATIONS

417.    Plaintiffs bring this action on their own behalf, and on behalf of a nationwide class, defined as follows: Nationwide Class:  All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle.

418.    Members of the Nationwide Class have all suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm that results in both physical injuries and economic loss.

419.    Plaintiffs also seek to represent the following classes of consumers: State Classes:  All persons or entities in the states of California, Alabama, Arkansas, Connecticut, Delaware, Florida, Georgia, Illinois, Kansas, Louisiana, Maryland, Michigan, Nevada, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, South Carolina, Tennessee, Texas, Virginia, and Washington who purchased or leased a Class Vehicle. Each member of the State Classes is also a member of the Nationwide Class.

420.    Members of the State Classes have all suffered an actual injury in fact, as exposure to carbon monoxide (even at low levels) is a concrete harm that results in economic loss.

421.    Together, the Nationwide Class and the State Classes shall be collectively referred to herein as the "Class." Excluded from the Class are Nissan (including Infiniti), its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the Class definitions based on discovery and further investigation.

422.    Numerosity: Upon information and belief, the Class is so numerous that joinder of all Class Members is impracticable. While the exact number and identities of

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

individual members of the Class are unknown at this time, such information being in the Defendant's sole possession and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis alleges, that millions of Class Vehicles have been sold and leased in United States that are the subject of the Class. By way of example, Plaintiffs' research indicates the following sales numbers for just a portion of the Class Vehicles for which data is currently available to Plaintiffs:

- 2006-2018 Nissan Altima: 3,126,130
- 2008-2014 and 2016-2018 Nissan Maxima: 537,626
- 2009-2018 Nissan Murano: 583,109
- 2013-2018 Nissan Versa: 406,275

423.  Existence and Predominance of Common Questions of Fact and Law: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to, whether:

    a.    the Class Vehicles were sold with defects;

    b.    Nissan knew about the Defect but failed to disclose it and its consequences to Nissan customers;

    c.    Nissan misrepresented the safety of the Class Vehicles;

    d.    a reasonable consumer would consider the Defect or its consequences to be material;

    e.    Nissan should be required to disclose the Defect's existence and its consequences; and

    f.    Nissan's conduct violates the California Legal Remedies Act, California Unfair Competition Law, and the other statutes asserted herein.

424.  Typicality: All of Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchased their vehicles with the same defective vehicle design as other Class Members. Furthermore, Plaintiffs and all members of the Class sustained

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

monetary and economic injuries including, but not limited to, ascertainable losses arising out of Nissan's wrongful conduct. Plaintiffs advance the same claims and legal theories on behalf of themselves and all absent Class Members.

425. Adequacy: Plaintiffs adequately represents the Class because their interests do not conflict with the interests of the Class they seek to represent, they have retained counsel who are competent and highly experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs and their counsel are well-suited to fairly and adequately protect the interests of the Class.

426. Superiority: A class action is superior to all other available means of fairly and efficiently adjudicating the claims brought by Plaintiffs and the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Nissan's conduct. It would be virtually impossible for Class Members on an individual basis to effectively redress the wrongs done to them. Even if Class Members could afford such individual litigation, the courts cannot. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system, particularly where the subject matter of the case may be technically complex. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, individual Class Members can be readily identified and notified based on, inter alia, Nissan's vehicle identification numbers, warranty claims, registration records, and database of complaints.

427. Nissan has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

# IX.    CLAIMS

**A.    Claims Brought on Behalf of the Nationwide Class**

**COUNT 1: VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT**

**(15 U.S.C. § 2301, et seq.)**

**(By All Plaintiffs Individually and on Behalf of the Nationwide Class)**

428.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

429.    Plaintiffs bring this claim on behalf of themselves and on behalf of the Members of the Nationwide Class.

430.    Plaintiffs and the Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

431.    Nissan is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5).

432.    The Class Vehicles, including Plaintiffs' vehicles, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

433.    Nissan's new vehicle warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

434.    Nissan breached its express warranties by:

    a.    providing the Class Vehicles, which present an unreasonable risk of carbon monoxide exposure, and are thus not fit for their ordinary purpose of providing safe and reliable transportation;

    b.    by refusing and/or failing to repair or replace the defective vehicles' materials and/or design defects that cause the Class Vehicles to leak carbon monoxide into the passenger compartment; and

    c.    refusing and/or failing to honor the express warranties by repairing or replacing, free of charge, the consequential damage resulting from the Class Vehicles that have experienced carbon monoxide leakage.

78

435.   Plaintiffs and the other Class Members relied on the existence and length of the express warranties in deciding whether to purchase or lease the Class Vehicles.

436.   Nissan's breach of express warranties has deprived Plaintiffs and the other Class Members of the benefit of their bargain.

437.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

438.   Nissan has been given reasonable opportunity to cure its breach of the written warranties. Alternatively, Plaintiffs and the other Class Members are not required to do so because affording Nissan a reasonable opportunity to cure its breach of written warranties was, and is, futile. Nissan was also on notice of the alleged defect from the complaints and service requests it received from Class Members, as well as from Nissan's own warranty claims, customer complaint data, NHSTA complaints, and lawsuits.

439.   As a direct and proximate cause of Nissan's breach of the written warranties, Plaintiffs and the other Class Members sustained damages and other losses in an amount to be determined at trial. Nissan's conduct damaged Plaintiffs and the other Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney's fees and/or other relief as deemed appropriate.

//
//
//
//
//
//

79

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

**B.      Claims Brought on Behalf of the California Class**

**COUNT 2: VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT**

**("CLRA")**

**(Cal. Civ. Code § 1750, et seq.)**

**(By All Plaintiffs Individually and on Behalf of the Nationwide Class and the California Class)**

440.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

441.    Plaintiffs bring this claim on behalf of themselves and on behalf of the Members of the Nationwide Class. Alternatively, Plaintiffs bring this claim on behalf of themselves and on behalf of the Members of the California Class.

442.    Nissan is a "person" as that term is defined in Civil Code § 1761(c).

443.    Plaintiffs and the Class Members are "consumers" as that term is defined in Civil Code § 1761(d).

444.    Nissan engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class Members that the Class Vehicles suffer from a defect(s) (and the costs, risks, and diminished value of the vehicles as a result of this problem). These acts and practices violate, at a minimum, the following sections of the CLRA:

- Representing that goods or services have sponsorships, characteristics, uses, benefits, or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;

- Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

- Advertising goods and services with the intent not to sell them as advertised.

80

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

445.    Nissan's unfair or deceptive acts or practices occurred repeatedly in its trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

446.    Nissan knew that the Class Vehicles' were defectively designed or manufactured, would fail without warning, and were not suitable for their intended use of safe and reliable transportation. Nissan nevertheless failed to warn Plaintiff and the Class Members about these inherent dangers despite having a duty to do so.

447.    Nissan had the duty to Plaintiffs and the Class Members to disclose the Defect and the defective nature of the Class Vehicles because:

a)    Nissan was in a superior position to know the true state of facts about the Defect and associated repair costs in the Class Vehicles;

b)    Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had dangerous defects until the defects became manifest;

c)    Nissan knew that Plaintiffs and the Class Members could not reasonably have been expected to learn about or discover the Defect and its associated repair costs; and

d)    Nissan actively concealed the Defect, its causes, and resulting effects through deceptive marketing campaigns designed to hide the life-threatening problems from Plaintiffs and other Class Members; and/or

e)    Nissan made incomplete representations about the safety and reliability of the Class Vehicles generally, while purposefully withholding material facts from Plaintiffs and other Class Members that contradicted these representations

448.    In failing to disclose the Defect and the associated safety risks and repair costs resulting from it, Nissan has knowingly and intentionally concealed material facts and breached its duty to disclose.

81

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

449.    The facts Nissan concealed or did not disclose to Plaintiffs and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles or pay a lesser price. Had Plaintiffs and the Class known the Class Vehicles were defective, they would not have purchased the Class Vehicles or would have paid less for them.

450.    Plaintiffs provided Nissan with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a). Nissan and its counsel received and responded to Plaintiffs' CLRA letters, and no further action was taken by Nissan.

451.    Nissan's fraudulent and deceptive business practices proximately caused injuries to Plaintiffs and the other Class Members.

452.    Therefore, Plaintiffs and the other Class Members seek all available relief under the CLRA.

## COUNT 3: VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW

### (Cal. Bus. & Prof. Code § 17200)

### (By All Plaintiffs Individually and on Behalf of the Nationwide Class and the California Class)

453.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

454.    Plaintiffs bring this claim on behalf of themselves and on behalf of the Members of the Nationwide Class. Alternatively, Plaintiffs bring this claim on behalf of themselves and on behalf of the Members of the California Class.

455.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Bus. & Prof. Code, § 17200.

456.    Nissan has engaged in unfair competition and unfair, unlawful, or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and other Class Members that the

82

Class Vehicles suffer from the Defect (and the costs, safety risks, and diminished value of the vehicles as a result of these problems). Nissan should have disclosed this information because it was in a superior position to know the true facts related to the Defect, and Plaintiffs and Class Members could not have been reasonably expected to learn or discover these true facts.

457. The Defect constitutes a safety issue triggering Nissan's duty to disclose.

458. By its acts and practices, Nissan has deceived Plaintiffs and is likely to have deceived the public. In failing to disclose the Defect and suppressing other material facts from Plaintiffs and other Class Members, Nissan breached its duty to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and the Class Members. Nissan's omissions and acts of concealment pertained to information material to Plaintiffs and other Class Members, as it would have been to all reasonable consumers.

459. The injuries Plaintiffs and the Class Members suffered greatly outweigh any potential countervailing benefit to consumers or to competition, and they are not injuries that Plaintiffs and the Class Members could or should have reasonably avoided.

460. Nissan's acts and practices are unlawful because they violate Civil Code §§ 1668, 1709, 1710, and 1750 et seq., and Commercial Code § 2313.

461. Plaintiffs seeks to enjoin Nissan from further unlawful, unfair, and/or fraudulent acts or practices, to obtain restitutionary disgorgement of all monies and revenues Nissan has generated as a result of such practices, and all other relief allowed under Business & Professions Code § 17200.

**COUNT 4: VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW**
**(Cal. Bus. & Prof. Code § 17500, et seq.)**

**(By All Plaintiffs Individually and on Behalf of the Nationwide Class and the California Class)**

462. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

463.   Plaintiffs bring this claim on behalf of themselves and on behalf of the Members of the Nationwide Class. Alternatively, Plaintiffs bring this claim on behalf of themselves and on behalf of the Members of the California Class.

464.   Business & Professions Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

465.   Nissan caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care Nissan should have known to be untrue and misleading to consumers, including Plaintiffs and other Class Members.

466.   Nissan has violated § 17500 because its misrepresentations and omissions regarding the safety, reliability, and functionality of the Class Vehicles were material and likely to deceive a reasonable consumer.

467.   Plaintiffs and the other Class Members have suffered injuries in fact, including the loss of money or property, resulting from Nissan's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiffs and the other Class Members relied on Nissan's misrepresentations and/or omissions with respect to the Class Vehicles' safety and reliability. Nissan's representations were untrue because it distributed the Class Vehicles with the Defect. Had Plaintiffs and the other Class Members known this, they would not have purchased or leased the Class Vehicles or would not have paid as much for them. Accordingly, Plaintiffs and the other Class Members did not receive the benefit of their bargain.

84

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

468.   All the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Nissan's business. Nissan's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

469.   Plaintiffs, individually and on behalf of the other Class Members, request that the Court enter such orders or judgments as may be necessary to enjoin Nissan from continuing its unfair, unlawful, and/or deceptive practices, and restore to Plaintiffs and the other Class Members any money Nissan acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## COUNT 5: VIOLATIONS OF THE SONG-BEVERLY ACT – BREACH OF IMPLIED WARRANTY

### (Cal. Civ. Code §§ 1792, 1791.1, et seq.)

### (By All Plaintiffs Individually and on Behalf of the Nationwide Class and the California Class)

470.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

471.   Plaintiffs bring this claim on behalf of themselves and on behalf of the Members of the Nationwide Class. Alternatively, Plaintiffs bring this claim on behalf of themselves and on behalf of the Members of the California Class.

472.   At all relevant times hereto, Nissan was the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Nissan knew or should have known of the specific use for which the Class Vehicles were purchased.

473.   Nissan provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. The Class Vehicles, however, are not fit for their ordinary purpose because, inter alia, the Class Vehicles suffered from an inherent defect at the time of sale.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

474. The Class Vehicles are not fit for the purpose of providing safe and reliable transportation because of the Defect.

475. Nissan impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, inter alia, the following: (i) a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Nissan were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use—providing safe and reliable transportation—while the Class Vehicles were being operated.

476. Contrary to the applicable implied warranties, the Class Vehicles were not fit for their ordinary and intended purpose of providing safe and reliable transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defects(s).

477. Nissan's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of Civil Code §§ 1792 and 1791.1.

## COUNT 6: VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS WARRANTIES
### (Cal. Civ. Code § 1793.2(d) & 1791.2)
**(By All Plaintiffs on Behalf of the Nationwide Class and the California Class)**

478. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

479. Plaintiffs bring this claim on behalf of themselves and on behalf of the Members of the Nationwide Class. Alternatively, Plaintiffs bring this claim on behalf of themselves and on behalf of the Members of the California Class.

480. Plaintiffs and the Class Members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of Civil Code § 1791.

481. The Nissan vehicles are "consumer goods" within the meaning of Civil Code § 1791(a).

482.    Nissan is a "manufacturer" of the Class Vehicles within the meaning of Civil Code § 1791(j).

483.    Plaintiffs and the Class bought/leased new motor vehicles manufactured by Nissan.

484.    Nissan made express warranties to Plaintiffs and the Class within the meaning of California Civil Code §§ 1791.2 and 1793.2, both in its warranty manual and advertising, as described above.

485.    The Class Vehicles had and continue to have defects that were and continue to be covered by Nissan's express warranties and these defects substantially impair the use, value, and safety of Nissan's vehicles to reasonable consumers like Plaintiffs and the Class.

486.    Plaintiffs and the Class delivered their vehicles to Nissan or its authorized repair facility for repair of the defects and/or notified Nissan in writing of the need for repair of the defects because they reasonably could not deliver the vehicles to Nissan or its authorized repair facility due to fear carbon monoxide exposure.

487.    Nissan and its authorized repair facilities failed and continue to fail to repair the vehicles to match Nissan's written warranties after a reasonable number of opportunities to do so.

488.    Plaintiffs and the Class Members gave Nissan or its authorized repair facilities at least two opportunities to fix the defects unless only one repair attempt was possible because the vehicle was later destroyed or because Nissan or its authorized repair facility refused to attempt the repair.

489.    Nissan did not promptly replace or buy back the vehicles of Plaintiffs and the Class.

490.    As a result of Nissan's breach of its express warranties, Plaintiffs and the Class received goods whose dangerous condition substantially impairs their value to Plaintiffs and the Class. Plaintiffs and the Class have been damaged as a result of the products' malfunctioning, and the nonuse of their vehicles.

491.    Pursuant to Civil Code §§ 1793.2 & 1794, Plaintiffs and the Class are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their vehicles, or the overpayment or diminution in value of their vehicles.

## COUNT 7: BREACH OF IMPLIED WARRANTY
## (Cal. U. Com. Code § 231)
### (By All Plaintiffs Individually and on Behalf of the Nationwide Class and the California Class)

492.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

493.    Plaintiffs bring this claim on behalf of themselves and on behalf of the Members of the Nationwide Class. Alternatively, Plaintiffs bring this claim on behalf of themselves and on behalf of the Members of the California Class.

494.    Nissan was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Nissan knew or had reason to know of the specific use for which the Class Vehicles were purchased.

495.    Nissan provided Plaintiffs and the other Class Members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, inter alia, there are defects in the Class Vehicles that result in carbon monoxide exposure to the vehicle occupants.

496.    Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

497.    Nissan impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles manufactured, supplied, distributed, and/or sold by Nissan were safe and reliable for providing transportation and would not experience

88

premature and catastrophic failure; and (ii) a warranty that the Class Vehicles would be fit for its intended use while being operated.

498.    Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the other Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

499.    Nissan's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

500.    After Plaintiffs received the injuries complained of herein, notice was given by Plaintiffs to Defendant, by direct communication with Defendant Nissan as well as by the filing of this lawsuit in the time and in the manner and in the form prescribed by law, of the breach of said implied warranty.

501.    As a legal and proximate result of the breach of said implied warranty, Plaintiffs sustained the damages herein set forth.

502.    Plaintiffs and Class Members are, therefore, entitled to damages in an amount to be proven at the time of trial.

## COUNT 8: BREACH OF EXPRESS WARRANTY
### (Cal. U. Com. Code § 2313)

**(By All Plaintiffs Individually and on Behalf of the Nationwide Class and the California Class)**

503.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

504.    Plaintiffs bring this claim on behalf of themselves and on behalf of the Members of the Nationwide Class. Alternatively, Plaintiffs bring this claim on behalf of themselves and on behalf of the Members of the California Class.

505.   Nissan provided all purchasers and lessees of the Class Vehicles with the express warranties described herein, which became part of the basis of the parties' bargain. Accordingly, Nissan's warranties are express warranties under state law.

506.   In the course of selling its vehicles, Nissan expressly warranted in writing that its vehicles were covered by a new vehicle warranty.

507.   Nissan distributed the defective parts causing the Defect in the Class Vehicles, and said parts are covered by Nissan's warranties granted to all Class Vehicle purchasers and lessors.

508.   Nissan breached these warranties by selling and leasing Class Vehicles with the Defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

509.   Plaintiffs notified Nissan of its breach within a reasonable time, and/or were not required to do so because affording Nissan a reasonable opportunity to cure its breaches would have been futile. Nissan also knew about the Defect but chose instead to conceal it as a means of avoiding compliance with its warranty obligations.

510.   As a direct and proximate cause of Nissan's breach, Plaintiffs and the other Class Members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value. Plaintiffs and the Class Members have incurred and will continue to incur costs related to the Defect's diagnosis and repair.

511.   Any attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Nissan's warranty limitations are unenforceable because it knowingly sold a defective product without giving notice of the Defect to Plaintiffs or the Class.

512.   The time limits contained in Nissan's warranty period were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time

90

limitations, the terms of which unreasonably favored Nissan. A gross disparity in bargaining power existed between Nissan and the Class Members because Nissan knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

513.   Plaintiffs and the Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Nissan's conduct.

## COUNT 9: BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Under California Law)
### (By All Plaintiffs Individually and on Behalf of the Nationwide Class and the California Class)

514.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

515.   Plaintiffs bring this claim on behalf of themselves and on behalf of the Members of the Nationwide Class. Alternatively, Plaintiffs bring this claim on behalf of themselves and on behalf of the Members of the California Class.

516.   Nissan was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Nissan knew or had reason to know of the specific use for which the Class Vehicles were purchased.

517.   Nissan provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, inter alia, the Class Vehicles suffered from the Defect at the time of sale. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

518.   Nissan impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a

91

warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Nissan were safe and reliable for the purpose for which they were installed in the vehicles; and (ii) a warranty that the Class Vehicles would be fit for their intended use while being operated.

519.    Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the other Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

520.    Nissan's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

**COUNT 10: COMMON LAW FRAUDULENT CONCEALMENT**

**(Under California Law)**

**(By All Plaintiffs Individually and on Behalf of the Nationwide Class and the California Class)**

521.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

522.    Plaintiffs bring this claim on behalf of themselves and on behalf of the Members of the Nationwide Class. Alternatively, Plaintiffs bring this claim on behalf of themselves and on behalf of the Members of the California Class.

523.    Nissan made material omissions concerning a presently existing or past fact. For example, Defendant did not fully and truthfully disclose to their customers the true nature of the inherent defect of the Class Vehicles, which was not readily discoverable until years later. As a result, Plaintiffs and the other Class Members were fraudulently induced to lease and/or purchase the Class Vehicles with said defect and all the resultant problems.

524.    These omissions were made by Defendant with knowledge of their falsity, and with the intent that Plaintiffs and the Class Members rely on them.

92

525.   Plaintiffs and the Class Members reasonably relied on these omissions and suffered damages as a result. Plaintiffs and the Class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or would have paid significantly less for them had the true nature of the Defect been disclosed to them.

**C.     Claims Brought on Behalf of the Alabama Class**

**COUNT 11: VIOLATIONS OF ALABAMA DECEPTIVE TRADE PRACTICES ACT**

**(Ala. Code § 8-19-1, et seq.)**

**(By Plaintiffs Common, Milton, and Warner-Stanton, Individually and on Behalf of the Alabama Class)**

526.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

527.   Plaintiffs Common, Milton and Warner-Stanton (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves and the Alabama Class against Defendant.

528.   Plaintiffs and the Alabama Class are "consumers" within the meaning of Ala. Code § 8-19-3(2).

529.   Plaintiffs, the Alabama Class, and Defendant are "persons" within the meaning of Ala. Code § 8-19-3(5).

530.   The Class Vehicles are "goods" within the meaning of Ala. Code § 8-19-3(3).

531.   Defendant was and is engaged in "trade or commerce" within the meaning of Ala. Code § 8-19-3(8).

532.   The Alabama Deceptive Trade Practices Act ("Alabama DTPA") declares several specific actions to be unlawful, including: "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if

93

they are of another," and "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5.

533.   In the course of their business, Defendant omitted material facts concerning the Class Vehicles. Nissan accomplished this by failing to disclose this defect in advertising and instructional materials despite knowing of the carbon monoxide defect's existence. Plaintiffs and Alabama Class members had no way of discerning that Nissan's representations were false and misleading.

534.   Defendant thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

535.   Defendant engaged in misleading, false, unfair or deceptive acts or practices that violated the Alabama DTPA by failing to disclose and actively concealing the defect that led to carbon monoxide pooling in the class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, and that stood behind its vehicles after they were sold.

536.   Nissan intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Alabama Class.

537.   Nissan knew or should have known that its conduct violated the Alabama DTPA.

538.   Defendant owed Plaintiffs and the Alabama Class a duty to disclose the public health and safety risks of the Class Vehicles because Nissan:

      a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that were unsafe;

94

     b.    intentionally concealed the foregoing from regulators and consumers, Plaintiffs, Class members; and/or

     c.    made incomplete representations about the safety of the Class Vehicles, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

539.  Defendant concealed the carbon monoxide defect, endangering consumers. The value of the Class Vehicles has greatly diminished as a result of the danger presented by the Defect.

540.  Nissan's concealment of the carbon monoxide defect was material to Plaintiffs and the Alabama Class.

541.  Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the safety and value of the Class Vehicles.

542.  Plaintiffs and the Alabama Class suffered ascertainable loss and actual damages as a direct and proximate result of Nissan's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs and the Alabama Class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered safe to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

543.  Defendant had an ongoing duty to all Nissan customers to refrain from unfair and deceptive practices under the Alabama DTPA. All owners of Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Nissan's deceptive and unfair acts and practices made in the course of Nissan's business.

544.  Defendant's violations present a continuing risk to Plaintiffs as well as to the

545.   general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

546.   As a direct and proximate result of Defendant's violations of the Alabama DTPA,

547.   Plaintiffs and the Alabama Class have suffered injury-in-fact and/or actual damage.

548.   Pursuant to Ala. Code § 8-19-10, Plaintiffs and the Alabama Class seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $100 for each Plaintiff and each Alabama Class member.

549.   Plaintiffs also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under Ala. Code § 8-19-1, *et seq.*

550.   Certain Plaintiffs and class members sent a letter complying with Ala. Code § 8-19-10(e). Because Nissan failed to remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Alabama Class are entitled.

## COUNT 12: BREACH OF EXPRESS WARRANTY
### (Ala. Code §§ 7-2-313 and 7-2A-210)
### (By Plaintiffs Common, Milton and Warner-Stanton, Individually and on Behalf of the Alabama Class)

551.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

552.   Plaintiffs bring this Count on behalf of themselves and the Alabama Class against Defendant.

553.   Defendant is and was at all relevant times "merchants" with respect to motor vehicles under Ala. Code §§ 7-2-104(1) and 7-2A-103(3), and "sellers" of motor vehicles under § 7-2-103(1)(d).

96

554.   With respect to leases, Defendant is and was at all relevant times "lessors" of motor vehicles under Ala. Code. § 7-2A-103(1)(p).

555.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Ala. Code §§ 7-2-105(1) and 7-2A-103(1)(h).

556.   In connection with the purchase or lease of each one of its new vehicles, Defendant provides an express New Vehicle Limited Warranty ("NVLW") for a period of three years or 36,000 miles, whichever occurs first. This NVLW exists to "correct defects in materials or workmanship of all parts and components of each new Nissan vehicle."

557.   Defendant's warranties formed a basis of the bargain that was reached when Plaintiffs and other Alabama Class members purchased or leased their Class Vehicles that suffered from the carbon monoxide defect.

558.   Plaintiffs and the Alabama Class members experienced defects within the warranty period. Despite the existence of warranties, Defendant failed to inform Plaintiffs and Alabama Class members that the Class Vehicles suffered from the carbon monoxide defect and failed to fix the defect free of charge.

559.   Defendant breached the express warranty promising to repair and correct a manufacturing defect or materials or workmanship of any parts they supplied. Defendant have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

560.   At the time the Defendant warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendant wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Plaintiffs and the other Alabama Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

561.   Many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacements or adjustments," as many incidental and

97

562.   consequential damages have already been suffered because of Nissan's fraudulent conduct as alleged herein, and because of its failure and/or continued failure to remedy the carbon monoxide defect within a reasonable time, and any limitation on Plaintiffs' and the other Alabama Class members' remedies would be insufficient to make Plaintiffs and the other Alabama Class members whole.

563.   Finally, because of the Defendant's breach of warranty as set forth herein, Plaintiffs and the other Alabama Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and the other Alabama Class members of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

564.   Defendant was provided notice of these issues by numerous complaints filed against them, including the instant Complaint.

565.   As a direct and proximate result of Defendant's breach of express warranties, Plaintiff and the other Alabama Class members have been damaged in an amount to be determined at trial.

## COUNT 13: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Ala. Code §§ 7-2-314 and 7-2A-212)

### (By Plaintiffs Common, Milton and Warner-Stanton, Individually and on Behalf of the Alabama Class)

566.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

567.   Plaintiffs bring this Count on behalf of themselves and the Alabama Class against Defendant.

568.   Defendant is and was at all relevant times "merchants" with respect to motor vehicles under Ala. Code §§ 7-2-104(1) and 7-2A-103(3), and "sellers" of motor vehicles under § 7-2-103(1)(d).

98

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

569.   With respect to leases, Defendant is and was at all relevant times "lessors" of motor vehicles under Ala. Code. § 7-2A-103(1)(p).

570.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Ala. Code §§ 7-2-105(1) and 7-2A-103(1)(h).

571.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ala. Code §§ 7-2-314 and 7-2A-212.

572.   These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are inherently defective in that their design enables carbon monoxide to enter the cabins of the Class Vehicles.

573.   Defendant was provided notice of these issues by numerous complaints filed against it including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and others.

574.   As a direct and proximate result of the Defendant's breach of the implied warranty of merchantability, Plaintiffs and the other Alabama Class members have been damaged in an amount to be proven at trial.

**D.    Claims Brought on Behalf of the Arkansas Class**

**COUNT 14: VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT**

**(Ark. Code. Ann. §§ 4-88-01, et seq.)**

**(By Plaintiff Kindt Individually and on Behalf of the Arkansas Class)**

575.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

576.   Plaintiff Kelly Kindt (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of herself and the Arkansas Class against Defendant.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

577.   The Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. §§ 4-88-101, et seq., prohibits deceptive and unconscionable trade practices in business, commerce, or trade. Ark. Code Ann. § 4-88-107(a).

578.   Plaintiff and the Arkansas Class members are "persons" within the meaning of Arkansas Code Annotated § 4-88-102(5).

579.   Nissan's products and services are "goods" and "services" as defined by Arkansas Code Annotated §§4-88-102(4) and (7).

580.   Nissan does business in Arkansas, sells, and distributes vehicles in Arkansas, and engaged in deceptive acts and practices in connection with the sale and/or lease of the Class Vehicles in Arkansas and elsewhere in the United States.

581.   Nissan knowingly failed to disclose, concealed, suppressed, and/or omitted material facts regarding the defect which led carbon monoxide to enter the cabin of the Class Vehicles and associated safety hazard and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to the Plaintiff and the Arkansas Class members. Nissan actively suppressed the fact that the exhaust systems in Class Vehicles are defective and present a safety hazard because of materials, workmanship and/or manufacturing defects.

582.   Nissan's unfair or deceptive acts or practices occurred repeatedly in its trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

583.   Nissan knew that the Class Vehicles' suffered from the carbon monoxide defect.

584.   Nissan had the duty to Plaintiff and the Arkansas Class members to disclose the defect which led carbon monoxide to enter the cabin of the Class Vehicles and the defective nature of the Class Vehicles because:

a.   Nissan was in a superior position to know the true state of facts about the defect which led carbon monoxide to enter the cabin of the Class Vehicles and associated repair costs in the Class Vehicles;

100

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

b.   Plaintiff and the Arkansas Class members could not reasonably have been expected to learn or discover that the Class Vehicles had dangerous defects until manifestation of the Defect;

c.   Nissan knew that Plaintiff and the Arkansas Class members could not reasonably have been expected to learn about or discover the Defect and its associated repair costs; and

d.   Nissan actively concealed the Defect, its causes, and resulting effects, by asserting to Plaintiff and Arkansas Class members that their cars did not suffer from the carbon monoxide defect.

585.   Whether or not a vehicle fills with carbon monoxide is a fact a reasonable consumer would consider important in selecting a vehicle to purchase or lease. When Plaintiff and the Arkansas Class members bought a Class Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would not fill with carbon monoxide.

586.   In failing to disclose Defect and the associated safety risks and repair costs resulting from it, Nissan has knowingly and intentionally concealed material facts and breached its duty to disclose.

587.   Nissan's unfair and deceptive trade practices were likely to deceive a reasonable consumer. Plaintiff and members of the Arkansas Class had no reasonable way to know that Class Vehicles contained a defect that led to carbon monoxide entering the cabin of the class vehicles and that Class Vehicles were defective in materials, workmanship, and/or manufacture and posed a safety risk. Nissan possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the carbon monoxide defect and associated safety risks, and any reasonable consumer would have relied on Nissan's misrepresentations and omissions, as Plaintiff and members of the Arkansas Class did.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

588.   Nissan's unfair and deceptive acts or practices, affirmative misrepresentations, and/or material omissions regarding the carbon monoxide defect were intended to mislead consumers and misled Plaintiff and Arkansas Class members.

589.   Nissan's violations present a continuing risk to Plaintiff and Arkansas Class members, as well as to the general public. Nissan's unlawful acts and practices complained of herein affect the public interest.

590.   As a direct and proximate result of Nissan's violations, Plaintiff and members of the Arkansas Class have suffered actual damages and/or injury in fact, including, inter alia: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the defective systems; and (2) the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the Defect.

591.   Nissan's conduct is not only deceptive, but also unconscionable within the meaning of ADTPA because it constitutes immoral, unethical, oppressive, and unscrupulous activity, caused substantial injury to consumers and businesses, and provided no benefit to consumers or competition.

592.   Nissan intended to mislead Plaintiff and Arkansas Class members and induce them to rely on its misrepresentations.

593.   Plaintiff and the Arkansas Class suffered, and will continue to suffer, actual financial loss as a result of Nissan's unconscionable and deceptive acts and practices. Plaintiff also seeks an order enjoining Nissan's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

**COUNT 15: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Ark. Code §§ 4-2-314 and 4-2A-212)**

**(By Plaintiff Kindt Individually and on Behalf of the Arkansas Class)**

594.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

102

595.    Plaintiff brings this cause of action on behalf of herself and the Arkansas Class against Defendant.

596.    Nissan is and was at all relevant times a "merchant" with respect to motor vehicles under Arkansas Code §§ 4-2-104(1) and 4-2A-103(3), and a "seller" of motor vehicles under § 4-2-103(1)(d).

597.    With respect to leases, Nissan is and was at all relevant times a "lessor" of motor vehicles under Arkansas Code § 4-2A-103(1)(p).

598.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Arkansas Code §§ 4-2-105(1) and 4-2A-103(1)(h).

599.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Arkansas Code §§ 4-2-314 and 4-2A-212.

600.    Nissan impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, inter alia, the following: (i) a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Nissan were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use—providing safe and reliable transportation—while the Class Vehicles were being operated.

601.    Nissan breached the implied warranty of merchantability in that the Class Vehicles were not in merchantable condition when they were sold to Plaintiffs and Arkansas Class members and said vehicles were and are unfit for the ordinary purposes for which such vehicles are used because they pose a serious safety risk to the occupants and are an unreliable means of transportation.

602.    Plaintiff or class members notified Nissan of the Defect in the subject vehicles within a reasonable time after Plaintiff experienced the carbon monoxide defect. Nissan has been provided notice of these issues by numerous complaints, as alleged herein.

603.    As a direct and proximate result of breaches of the implied warranty of merchantability, Plaintiff and the Arkansas Class members have suffered damages, including but not limited to incidental and consequential damages.

## COUNT 16: BREACH OF EXPRESS WARRANTY
## (Ark. Code §§ 4-2-313 and 4-2A-210)
### (By Plaintiff Kindt Individually and on Behalf of the Arkansas Class)

604.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

605.    Plaintiff brings this cause of action on behalf of herself and the Arkansas Class against Defendant.

606.    Nissan is and was at all relevant times a "merchant" with respect to motor vehicles under Arkansas Code §§ 4-2-104(1) and 4-2A-103(3), and a "seller" of motor vehicles under § 4-2-103(1)(d).

607.    With respect to leases, Nissan is and was at all relevant times a "lessor" of motor vehicles under Arkansas Code § 4-2A-103(1)(p).

608.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Arkansas Code §§ 4-2-105(1) and 4-2A-103(1)(h).

609.    In connection with the sale of the Class Vehicles to the Plaintiff and the Arkansas Class, Nissan provided a new vehicle warranty, under which it agreed to repair original components found to be defective in material or workmanship under normal use and maintenance, including the engine and its components.

610.    Nissan's express warranties were part of the basis of the bargain respecting the purchase and/or lease of the Class Vehicles. In addition to written warranties, Nissan warranted several attributes, characteristics, and qualities of the subject vehicles, as alleged above.

611.    Nissan distributed the defective parts causing the carbon monoxide defect in the Class Vehicles, and said parts are covered by Nissan's warranties granted to all purchasers and lessees of the Class Vehicles.

104

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

612.    Nissan breached these warranties by selling and leasing Class Vehicles with the carbon monoxide, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

613.    Plaintiff or class members notified Nissan of its breach within a reasonable time, and/or they were not required to do so because affording Nissan a reasonable opportunity to cure its breaches would have been futile. Nissan also knew about the carbon monoxide defect but chose to conceal it as a means of avoiding compliance with its warranty obligations.

614.    Plaintiff or class members submitted her vehicle for warranty repairs as referenced herein. Nissan failed to comply with the terms of the express written warranty provided to Plaintiff, by failing and/or refusing to repair the carbon monoxide defect under the vehicle's warranty as described herein.

615.    Plaintiff has given Nissan a reasonable opportunity to cure the carbon monoxide defect, but Nissan has been unable and/or has refused to do so within a reasonable time.

616.    As a result of said nonconformities, Plaintiff cannot reasonably rely on the subject vehicle for the ordinary purpose of safe, comfortable, and efficient transportation.

617.    Plaintiff could not reasonably have discovered said nonconformities with the subject vehicles prior to Plaintiff's acceptance of the subject vehicle.

618.    Plaintiff would not have purchased the subject vehicle, or would have paid less for the subject vehicle, had he known, prior to their respective time of purchase or lease, that the subject vehicle contained the carbon monoxide defect.

619.    As a direct and proximate result of the willful failure of Nissan to comply with its obligations under the express warranties, Plaintiff and the Arkansas Class members have suffered actual and consequential damages. Such damages include, but are not limited to, a diminution in the value of the subject vehicles containing the defects identified herein.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

620.    As a direct and proximate cause of Nissan's breach, Plaintiff and the Arkansas Class members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles.

621.    Any attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Nissan's warranty limitations are unenforceable because it knowingly sold a defective product without giving notice to Plaintiff or the Arkansas Class members.

622.    The time limits contained in Nissan's warranty period were also unconscionable and inadequate to protect Plaintiff and the Arkansas Class members. Among other things, Plaintiff and the Arkansas Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Nissan. A gross disparity in bargaining power existed between Nissan and Plaintiff and the Arkansas Class members because Nissan knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

623.    Plaintiff and the Arkansas Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Nissan's conduct.

624.    Also, as alleged in more detail herein, at the time that Nissan warranted and sold the vehicles, it knew that the vehicles did not conform to the warranties and were inherently defective, and Nissan wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiff and the Arkansas Class members were therefore induced to purchase the Class Vehicles under false and/or fraudulent pretenses.

625.    Nissan has been provided notice of these issues by numerous complaints as described herein.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

626.   As a direct and proximate result of Nissan's breach of express warranties, Plaintiff and the other Arkansas Class members have been damaged in an amount to be determined at trial.

**E.    Claims Brought on Behalf of the Connecticut Class**

**COUNT 17: VIOLATIONS OF CONNECTICUT UNLAWFUL TRADE PRACTICES ACT**

**(Conn. Gen. Stat. § 42-110A, et seq.)**

**(By Plaintiff Amarena Individually and on Behalf of the Connecticut Class)**

627.   Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

628.   Plaintiff Anne Marie Amarena (for the purpose of this section, "Plaintiff") brings this action on behalf of herself and the Connecticut Class against Defendant.

629.   The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).

630.   Defendant is a "person[s]" within the meaning of Conn. Gen. Stat. § 42-110a(3).

631.   Nissan is in "trade" or "commerce" within the meaning of Conn. Gen. Stat. § 42-110a(4).

632.   Nissan participated in deceptive trade practices that violated the Connecticut UTPA as described herein.

633.   In the course of their business, Defendant willingly omitted material facts concerning the Class Vehicles. Defendant accomplished this by failing to disclose the carbon monoxide defect in its marketing and informational material, such as window stickers and instruction manuals. Plaintiff and Connecticut Class members had no way of discerning that Nissan's representations were false and misleading because of Nissan's affirmative steps to suppress information regarding the carbon monoxide defect.

107

634.   Defendant thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

635.   Defendant engaged in misleading, false, unfair, or deceptive acts or practices that violated the Connecticut UTPA by installing, failing to disclose, and actively concealing the carbon monoxide defect, and by presenting itself as a reputable manufacturer that valued safety, and that stood behind its vehicles after they were sold.

636.   Nissan intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the Connecticut Class.

637.   Nissan knew or should have known that its conduct violated the Connecticut UTPA.

638.   Nissan owed Plaintiffs a duty to disclose safety risks in the Class Vehicles because Nissan:

    a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that contained a dangerous defect;

    b.    intentionally concealed the foregoing from regulators, Plaintiff, Class members; and/or

    c.    made incomplete representations about the safety of the Class Vehicles while purposefully withholding material facts from Plaintiffs that contradicted these representations.

639.   Defendant concealed the carbon monoxide defect. The value of the Class Vehicles has therefore greatly diminished. In light of the danger presented by the carbon monoxide defect, they are now worth significantly less than they otherwise would be worth.

640.   Plaintiff and the Connecticut suffered ascertainable loss and actual damages as a direct and proximate result of Nissan's misrepresentations and its concealment of

108

and failure to disclose material information. Plaintiff and the Connecticut Class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered safe to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

641.    Defendant had an ongoing duty to all Nissan customers to refrain from unfair and deceptive practices under the Connecticut UTPA. All owners of Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Nissan's deceptive and unfair acts and practices made in the course of Nissan's business.

642.    Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

643.    As a direct and proximate result of Defendant's violations of the Connecticut UTPA, Plaintiff and the Connecticut Class have suffered injury-in-fact and/or actual damage.

644.    Plaintiff and Class members are entitled to recover their actual damages, punitive damages, and attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g.

645.    Defendant acted with a reckless indifference to another's rights or wanton or intentional violation to another's rights and otherwise engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights and safety of others.

## COUNT 18: BREACH OF EXPRESS WARRANTY
## (Conn. Gen. Stat. Ann. § 42A-2-313)
### (By Plaintiff Amarena Individually and on Behalf of the Connecticut Class)

646.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

647.    Plaintiff Anne Marie Amarena brings this Count on behalf of herself and the Connecticut Class against Defendant.

109

648.   Nissan is and was at all relevant times a merchant with respect to motor vehicles under Conn. Gen. Stat. Ann. § 42a-2-104(1).

649.   In connection with the sale of the Class Vehicles to the Plaintiff and the Connecticut Class, Nissan provided a new vehicle warranty, under which it agreed to repair original components found to be defective in material or workmanship under normal use and maintenance, including the engine and its components.

650.   Nissan's express warranties were part of the basis of the bargain respecting the purchase and/or lease of the Class Vehicles. In addition to written warranties, Nissan warranted several attributes, characteristics, and qualities of the subject vehicles, as alleged above.

651.   Nissan distributed the defective parts causing the carbon monoxide defect in the Class Vehicles, and said parts are covered by Nissan's warranties granted to all purchasers and lessees of the Class Vehicles.

652.   Nissan breached these warranties by selling and leasing Class Vehicles with the carbon monoxide, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

653.   Plaintiff notified Nissan of its breach within a reasonable time, and/or she was not required to do so because affording Nissan a reasonable opportunity to cure its breaches would have been futile. Nissan also knew about the carbon monoxide defect but chose to conceal it as a means of avoiding compliance with its warranty obligations.

654.   Plaintiff submitted her vehicle for warranty repairs as referenced herein. Nissan failed to comply with the terms of the express written warranty provided to Plaintiff, by failing and/or refusing to repair the carbon monoxide defect under the vehicle's warranty as described herein.

655.   Plaintiff has given Nissan a reasonable opportunity to cure the carbon monoxide defect, but Nissan has been unable and/or has refused to do so within a reasonable time.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

656.    As a result of said nonconformities, Plaintiff cannot reasonably rely on the subject vehicle for the ordinary purpose of safe, comfortable, and efficient transportation.

657.    Plaintiff could not reasonably have discovered said nonconformities with the subject vehicles prior to Plaintiff's acceptance of the subject vehicle.

658.    Plaintiff would not have purchased the subject vehicle, or would have paid less for the subject vehicle, had he known, prior to their respective time of purchase or lease, that the subject vehicle contained the carbon monoxide defect.

659.    As a direct and proximate result of the willful failure of Nissan to comply with its obligations under the express warranties, Plaintiff and the Connecticut Class members have suffered actual and consequential damages. Such damages include, but are not limited to, a diminution in the value of the subject vehicles containing the defects identified herein.

660.    As a direct and proximate cause of Nissan's breach, Plaintiff and the Connecticut Class members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles.

661.    Any attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Nissan's warranty limitations are unenforceable because it knowingly sold a defective product without giving notice to Plaintiff or the Connecticut Class members.

662.    The time limits contained in Nissan's warranty period were also unconscionable and inadequate to protect Plaintiff and the Connecticut Class members. Among other things, Plaintiff and the Connecticut Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Nissan. A gross disparity in bargaining power existed between Nissan and Plaintiff and the Connecticut Class members because Nissan knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

663.    Plaintiff and the Connecticut Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Nissan's conduct.

664.    Also, as alleged in more detail herein, at the time that Nissan warranted and sold the vehicles, it knew that the vehicles did not conform to the warranties and were inherently defective, and Nissan wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiff and the Connecticut Class members were therefore induced to purchase the Class Vehicles under false and/or fraudulent pretenses.

665.    Nissan has been provided notice of these issues by numerous complaints as described herein.

666.    Finally, due to Nissan's breach of warranty as set forth herein, Plaintiffs and the other Class members assert as an additional and/or alternative remedy, as set forth in Conn. Gen. Stat. Ann. § 42a-2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs and the other Class members of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed under Conn. Gen. Stat. Ann. §§ 42a-2-711 and 42a-2-608.

667.    As a direct and proximate result of Nissan's breach of express warranties, Plaintiff and the other Connecticut Class members have been damaged in an amount to be determined at trial.

**COUNT 19: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Conn. Gen. Stat. Ann. § 42A-2-314)**

**(By Plaintiff Amarena Individually and on Behalf of the Connecticut Class)**

668.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

669.    Plaintiff Anne Marie Amarena brings this Count on behalf of herself and the Connecticut Class against Defendant.

112

670.    Nissan is and was at all relevant times a merchant with respect to motor vehicles under Conn. Gen. Stat. Ann. § 42a-2-104(1).

671.    A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions pursuant to Conn. Gen. Stat. Ann. § 42a-2-314. These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that carbon monoxide enters the cabin of the vehicles.

672.    Nissan was provided notice of these issues by the complaints filed against it including the instant complaint, and by numerous individual letters and communications sent by Plaintiff and other Class members before or within a reasonable amount of time after the allegations of Class Vehicle defects became public.

673.    As a direct and proximate result of Nissan's breach of the warranties of merchantability, Plaintiff and the other Class members have been damaged, in an amount to proven at trial.

**F.    Claims Brought on Behalf of the Delaware Class**

**COUNT 20: VIOLATIONS OF THE DELAWARE CONSUMER FRAUD ACT**
**(6 Del. Code § 2513, et seq.)**

**(By Plaintiff McNeill Individually and on Behalf of the Delaware Class)**

674.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

675.    Plaintiff Justin McNeill (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the Delaware Class against Defendant.

676.    Defendant is a "person[s]" within the meaning of 6 Del. Code § 2511(7).

677.    The Delaware Consumer Fraud Act ("Delaware CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection

113

with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." 6 Del. Code § 2513(a).

678.   In the course of their business, Defendant willingly concealed and omitted material facts concerning the Class Vehicles. Defendant accomplished this by failing to disclose the carbon monoxide defect in its marketing and informational material, such as window stickers and instruction manuals. Plaintiffs and Delaware Class members did not and could not unravel Nissan's deception on their own.

679.   Defendant thus violated the Act by, at minimum: by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

680.   Defendant engaged in misleading, false, unfair or deceptive acts or practices that violated the Delaware CFA by failing to disclose and actively concealing the unsafe defect, by marketing its vehicles as reliable, safe, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, and that stood behind its vehicles after they were sold.

681.   Nissan intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the Delaware Class.

682.   Nissan knew or should have known that its conduct violated the Delaware CFA.

683.   Defendant owed Plaintiffs a duty to disclose the illegality and public health and safety risks of the Class Vehicles because they:

       a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that contained an unsafe defect;

       b.    intentionally concealed the foregoing from regulators, Plaintiff, Class members; and/or

114

c.     made incomplete representations about the safety of the Class Vehicles generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

684.    Defendant concealed the carbon monoxide defect. The value of the Class Vehicles has therefore greatly diminished. In light of the danger those vehicles present, they are now worth significantly less than they otherwise would be worth.

685.    Nissan's fraudulent concealment of the carbon monoxide defect was material to Plaintiffs and the Delaware Class.

686.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the safety of the Class Vehicles and the true value of the Class Vehicles.

687.    Plaintiff and the Delaware Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Delaware Class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiff also suffered diminished value of their vehicles, as well as lost or diminished use.

688.    Defendant had an ongoing duty to all Nissan customers to refrain from unfair and deceptive practices under the Delaware CFA. All owners of Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Nissan's deceptive and unfair acts and practices made in the course of Nissan's business.

689.    Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

115

690.   As a direct and proximate result of Defendant's violations of the Delaware CFA, Plaintiff and the Delaware Class have suffered injury-in-fact and/or actual damage.

691.   Plaintiff seeks damages under the Delaware CFA for injury resulting from the direct and natural consequences of Defendant's unlawful conduct. *See, e.g., Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del. 1983). Plaintiff also seeks an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Delaware CFA.

692.   Defendant engaged in gross, oppressive, or aggravated conduct justifying the imposition of punitive damages.

### COUNT 21: BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (6 Del. Code §§ 2-314 and 2A-212)
### (By Plaintiff McNeill Individually and on Behalf of the Delaware Class)

693.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

694.   Plaintiff McNeill brings this Count on behalf of himself and the Delaware Class against the Defendant.

695.   Defendant is and was at all relevant times "merchants" with respect to motor vehicles under 6 Del. C. §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

696.   With respect to leases, Defendant is and was at all relevant times "lessors" of motor vehicles under 6 Del. C. § 2A-103(1)(p).

697.   The Class Vehicles are and were at all relevant times "goods" within the meaning of 6 Del. C. §§ 2-105(1) and 2A-103(1)(h).

698.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 6 Del. C. §§ 2-314 and 2A-212.

116

699.   These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

700.   Specifically, the Class Vehicles are inherently defective in that they allow carbon monoxide to enter the cabin of the Class Vehicles.

701.   Nissan was provided notice of these issues by numerous complaints filed against it including the instant Complaint, and by numerous individual letters and communications sent by Plaintiff and others within a reasonable amount of time after the allegations of Class Vehicle defects became public.

702.   As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and the other Delaware Class members have been damaged in an amount to be proven at trial.

## COUNT 22: BREACH OF EXPRESS WARRANTY
### (1 Del. Code §§ 2-313 and 2A-210)
### (By Plaintiff McNeill Individually and on Behalf of the Delaware Class)

703.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

704.   Plaintiff McNeill brings this Count on behalf of himself and the Delaware Class against Defendant.

705.   Defendant is and was at all relevant times "merchants" with respect to motor vehicles under 6 Del. C. §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

706.   With respect to leases, Defendant is and was at all relevant times "lessors" of motor vehicles under 6 Del. C. § 2A-103(1)(p).

707.   The Class Vehicles are and were at all relevant times "goods" within the meaning of 6 Del. C. §§ 2-105(1) and 2A-103(1)(h).

708.   In connection with the sale of the Class Vehicles to the Plaintiff and the Delaware Class, Nissan provided a new vehicle warranty, under which it agreed to repair

117

original components found to be defective in material or workmanship under normal use and maintenance, including the engine and its components.

709.    Nissan's express warranties were part of the basis of the bargain respecting the purchase and/or lease of the Class Vehicles. In addition to written warranties, Nissan warranted several attributes, characteristics, and qualities of the subject vehicles, as alleged above.

710.    Nissan distributed the defective parts causing the carbon monoxide defect in the Class Vehicles, and said parts are covered by Nissan's warranties granted to all purchasers and lessees of the Class Vehicles.

711.    Nissan breached these warranties by selling and leasing Class Vehicles with the carbon monoxide, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

712.    Plaintiffs or class members notified Nissan of its breach within a reasonable time, and/or they were not required to do so because affording Nissan a reasonable opportunity to cure its breaches would have been futile. Nissan also knew about the carbon monoxide defect but chose to conceal it as a means of avoiding compliance with its warranty obligations.

713.    Plaintiffs or class members submitted their vehicle for warranty repairs as referenced herein. Nissan failed to comply with the terms of the express written warranty provided to Plaintiff, by failing and/or refusing to repair the carbon monoxide defect under the vehicle's warranty as described herein.

714.    Plaintiff has given Nissan a reasonable opportunity to cure the carbon monoxide defect, but Nissan has been unable and/or has refused to do so within a reasonable time.

715.    As a result of said nonconformities, Plaintiff cannot reasonably rely on the subject vehicle for the ordinary purpose of safe, comfortable, and efficient transportation.

716.   Plaintiff could not reasonably have discovered said nonconformities with the subject vehicles prior to Plaintiff's acceptance of the subject vehicle.

717.   Plaintiff would not have purchased the subject vehicle, or would have paid less for the subject vehicle, had he known, prior to their respective time of purchase or lease, that the subject vehicle contained the carbon monoxide defect.

718.   As a direct and proximate result of the willful failure of Nissan to comply with its obligations under the express warranties, Plaintiff and the Delaware Class members have suffered actual and consequential damages. Such damages include, but are not limited to, a diminution in the value of the subject vehicles containing the defects identified herein.

719.   As a direct and proximate cause of Nissan's breach, Plaintiff and the Delaware Class members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles.

720.   Any attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Nissan's warranty limitations are unenforceable because it knowingly sold a defective product without giving notice to Plaintiff or the Delaware Class members.

721.   The time limits contained in Nissan's warranty period were also unconscionable and inadequate to protect Plaintiff and the Delaware Class members. Among other things, Plaintiff and the Delaware Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Nissan. A gross disparity in bargaining power existed between Nissan and Plaintiff and the Delaware Class members because Nissan knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

722.   Plaintiff and the Delaware Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Nissan's conduct.

119

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

723.   Also, as alleged in more detail herein, at the time that Nissan warranted and sold the vehicles, it knew that the vehicles did not conform to the warranties and were inherently defective, and Nissan wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiff and the Delaware Class members were therefore induced to purchase the Class Vehicles under false and/or fraudulent pretenses.

724.   Nissan has been provided notice of these issues by numerous complaints as described herein.

725.   As a direct and proximate result of Nissan's breach of express warranties, Plaintiff and the other Delaware Class members have been damaged in an amount to be determined at trial.

**G.     Claims Brought on Behalf of the Florida Class**

**COUNT 23: VIOLATION OF FLORIDA UNFAIR & DECEPTIVE TRADE PRACTICES ACT**

**(Fla. Stat. § 501.201, et seq.)**

**(By Plaintiff Garcia, Jr., Individually and on Behalf of the Florida Class)**

726.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

727.   Plaintiff William Garcia, Jr., (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of himself and the Florida Class against Defendant.

728.   Plaintiff and the Florida Class members are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Fla. Stat. § 501.203(7).

729.   Nissan engaged in "trade or commerce" within the meaning of Florida Statutes § 501.203(8).

730.   The FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

120

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

731.    Nissan knowingly failed to disclose, concealed, suppressed and/or omitted material facts regarding the Defect and associated safety hazard and misrepresented the standard, quality, or grade of the Class Vehicles, which directly caused harm to the Plaintiff. Nissan actively suppressed the fact that the vehicles contain a defect which causes carbon monoxide to accumulate in the Class Vehicles' cabins and presents a safety hazard because of materials, workmanship and/or manufacturing defects.

732.    Further, Nissan employed unfair and deceptive trade practices to deny repair or replacement of the carbon monoxide defect under warranty and within a reasonable time in violation of the FUDTPA. Nissan also breached its warranties as alleged herein in violation of the FUDTPA.

733.    Nissan's unfair and deceptive trade practices were likely to deceive a reasonable consumer. Plaintiffs and members of the Florida Class had no reasonable way to know that Class Vehicles were defective in materials, workmanship, and/or manufacture and posed a safety risk. Nissan possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the carbon monoxide defect and associated safety risks, and any reasonable consumer would have relied on Nissan's misrepresentations and omissions as Plaintiffs and members of the Florida Class did.

734.    Nissan intentionally and knowingly omitted material facts concerning the Class Vehicles. Defendants accomplished this by failing to disclose the carbon monoxide defect in its marketing and informational material, such as window stickers and instruction manuals. Nissan knew, or should have known, that the Class Vehicles were defective and prone to fail and expose drivers and the public to an associated safety hazard—namely, carbon monoxide exposure.

735.    Nissan had the duty to Plaintiffs and the Florida Class members to disclose the carbon monoxide defect and the defective nature of the Class Vehicles because:

        a.    Nissan was in a superior position to know the true state of facts about the carbon monoxide defect and associated repair costs in the Class Vehicles;

121

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

b.     Plaintiffs and the Florida Class members could not reasonably have been expected to learn or discover that the Class Vehicles had dangerous defects until manifestation of the defects;

c.     Nissan knew that Plaintiffs and the Florida Class members could not reasonably have been expected to learn about or discover the carbon monoxide defect and its associated repair costs; and

d.     Nissan actively concealed the carbon monoxide defect, its causes, and resulting effects, by asserting to Plaintiffs and Florida Class members that their vehicles did not contain the carbon monoxide defect.

736.   Nissan's unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the carbon monoxide defect were intended to mislead consumers and did mislead Plaintiff and Florida Class members.

737.   As a direct and proximate result of Nissan's violations of the FUDTPA, Plaintiff and members of the Florida Class have suffered actual damages and/or injury in fact, including, inter alia: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the defective braking systems; (2) the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the carbon monoxide defect.

738.   Plaintiff and members of the Florida Class seek actual damages against Nissan in an amount to be determined at trial and statutory, treble, and/or punitive damages under the FUDTPA. Plaintiff and members of the Florida Class also seek an order enjoining Nissan's unfair, unlawful, and/or deceptive practices and awarding costs, attorneys' fees and restitution, disgorgement of funds, and any other just and proper relief available under the FUDTPA.

739.   Pursuant to Florida Statute § 501.201, Plaintiff will serve the Florida Attorney General with a copy of this complaint because they seek injunctive relief.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

## COUNT 24: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Fla. Stat. § 672.314)

**(By Plaintiff Garcia, Jr., Individually and on Behalf of the Florida Class)**

740.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

741.   Plaintiff Garcia, Jr., brings this cause of action on behalf of himself and the Florida Class against Defendant.

742.   Nissan is and was at all relevant times a "merchant" with respect to motor vehicles under Florida Statutes Annotated §§ 672.104(1) and 680.1031(3)(k), and a "sellers" of motor vehicles under § 672.103(1)(d).

743.   With respect to leases, Nissan is and was at all relevant times a "lessor" of motor vehicles under Florida Statutes Annotated § 680.1031(1)(p).

744.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Florida Statutes Annotated §§ 672.105(1) and 680.1031(1)(h).

745.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Florida Statutes Annotated §§ 672.314 and 680.212.

746.   These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective because carbon monoxide enters the cabin of the Class Vehicles, endangering the occupants.

747.   Nissan was provided notice of these issues by numerous complaints as alleged herein.

748.   Plaintiff and the Florida Class members have had sufficient dealings with either the Nissan or its agents (dealerships) to establish privity of contract between Plaintiff and the Florida Class members. Notwithstanding this, privity is not required in this case because Plaintiff and the Florida Class members are intended third-party beneficiaries of contracts between Nissan and its dealers; specifically, they are the

123

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

intended beneficiaries of Nissan's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

749.    Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

750.    As a direct and proximate result of Nissan's breach of the warranties of merchantability, Plaintiff and the Florida Class members have been damaged in an amount to be proven at trial.

## COUNT 25: BREACH OF EXPRESS WARRANTY
### (Fla. Stat. § 672.313)

**(By Plaintiff Garcia, Jr., Individually and on Behalf of the Florida Class)**

751.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

752.    Plaintiff Garcia, Jr., brings this cause of action on behalf of himself and the Florida Class against Defendant.

753.    Nissan is and was at all relevant times a "merchant" with respect to motor vehicles under Florida Statutes Annotated §§ 672.104(1) and 680.1031(3)(k), and is a "seller" of motor vehicles under § 672.103(1)(d).

754.    With respect to leases, Nissan is and was at all relevant times a "lessor" of motor vehicles under Florida Statutes Annotated § 680.1031(1)(p).

755.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Florida Statutes Annotated §§ 672.105(1) and 680.1031(1)(h).

756.    In the course of selling the Class Vehicles, Nissan expressly warranted in writing that the Class Vehicles were covered by a warranty, as set forth above.

757.    Nissan breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Nissan. Nissan has not repaired or

adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

758.   In addition to the written warranties Nissan issued, Nissan expressly warranted several attributes, characteristics, and qualities, as set forth above.

759.   Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Florida Class members whole and because Nissan has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

760.   Accordingly, recovery by Plaintiff and the Florida Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff and the Florida Class members seek all remedies as allowed by law.

761.   Also, as alleged in more detail herein, at the time that Nissan warranted and sold the vehicles, it knew that the vehicles did not conform to the warranties and were inherently defective, and Nissan wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiff and the Florida Class members were therefore induced to purchase the Class Vehicles under false and/or fraudulent pretenses.

762.   Moreover, many of the damages flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Nissan's fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the Florida Class members' remedies would be insufficient.

763.   Nissan has been provided notice of these issues by numerous complaints as described herein.

125

764.   As a direct and proximate result of Nissan's breach of express warranties, Plaintiff and the other Florida Class members have been damaged in an amount to be determined at trial.

## COUNT 26: BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Florida Law)

### (By Plaintiff Garcia, Jr., Individually and on Behalf of the Florida Class)

765.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

766.   Plaintiff Garcia, Jr., brings this cause of action on behalf of himself and the Florida Class against Defendant.

767.   To the extent Nissan's repair or adjust commitment is deemed not to be a warranty under Florida's Commercial Code, Plaintiff and the Florida Class members plead in the alternative under common law warranty and contract law theories  Nissan limited the remedies available to Plaintiff and the Florida Class members to just repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Nissan, and/or warranted the quality or nature of those services to Plaintiffs.

768.   Nissan breached this warranty or contract obligation by failing to repair the Class Vehicles' carbon monoxide defect.

769.   As a direct and proximate result of Nissan's breach of contract or common law warranty, Plaintiff and the Florida Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT 27: FRAUD BY CONCEALMENT
### (Based on Florida Law)

### (By Plaintiff Garcia, Jr., Individually and on Behalf of the Florida Class)

770.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

126

771.   Plaintiff Garcia, Jr., brings this cause of action on behalf of himself and the Florida Class against Defendant.

772.   Nissan made material omissions concerning a presently existing or past fact in that, for example, Nissan did not fully and truthfully disclose to its customers the true nature of the carbon monoxide defect which was not readily discoverable by them until many years after purchase or lease of the Class Vehicles. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

773.   Nissan was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

774.   In addition, Nissan had a duty to disclose these omitted material facts because they were known and/or accessible only to Nissan who had superior knowledge and access to the facts, and Nissan knew they were not known to or reasonably discoverable by Plaintiff and the Florida Class members. These omitted facts were material because they directly impact the safety of the Class Vehicles.

775.   Nissan was in exclusive control of the material facts and such facts were not known to the public or the Florida Class members. Nissan also possessed exclusive knowledge of the defects rendering Class Vehicles inherently more dangerous and unreliable than similar vehicles.

776.   Nissan actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and the Florida Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

777.   Nissan still have not made full and adequate disclosure and continue to defraud Plaintiffs and the Florida Class members.

127

778.   Plaintiff and the Florida Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiff and the Florida Class members were justified.

779.   Plaintiff and the Florida Class members reasonably relied on these omissions and suffered damages as a result.

780.   As a result of these omissions and concealments, Plaintiff and the Florida Class members incurred damages including loss of intrinsic value and out-of-pocket costs related to repair of the systems.

781.   Nissan's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiff and the Florida Class members. Nissan's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT 28: UNJUST ENRICHMENT
### (Based on Florida Law)
### (By Plaintiff Garcia, Jr., Individually and on Behalf of the Florida Class)

782.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

783.   Plaintiff Garcia, Jr., brings this cause of action on behalf of himself and the Florida Class against Defendant.

784.   Nissan had knowledge of the safety defects in the Class Vehicles, which it failed to disclose to Plaintiff and the Florida Class members.

785.   As a result of their wrongful and fraudulent acts and omissions, as set forth above, pertaining to the design defect of their vehicles and the concealment of the defect, Nissan charged a higher price for the Class Vehicles than Plaintiff and the Florida Class members otherwise would have paid, and Nissan obtained monies which rightfully belong to Plaintiff and the Florida Class members.

128

786.    Nissan appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and the Florida Class members, who without knowledge of the safety defects paid a higher price for vehicles than they otherwise would have paid. It would be inequitable and unjust for Nissan to retain these wrongfully obtained profits.

787.    Therefore, Plaintiff and the Florida Class members are entitled to restitution and an order establishing Nissan as constructive trustees of the profits unjustly obtained, plus interest.

**H.    Claims Brought on Behalf of the Georgia Class**

**COUNT 29: BREACH OF EXPRESS WARRANTY**

**(Ga. Code. Ann. §§ 11-2-313 and 11-2A-210)**

**(By Plaintiffs Bailey and Stevens Individually and on Behalf of the Georgia Class)**

788.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

789.    Plaintiffs Hattie Bailey and Regina Stevens brings this claim on behalf of themselves and on behalf of the Members of the Georgia Class against Defendant.

790.    Nissan is and was at all relevant times a "merchant" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and "sellers" of motor vehicles under § 11-2-103(1)(d).

791.    With respect to leases, Nissan is and was at all relevant times "lessors" of motor vehicles under Ga. Code Ann. § 11-2A-103(1)(p).

792.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

793.    In connection with the purchase or lease of each one of its new vehicles, Nissan provides an express bumper-to-bumper New Vehicle Limited Warranty ("NVLW") for a period of three years or 36,000 miles, whichever occurs first.

794.    Nissan's warranties formed a basis of the bargain that was reached when Plaintiff and other Georgia Class Members purchased or leased their Class Vehicle.

129

795.    Plaintiffs and the Georgia Class Members experienced defects within the warranty period.  Despite the existence of warranties, Nissan failed to inform Plaintiffs and Georgia Class Members that the Class Vehicles contained the Defect which would cause carbon monoxide to accumulate in the cabin of the Class Vehicles.

796.    Nissan breached the express warranty by failing to provide Plaintiffs and the Georgia Class Members with a remedy to the Defect.  Nissan has been unable to repair Plaintiffs' vehicles.

797.    Finally, because of Nissan's breach of warranty as set forth herein, Plaintiffs and the other Georgia Class Members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and the other Georgia Class Members of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages allow.

798.    Nissan was provided notice of these issues by and through NHTSA complaints, letters, customer complaints, and filed lawsuits.

799.    As a direct and proximate result of the Nissan's breach of express warranties, Plaintiffs and the other Georgia Class Members have been damaged in an amount to be determined at trial.

**COUNT 30: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Ga. Code. Ann. §§ 11-2-314 and 11-2A-212)**

**(By Plaintiffs Bailey and Stevens Individually and on Behalf of the Georgia Class)**

800.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

801.    Plaintiffs Hattie Bailey and Regina Stevens bring this claim on behalf of themselves and on behalf of the Members of the Georgia Class against Defendant.

802.    Nissan is and was at all relevant times a "merchant" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and "sellers" of motor vehicles under § 11-2-103(1)(d).

130

803.   With respect to leases, the Nissan is and was at all relevant times "lessors" of motor vehicles under Ga. Code Ann. § 11-2A-103(1)(p).

804.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

805.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ga. Code Ann. §§ 11-2-314 and 11-2A-212.

806.   These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are inherently defective because they pose a serious safety risk to the occupants and are an unreliable means of transportation.

807.   Nissan was provided notice of these issues by thousands of NHTSA complaints by Class Members, lawsuits filed, and by numerous individual letters and communications sent by the Class Members.

808.   As a direct and proximate result of Nissan's breach of the warranties of merchantability, Plaintiffs and the other Class Members have been damaged in an amount to be proven at trial.

**I.    Claims Brought on Behalf of the Illinois Class**

**COUNT 31: VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT**

**(815 ILCS 505/1, et seq. and 720 ILCS 295/1a)**

**(By Plaintiffs Rodriguez and Taylor Individually and on Behalf of the Illinois Class)**

809.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

810.   Plaintiffs Elizabeth Rodriguez and Lemar Taylor (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the Illinois Class against Defendant.

131

811.    Nissan is and was at all relevant times a "person" as that term is defined in 815 Illinois Compiled Statutes § 505/1(c).

812.    Plaintiffs and the Illinois Class are and were at all relevant times "consumers" as that term is defined in 815 Illinois Compiled Statutes § 505/1(e).

813.    In Illinois, the "Consumer Fraud and Deceptive Business Practices Act," 815 ILCS § 505/1, et seq., prohibits "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' . . . ."

814.    Plaintiffs and the Illinois Class members were injured by Nissan's deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiffs and the Illinois Class members. Because Plaintiffs and the Illinois Class members relied on Nissan's misrepresentations, concealments and omissions when purchasing and/or leasing Nissan's Class Vehicles, they were injured at the time of purchase and/or lease.

815.    Nissan does business in Illinois, sells, and distributes vehicles in Illinois, and engaged in deceptive acts and practices in connection with the sale and lease of the Class Vehicles in Illinois and elsewhere in the United States.

816.    Nissan knowingly failed to disclose, concealed, suppressed and/or omitted material facts regarding the Defect and associated safety hazard and misrepresented the standard, quality, or grade of the Class Vehicles, which directly caused harm to Plaintiffs and the Illinois Class members. Nissan actively suppressed the fact that the Class Vehicles are defective and present a safety hazard because of materials, workmanship and/or manufacturing defects.

817.    Nissan's unfair and deceptive trade practices were likely to deceive a reasonable consumer. Plaintiffs and members of the Illinois Class had no reasonable way

132

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

to know that Class Vehicles contained a defect that caused carbon monoxide to pool in the cabin and were defective in materials, workmanship, and/or manufacture and posed a safety risk. Nissan possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Defect and associated safety risks, and any reasonable consumer would have relied on Nissan's misrepresentations and omissions as Plaintiffs and members of the Illinois Class did.

818.    Nissan had the duty to Plaintiffs and the Illinois Class members to disclose the carbon monoxide defect and the defective nature of the Class Vehicles because:

      a.    Nissan was in a superior position to know the true state of facts about the carbon monoxide defect and associated repair costs in the Class Vehicles;

      b.    Plaintiffs and the Illinois Class members could not reasonably have been expected to learn or discover that the Class Vehicles had dangerous defects until manifestation of the defects;

      c.    Nissan knew that Plaintiffs and the Illinois Class members could not reasonably have been expected to learn about or discover the carbon monoxide defect and its associated repair costs; and

      d.    Nissan actively concealed the carbon monoxide defect, its causes, and resulting effects.

819.    Nissan's unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the carbon monoxide defect were intended to mislead consumers and misled Plaintiffs and Illinois Class members.

820.    Nissan's violations present a continuing risk to Plaintiffs as well as to the general public. Nissan's unlawful acts and practices complained of herein affect the public interest.

821.    As a direct and proximate result of Nissan's violations, Plaintiffs and members of the Illinois Class have suffered actual damages and/or injury in fact, including, inter alia: (1) out-of-pocket monies for diagnosis, repair and/or replacement of

133

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

the defective braking systems; (2) the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the carbon monoxide defect.

822.    Plaintiffs and members of the Illinois Class seek actual damages against Nissan in an amount to be determined at trial and statutory, treble, and/or punitive damages under the Illinois Consumer Fraud and Deceptive Business Practices Act. Plaintiffs and members of the Illinois Class also seek an order enjoining Nissan's unfair, unlawful, and/or deceptive practices and awarding costs, attorneys' fees and restitution, disgorgement of funds, and any other just and proper relief available under the Illinois Consumer Fraud and Deceptive Business Practices Act.

823.    Pursuant to 815 Illinois Compiled Statutes § 505/10a(d), Plaintiffs will mail a copy of the complaint to the Illinois Attorney General.

**COUNT 32: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (810 ILCS §§ 5/2-314 and 5/2A-212)**

**(By Plaintiffs Rodriguez and Taylor Individually and on Behalf of the Illinois Class)**

824.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

825.    Plaintiffs bring this cause of action on behalf of themselves and the Illinois Class against Defendant.

826.    Nissan is and was at all relevant times a "merchant" with respect to motor vehicles under 810 Illinois Compiled Statutes §§ 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under § 5/2-103(1)(d).

827.    With respect to leases, Nissan is and was at all relevant times a "lessor" of motor vehicles under 810 Illinois Compiled Statutes § 5/2A-103(1)(p).

828.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Illinois Compiled Statutes §§ 5/2-105(1) and 5/2A-103(1)(h).

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

829.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 810 Illinois Compiled Statutes §§ 28-2-314 and 28-12-212.

830.   Nissan was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Nissan knew or had reason to know of the specific use for which the Class Vehicles were purchased.

831.   Nissan provided Plaintiffs and the Illinois Class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, inter alia, the Class Vehicles suffered from the carbon monoxide defect at the time of sale. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

832.   Nissan implied that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles manufactured, supplied, distributed, and/or sold by Nissan were safe and reliable for the purpose for which they were installed; and (ii) a warranty that the Class Vehicles would be fit for their intended use.

833.   Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the Illinois Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

834.   Nissan's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

835.   As a direct and proximate result of Nissan's breach of the implied warranty of merchantability, Plaintiffs and the other Illinois Class members have been damaged in an amount to be proven at trial.

## COUNT 33: BREACH OF EXPRESS WARRANTY
### (810 ILCS §§ 5/2-313 and 5/2A-210)
### (By Plaintiffs Rodriguez and Taylor Individually and on Behalf of the Illinois Class)

836.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

837.    Plaintiffs bring this cause of action on behalf of themselves and the Illinois Class against Defendant.

838.    Nissan is and was at all relevant times a "merchant" with respect to motor vehicles under 810 Illinois Compiled Statutes §§ 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under § 5/2-103(1)(d).

839.    With respect to leases, Nissan is and was at all relevant times a "lessor" of motor vehicles under 810 Illinois Compiled Statutes § 5/2A-103(1)(p).

840.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Illinois Compiled Statutes §§ 5/2-105(1) and 5/2A-103(1)(h).

841.    In the course of selling the Class Vehicles, Nissan expressly warranted in writing that the Class Vehicles were covered by a warranty, as set forth above.

842.    Nissan breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Nissan. Nissan has not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

843.    In addition to the written warranties Nissan issued, Nissan expressly warranted several attributes, characteristics, and qualities, as set forth above.

844.    Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the Illinois Class members whole and because Nissan has failed and/or refused to adequately provide the promised remedies within a reasonable time.

136

845.   Accordingly, recovery by Plaintiffs and the Illinois Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs and the Illinois Class members seek all remedies as allowed by law.

846.   Also, as alleged in more detail herein, at the time that Nissan warranted and sold the vehicles they knew that the vehicles did not conform to the warranties and were inherently defective, and Illinois wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiffs and the Illinois Class members were therefore induced to purchase the Class Vehicles under false and/or fraudulent pretenses.

847.   Moreover, many of the damages flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Nissan's fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs and the Illinois Class members' remedies would be insufficient.

848.   Nissan has been provided notice of these issues by numerous complaints as described herein.

849.   As a direct and proximate result of Nissan's breach of express warranties, Plaintiffs and the other Illinois Class members have been damaged in an amount to be determined at trial.

## COUNT 34: BREACH OF COMMON LAW WARRANTY
### (Based on Illinois Law)
### (By Plaintiffs Rodriguez and Taylor Individually and on Behalf of the Illinois Class)

850.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

137

851.   Plaintiffs bring this cause of action on behalf of themselves and the Illinois Class against Defendant.

852.   To the extent Nissan's repair or adjust commitment is deemed not to be a warranty under Illinois's Uniform Commercial Code provisions, Plaintiffs and the Illinois Class members plead in the alternative under common law warranty and contract law.

853.   Nissan limited the remedies available to Plaintiffs and the Illinois Class members to just repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Nissan. Nissan breached this warranty or contract obligation by failing to repair the Defective Vehicles evidencing the carbon monoxide defect, or to replace them.

854.   As a direct and proximate result of Nissan's breach of contract or common law warranty, Plaintiffs and the Illinois Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT 35: FRAUD BY CONCEALMENT

### (Based on Illinois Law)

### (By Plaintiffs Rodriguez and Taylor Individually and on Behalf of the Illinois Class)

855.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

856.   Plaintiffs bring this cause of action on behalf of themselves and the Illinois Class against Defendant.

857.   Nissan made material omissions concerning a presently existing or past fact in that, for example, Nissan did not fully and truthfully disclose to its customers the true nature of the carbon monoxide defect which was not readily discoverable by them until many years after purchase or lease of the Class Vehicles. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

138

858.   Nissan was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

859.   In addition, Nissan had a duty to disclose these omitted material facts because they were known and/or accessible only to Nissan who had superior knowledge and access to the facts, and Nissan knew they were not known to or reasonably discoverable by Plaintiffs and the Illinois Class members. These omitted facts were material because they directly impact the safety of the Class Vehicles.

860.   Nissan was in exclusive control of the material facts and such facts were not known to the public or the Illinois Class members. Nissan also possessed exclusive knowledge of the defects rendering Class Vehicles inherently more dangerous and unreliable than similar vehicles.

861.   Nissan actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs and the Illinois Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

862.   Plaintiffs and the Illinois Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs and the Illinois Class members were justified.

863.   Plaintiffs and the Illinois Class members reasonably relied on these omissions and suffered damages as a result.

864.   As a result of these omissions and concealments, Plaintiffs and the Illinois Class members incurred damages including loss of intrinsic value and out-of-pocket costs related to repair of the systems.

865.   As a result of the concealment and/or suppression of the facts, Plaintiffs and the Illinois Class members sustained damage. Plaintiffs and the Illinois Class members

139

reserve their right to elect either to (a) rescind their purchase or lease of the Class Vehicles and obtain restitution or (b) affirm their purchase or lease of the Class Vehicles and recover damages.

866.   As a result of these omissions and concealments, Plaintiffs and the Illinois Class members incurred damages including loss of intrinsic value and out-of-pocket costs related to repair of the systems.

867.   Nissan's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiffs and the Illinois Class members. Nissan's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT 36: UNJUST ENRICHMENT
### (Based on Illinois Law)
### (By Plaintiffs Rodriguez and Taylor Individually and on Behalf of the Illinois Class)

868.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

869.   Plaintiffs bring this cause of action on behalf of themselves and the Illinois Class against Defendant.

870.   As a result of their wrongful and fraudulent acts and omissions, as set forth above, pertaining to the design and/or manufacturing defect of their vehicles and the concealment of the defect, Nissan charged a higher price for their vehicles than the vehicles' true value and Nissan obtained monies which rightfully belong to Plaintiffs and the Illinois Class members.

871.   Nissan enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and the Illinois Class members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Nissan to retain these wrongfully obtained profits.

140

872.    Plaintiffs, therefore, seek an order establishing Nissan as a constructive trustee of the profits unjustly obtained, plus interest.

**J.    Claims Brought on Behalf of the Kansas Class**

**COUNT 37: VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT**

**(Kan. Stat. Ann. § 50-623, et seq.)**

**(By Plaintiff Thomas Individually and on Behalf of the Kansas Class)**

873.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

874.    Plaintiff Ronald Thomas (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the Kansas Class against Defendant.

875.    Nissan is a "supplier" under the Kansas Consumer Protection Act ("Kansas CPA"), Kan. Stat. Ann. § 50-624(l).

876.    Kansas Class members are "consumers," within the meaning of Kan. Stat. Ann. § 50-624(b), who purchased or leased one or more Class Vehicles.

877.    The sale of the Class Vehicles to the Kansas Class members was a "consumer transaction" within the meaning of Kan. Stat. Ann. § 50-624(c).

878.    The Kansas CPA states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction," Kan. Stat. Ann. § 50-626(a), and that deceptive acts or practices include: (1) knowingly making representations or with reason to know that "(A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;" and "(D) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation;" "(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;" and "(3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact." The Kansas CPA also provides

141

that "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." Kan. Stat. Ann. § 50-627(a).

879.   In the course of their business, Defendant willfully omitted material facts concerning the Class Vehicles. Defendant accomplished this by failing to disclose the carbon monoxide defect in its marketing and informational material, such as window stickers and instruction manuals. Plaintiff and Kansas Class members did not and could not unravel Nissan's deception on their own.

880.   Defendant thus violated the Act by, at minimum: by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

881.   Defendant engaged in misleading, false, unfair or deceptive acts or practices that violated the Kansas CPA by failing to disclose and actively concealing the unsafe defect, by marketing its vehicles as reliable, safe, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, and that stood behind its vehicles after they were sold.

882.   Nissan intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Kansas Class.

883.   Nissan knew or should have known that its conduct violated the Kansas CPA.

884.   Defendant owed Plaintiffs a duty to disclose the illegality and public health and safety risks of the Class Vehicles because they:

    a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that contained an unsafe defect;

    b.   intentionally concealed the foregoing from regulators, Plaintiff, Class members; and/or

142

c.     made incomplete representations about the safety of the Class Vehicles generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

885.   Defendant concealed the carbon monoxide defect. The value of the Class Vehicles has therefore greatly diminished. In light of the danger those vehicles present, they are now worth significantly less than they otherwise would be worth.

886.   Nissan's fraudulent concealment of the carbon monoxide defect was material to Plaintiff and the Kansas Class.

887.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the safety of the Class Vehicles and the true value of the Class Vehicles.

888.   Plaintiff and the Kansas Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Kansas Class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiff also suffered diminished value of their vehicles, as well as lost or diminished use.

889.   Defendant had an ongoing duty to all Nissan customers to refrain from unfair and deceptive practices under the Kansas CPA. All owners of Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Nissan's deceptive and unfair acts and practices made in the course of Nissan's business.

890.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

143

891.    As a direct and proximate result of Defendant's violations of the Kansas CPA, Plaintiffs and the Kansas Class have suffered injury-in-fact and/or actual damage.

892.    Pursuant to Kan. Stat. Ann. § 50-634, Plaintiffs and the Kansas Class seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for each Plaintiff and each Kansas Class member.

893.    Plaintiff also seeks an order enjoining Nissan's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under Kan. Stat. Ann § 50-623, et seq.

## COUNT 38: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Kan. Stat. §§ 84-2-314 and 84-2A-212)

**(By Plaintiff Thomas Individually and on Behalf of the Kansas Class)**

894.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

895.    Plaintiff brings this Count on behalf of himself and the Kansas Class against Defendant.

896.    Defendant is and was at all relevant times "merchants" with respect to motor vehicles under Kan. Stat. §§ 84-2-104(1) and 84-2A-103(3), and "sellers" of motor vehicles under § 84-2-103(1)(d).

897.    With respect to leases, Defendant is and was at all relevant times "lessors" of motor vehicles under Kan. Stat. § 84-2A-103(1)(p).

898.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Kan. Stat. §§ 84-2-105(1) and 84-2A-103(1)(h).

899.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Kan. Stat. §§ 84-2-314 and 84-2A-212.

900.   These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

901.   Specifically, the Class Vehicles are inherently defective in that they contain the carbon monoxide defect.

902.   Defendant was provided notice of these issues by complaints filed against it including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs.

903.   As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the other Kansas Class members have been damaged in an amount to be proven at trial.

## COUNT 39: BREACH OF EXPRESS WARRANTY
### (Kan. Stat. §§ 84-2-314 and 84-2A-210)
**(By Plaintiff Thomas Individually and on Behalf of the Kansas Class)**

904.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

905.   Plaintiff brings this Count on behalf of himself and the Kansas Class against Defendant.

906.   Defendant is and was at all relevant times "merchants" with respect to motor vehicles under Kan. Stat. §§ 84-2-104(1) and 84-2A-103(3), and "sellers" of motor vehicles under § 84-2-103(1)(d).

907.   With respect to leases, Defendant is and was at all relevant times "lessors" of motor vehicles under Kan. Stat. § 84-2A-103(1)(p).

908.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Kan. Stat. §§ 84-2-105(1) and 84-2A-103(1)(h).

909.   In connection with the purchase or lease of each one of its new vehicles, the Defendant provides an express New Vehicle Limited Warranty ("NVLW") for a period

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

of three years or 36,000 miles, whichever occurs first. Powertrain coverage is extended to five years or 60,000 miles.

910.   In addition to the written warranties Nissan issued, Nissan expressly warranted several attributes, characteristics, and qualities, as set forth above.

911.   Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Kansas Class members whole and because Nissan has failed and/or refused to adequately provide the promised remedies within a reasonable time.

912.   Accordingly, recovery by Plaintiff and the Kansas Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff and the Kansas Class members seek all remedies as allowed by law.

913.   Also, as alleged in more detail herein, at the time that Nissan warranted and sold the vehicles they knew that the vehicles did not conform to the warranties and were inherently defective, and Kansas wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiff and the Kansas Class members were therefore induced to purchase the Class Vehicles under false and/or fraudulent pretenses.

914.   Moreover, many of the damages flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Nissan's fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the Kansas Class members' remedies would be insufficient.

915.   Nissan has been provided notice of these issues by numerous complaints as described herein.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

916.   As a direct and proximate result of Nissan's breach of express warranties, Plaintiff and the other Kansas Class members have been damaged in an amount to be determined at trial.

**K.     Claims Brought on Behalf of the Louisiana Class**

**COUNT 40: VIOLATIONS OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**

**(La. Rev. Stat. § 51:1401, et seq.)**

**(By Plaintiff Robertson Individually and on Behalf of the Louisiana Class)**

917.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

918.   Plaintiff Ebony Robertson (for the purpose of this section, "Plaintiff") brings this action on behalf of herself and the Louisiana Class against Defendant.

919.   Defendant, Plaintiff, and the Louisiana Class are "persons" within the meaning of the La. Rev. Stat. § 51:1402(8).

920.   Plaintiff and the Louisiana Class are "consumers" within the meaning of La. Rev. Stat. § 51:1402(1).

921.   Nissan engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. § 51:1402(10).

922.   The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. § 51:1405(A). Nissan participated in misleading, false, or deceptive acts that violated the Louisiana CPL.

923.   In the course of their business, Defendant concealed and suppressed material facts concerning the Class Vehicles. Plaintiff and Louisiana Class members did not and could not unravel Nissan's deception on their own.

924.   Defendant thus violated the Act by, at minimum: by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or

147

omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

925.    Defendant engaged in misleading, false, unfair or deceptive acts or practices that violated the Louisiana CPL by failing to disclose and actively concealing the unsafe defect, by marketing its vehicles as reliable, safe, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, and that stood behind its vehicles after they were sold.

926.    Nissan intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the Louisiana Class.

927.    Nissan knew or should have known that its conduct violated the Louisiana CPL.

928.    Defendant owed Plaintiff and the Class a duty to disclose the illegality and public health and safety risks of the Class Vehicles because they:

a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that contained an unsafe defect;

b.    intentionally concealed the foregoing from regulators, Plaintiff, Class members; and/or

c.    made incomplete representations about the safety of the Class Vehicles generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

929.    Defendant concealed the carbon monoxide defect. The value of the Class Vehicles has therefore greatly diminished. In light of the danger those vehicles present, they are now worth significantly less than they otherwise would be worth.

930.    Nissan's fraudulent concealment of the carbon monoxide defect was material to Plaintiff and the Louisiana Class.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

931.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the safety of the Class Vehicles and the true value of the Class Vehicles.

932.   Plaintiff and the Louisiana Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Louisiana Class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiff also suffered diminished value of their vehicles, as well as lost or diminished use.

933.   Defendant had an ongoing duty to all Nissan customers to refrain from unfair and deceptive practices under the Louisiana CPL. All owners of Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Nissan's deceptive and unfair acts and practices made in the course of Nissan's business.

934.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

935.   As a direct and proximate result of Defendant's violations of the Kansas CPA, Plaintiff and the Louisiana Class have suffered injury-in-fact and/or actual damage.

936.   Pursuant to La. Rev. Stat. § 51:1409, Plaintiff and the Louisiana Class seek to recover actual damages in an amount to be determined at trial; treble damages for Nissan's knowing violations of the Louisiana CPL; an order enjoining Nissan's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under La. Rev. Stat. § 51:1409.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

## COUNT 41: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/WARRANTY AGAINST REDHIBITORY DEFECTS
## (La. Civ. Code Art. 2520, 2524)

**(By Plaintiff Robertson Individually and on Behalf of the Louisiana Class)**

937.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

938.   Plaintiff brings this Count on behalf of herself and the Louisiana Class against Defendant.

939.   Nissan is and was at all relevant times a merchant with respect to motor vehicles.

940.   These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

941.   Specifically, the Class Vehicles are inherently defective in that they contain the carbon monoxide defect.

942.   Defendant was provided notice of these issues by complaints filed against it including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs.

943.   As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and the other Louisiana Class members have been damaged in an amount to be proven at trial.

**L.    Claims Brought on Behalf of the Maryland Class**

## COUNT 42: VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT
## (Md. Code Com. Law § 13-101, et seq.)

**(By Plaintiff Avon Martin Individually and on Behalf of the Maryland Class)**

944.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

150

945.   Plaintiff Avon Martin (for the purpose of this section, "Plaintiff") brings this action on behalf of herself and the Maryland Class against Defendant.

946.   Defendant, Plaintiff, and the Maryland Class are "persons" within the meaning of Md. Code Com. Law § 13-101(h).

947.   The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good. Md. Code Com. Law § 13-303. Nissan participated in misleading, false, or deceptive acts that violated the Maryland CPA.

948.   In the course of their business, Defendant concealed and suppressed material facts concerning the Class Vehicles. Plaintiff and Maryland Class members did not and could not unravel Nissan's deception on their own.

949.   Defendant thus violated the Act by, at minimum: by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

950.   Defendant engaged in misleading, false, unfair or deceptive acts or practices that violated the Maryland CPA by failing to disclose and actively concealing the unsafe defect, by marketing its vehicles as reliable, safe, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, and that stood behind its vehicles after they were sold.

951.   Nissan intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the Maryland Class.

952.   Nissan knew or should have known that its conduct violated the Maryland CPA.

953.   Defendant owed Plaintiff a duty to disclose the illegality and public health and safety risks of the Class Vehicles because they:

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

      a.     possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that contained an unsafe defect;

      b.     intentionally concealed the foregoing from regulators, Plaintiff, Class members; and/or

      c.     made incomplete representations about the safety of the Class Vehicles generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

954. Defendant concealed the carbon monoxide defect. The value of the Class Vehicles has therefore greatly diminished. In light of the danger those vehicles present, they are now worth significantly less than they otherwise would be worth.

955. Nissan's fraudulent concealment of the carbon monoxide defect was material to Plaintiff and the Maryland Class.

956. Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the safety of the Class Vehicles and the true value of the Class Vehicles.

957. Plaintiff and the Maryland Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Maryland Class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiff also suffered diminished value of their vehicles, as well as lost or diminished use.

958. Defendant had an ongoing duty to all Nissan customers to refrain from unfair and deceptive practices under the Maryland CPA. All owners of Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

of Nissan's deceptive and unfair acts and practices made in the course of Nissan's business.

959.    Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

960.    As a direct and proximate result of Defendant's violations of the Maryland CPA, Plaintiff and the Maryland Class have suffered injury-in-fact and/or actual damage.

961.    Pursuant to Md. Code Com. Law § 13-408, Plaintiff and the Maryland Class seek actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

## COUNT 43: MARYLAND LEMON LAW
### (Md. Code. Com. Law § 14-1501, et seq.)
### (By Plaintiff Avon Martin Individually and on Behalf of the Maryland Class)

962.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

963.    Plaintiff Avon Martin brings this action on behalf of herself and the Maryland Class against Defendant.

964.    Plaintiff and the Class own or lease "motor vehicles" within the meaning of Md. Code, Com. Law § 14-1501(f), because these vehicles were registered in the state and fall within the categories of vehicles manufactured, assembled, or distributed by Nissan. These vehicles are not auto homes.

965.    Defendant is a "manufacturer[s]" of the Class Vehicles within the meaning of Md. Code, Com. Law § 14-1501(d).

966.    Plaintiff and the Class are "consumers" within the meaning of Md. Code, Com. Law § 14-1501(b) because they: purchased the Class Vehicles, were transferred the Class Vehicles during the warranty period, or are otherwise entitled to the attendant terms of warranty.

153

967.    The Class Vehicles did not conform to their "warranties" under Md. Code, Com. Law § 14-1501(g) during the warranty period because they contained the carbon monoxide defect, which substantially impaired the use and market value of their motor vehicles.

968.    Nissan had actual knowledge of the conformities during the "warranty period" within the meaning of Md. Code, Com. Law § 14-1501(e). But the nonconformities continued to exist throughout this term, as they have not been fixed. Plaintiffs and class members are excused from notifying Nissan of the nonconformities because it was already fully aware of the problem and any repair attempt is futile.

969.    Nissan has had a reasonable opportunity to cure the nonconformities during the warranty period because of its actual knowledge of, creation of, and attempt to conceal the nonconformities, but has not done so as required under Md. Code, Com. Law § 14-1502.

970.    Plaintiff and the Class demand a full refund of the purchase price, including all license fees, registration fees, and any similar governmental charges. Md. Code, Com. Law § 14-1502(c). Once payment has been tendered, class members will return their vehicles.

**COUNT 44: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Md. Code Com. Law §§ 2-314 and 2A-212)**

**(By Plaintiff Avon Martin Individually and on Behalf of the Maryland Class)**

971.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

972.    Plaintiff Avon Martin brings this Count on behalf of herself and the Maryland Class against Defendant.

973.    Defendant is and was at all relevant times "merchants" with respect to motor vehicles under Md. Code Com. Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

154

974.    With respect to leases, Defendant is and was at all relevant times "lessors" of motor vehicles under Md. Code Com. Law § 2A-103(1)(p).

975.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Md. Code Com. Law §§ 2-105(1) and 2a-103(1)(h).

976.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Md. Code Com. Law §§ 2-314, and 2a-212.

977.    These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

978.    Specifically, the Class Vehicles are inherently defective in that they contain the carbon monoxide defect.

979.    Defendant was provided notice of these issues by complaints filed against it including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs.

980.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the other Maryland Class members have been damaged in an amount to be proven at trial.

## COUNT 45: BREACH OF EXPRESS WARRANTY
## (Md. Code Com. Law §§ 2-313 and 2a-210)
### (By Plaintiff Avon Martin Individually and on Behalf of the Maryland Class)

981.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

982.    Plaintiff Avon Martin brings this Count on behalf of herself and the Maryland Class against Defendant.

983.    Defendant is and was at all relevant times "merchants" with respect to motor vehicles under Md. Code Com. Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

155

984.   With respect to leases, Defendant is and was at all relevant times "lessors" of motor vehicles under Md. Code Com. Law § 2A-103(1)(p).

985.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Md. Code Com. Law §§ 2-105(1) and 2a-103(1)(h).

986.   In connection with the purchase or lease of each one of its new vehicles, Defendant provides an express New Vehicle Limited Warranty ("NVLW") for a period of three years or 36,000 miles, whichever occurs first. Powertrain coverage is extended to five years or 60,000 miles.

987.   In addition to the written warranties Nissan issued, Nissan expressly warranted several attributes, characteristics, and qualities, as set forth above.

988.   Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the Maryland Class members whole and because Nissan has failed and/or refused to adequately provide the promised remedies within a reasonable time.

989.   Accordingly, recovery by Plaintiff and the Maryland Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff and the Maryland Class members seek all remedies as allowed by law.

990.   Also, as alleged in more detail herein, at the time that Nissan warranted and sold the vehicles they knew that the vehicles did not conform to the warranties and were inherently defective, and Maryland wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiffs and the Maryland Class members were therefore induced to purchase the Class Vehicles under false and/or fraudulent pretenses.

991.   Moreover, many of the damages flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Nissan's fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide

such limited remedy within a reasonable time, and any limitation on Plaintiff and the Kansas Class members' remedies would be insufficient.

992.    Nissan has been provided notice of these issues by numerous complaints as described herein.

993.    As a direct and proximate result of Nissan's breach of express warranties, Plaintiff and the other Maryland Class members have been damaged in an amount to be determined at trial.

**M.    Claims Brought on Behalf of the Michigan Class**

**COUNT 46: VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT**

**(Mich. Comp. Laws § 445.903, et seq.)**

**(By Plaintiff Moore Individually and on Behalf of the Michigan Class)**

994.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

995.    Plaintiff Judi Moore brings this action on behalf of herself and the Michigan Class against Defendant.

996.    Plaintiff and the Michigan Class members were "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

997.    At all relevant times, Nissan was a "person" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d) and (g).

998.    The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce …." Mich. Comp. Laws § 445.903(1). Nissan engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the Michigan CPA, including: "(c) Representing that goods or services have … characteristics … that they do not have ….;" "(e) Representing that goods or services are of a particular standard … if they are of another;" "(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" "(s) Failing to reveal a material

157

fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).

999.   In the course of their business, Defendant concealed and suppressed material facts concerning the Class Vehicles. Plaintiff and Michigan Class members did not and could not unravel Nissan's deception on their own.

1000. Defendant thus violated the Act by, at minimum: by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1001. Defendant engaged in misleading, false, unfair or deceptive acts or practices that violated the Michigan CPA by failing to disclose and actively concealing the unsafe defect, by marketing its vehicles as reliable, safe, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, and that stood behind its vehicles after they were sold.

1002. Nissan intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Michigan Class.

1003. Nissan knew or should have known that its conduct violated the Michigan CPA.

1004. Defendant owed Plaintiff a duty to disclose the illegality and public health and safety risks of the Class Vehicles because they:

    a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that contained an unsafe defect;

158

b.     intentionally concealed the foregoing from regulators, Plaintiff, Class members; and/or

c.     made incomplete representations about the safety of the Class Vehicles generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1005. Defendant concealed the carbon monoxide defect. The value of the Class Vehicles has therefore greatly diminished. In light of the danger those vehicles present, they are now worth significantly less than they otherwise would be worth.

1006. Nissan's fraudulent concealment of the carbon monoxide defect was material to Plaintiffs and the Michigan Class.

1007. Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the safety of the Class Vehicles and the true value of the Class Vehicles.

1008. Plaintiff and the Michigan Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Michigan Class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiff also suffered diminished value of their vehicles, as well as lost or diminished use.

1009. Defendant had an ongoing duty to all Nissan customers to refrain from unfair and deceptive practices under the Michigan CPA. All owners of Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Nissan's deceptive and unfair acts and practices made in the course of Nissan's business.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

1010. Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

1011. As a direct and proximate result of Defendant's violations of the Michigan CPA, Plaintiff and the Michigan Class have suffered injury-in-fact and/or actual damage.

1012. Plaintiff seeks injunctive relief to enjoin Nissan from continuing its unfair and deceptive acts; monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for Plaintiff and each Michigan Class member; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

1013. Plaintiffs also seek punitive damages against Nissan because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others.

1014. Nissan intentionally and willfully misrepresented the safety and reliability of the Class Vehicles, concealed material facts that only they knew, and repeatedly promised Plaintiffs and Michigan Class members that all vehicles were safe. Nissan's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT 47: BREACH OF EXPRESS WARRANTY

### (Mich. Comp. Laws §§ 440.2313 and 440.2860)

### (By Plaintiff Moore Individually and on Behalf of the Michigan Class)

1015. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1016. Plaintiff brings this Count on behalf of herself and the Michigan Class against Defendant.

1017. Defendant is and was at all relevant times "merchants" with respect to motor vehicles under Mich. Comp. Laws § 440.2104(1) and "sellers" of motor vehicles under § 440.2103(1)(c).

1018. With respect to leases, Defendant is and was at all relevant times "lessors" of motor vehicles under Mich. Comp. Laws § 440.2803(1)(p).

160

1019. The Class Vehicles are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws §§ 440.2105(1) and 440.2803(1)(h).

1020. In connection with the purchase or lease of each one of its new vehicles, the Defendant provides an express New Vehicle Limited Warranty ("NVLW") for a period of three years or 36,000 miles, whichever occurs first. Powertrain coverage is extended to five years or 60,000 miles.

1021. In addition to the written warranties Nissan issued, Nissan expressly warranted several attributes, characteristics, and qualities, as set forth above.

1022. Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Michigan Class members whole and because Nissan has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1023. Accordingly, recovery by Plaintiff and the Michigan Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff and the Michigan Class members seek all remedies as allowed by law.

1024. Also, as alleged in more detail herein, at the time that Nissan warranted and sold the vehicles they knew that the vehicles did not conform to the warranties and were inherently defective, and Nissan wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiff and the Michigan Class members were therefore induced to purchase the Class Vehicles under false and/or fraudulent pretenses.

1025. Moreover, many of the damages flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Nissan's fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the Michigan Class members' remedies would be insufficient.

1026. Nissan has been provided notice of these issues by numerous complaints as described herein.

1027. As a direct and proximate result of Nissan's breach of express warranties, Plaintiff and the other Michigan Class members have been damaged in an amount to be determined at trial.

## COUNT 48: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Mich. Comp. Laws §§ 440.2314 and 440.2860)

### (By Plaintiff Moore Individually and on Behalf of the Michigan Class)

1028. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1029. Plaintiff brings this Count on behalf of herself and the Michigan Class against Defendant.

1030. Defendant is and was at all relevant times "merchants" with respect to motor vehicles under Mich. Comp. Laws § 440.2104(1) and "sellers" of motor vehicles under § 440.2103(1)(d).

1031. With respect to leases, Defendant is and was at all relevant times "lessors" of motor vehicles under MICH. COMP. LAWS § 440.2803(1)(p).

1032. The Class Vehicles are and were at all relevant times "goods" within the meaning of MICH. COMP. LAWS §§ 440.2105(1) and 440.2803(1)(h).

1033. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to MICH. COMP. LAWS §§ 440.2314 and 440.2862.

1034. These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

1035. Specifically, the Class Vehicles are inherently defective in that they contain the carbon monoxide defect.

162

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

1036. Defendant was provided notice of these issues by complaints filed against it including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs.

1037. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the other Michigan Class members have been damaged in an amount to be proven at trial.

**N.    Claims Brought on Behalf of the Missouri Class**

**COUNT 49: VIOLATIONS OF MISSOURI MERCHANDISING PRACTICES ACT**

**(Mo. Rev. Stat. § 407.010, et seq.)**

**(By Plaintiff Mabery Individually and on Behalf of the Missouri Class)**

1038. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1039. Plaintiff Theresa Mabery brings this action on behalf of herself and the Missouri Class against Defendant.

1040. Defendant, Plaintiff, and the Missouri Class are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

1041. Nissan engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. § 407.010(7).

1042. The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise Mo. Rev. Stat. § 407.020.

1043. In the course of their business, Defendant concealed and suppressed material facts concerning the Class Vehicles. Plaintiff and Missouri Class members did not and could not unravel Nissan's deception on their own.

1044. Defendant thus violated the Act by, at minimum: by employing deception,

163

1045. deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1046. Defendant engaged in misleading, false, unfair or deceptive acts or practices that violated the Missouri MPA by failing to disclose and actively concealing the unsafe defect, by marketing its vehicles as reliable, safe, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, and that stood behind its vehicles after they were sold.

1047. Nissan intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the Missouri Class.

1048. Nissan knew or should have known that its conduct violated the Missouri MPA.

1049. Defendant owed Plaintiff a duty to disclose the illegality and public health and safety risks of the Class Vehicles because they:

    a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that contained an unsafe defect;

    b.    intentionally concealed the foregoing from regulators, Plaintiff, Class members; and/or

    c.    made incomplete representations about the safety of the Class Vehicles generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1050. Defendant concealed the carbon monoxide defect. The value of the Class Vehicles has therefore greatly diminished. In light of the danger those vehicles present, they are now worth significantly less than they otherwise would be worth.

1051. Nissan's fraudulent concealment of the carbon monoxide defect was material to Plaintiff and the Missouri Class.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

1052. Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the safety of the Class Vehicles and the true value of the Class Vehicles.

1053. Plaintiff and the Missouri Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Missouri Class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiff also suffered diminished value of their vehicles, as well as lost or diminished use.

1054. Defendant had an ongoing duty to all Nissan customers to refrain from unfair and deceptive practices under the Missouri CPA. All owners of Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Nissan's deceptive and unfair acts and practices made in the course of Nissan's business.

1055. Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

1056. As a direct and proximate result of Defendant's violations of the Missouri MPA, Plaintiff and the Missouri Class have suffered injury-in-fact and/or actual damage.

1057. Plaintiffs seek actual damages in an amount to be determined at trial any other just and proper relief available under the Missouri MPA.

## COUNT 50: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Mo. Stat. §§ 400.2-314 and 400.2A-212)

### (By Plaintiff Mabery Individually and on Behalf of the Missouri Class)

1058. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

165

1059. Plaintiff brings this Count on behalf of herself and the Missouri Class against Defendant.

1060. Defendant is and was at all relevant times "merchants" with respect to motor vehicles under Mo. Stat. § 400.2-104(1) and "sellers" of motor vehicles under § 400.2-103(1)(d).

1061. With respect to leases, Defendant is and was at all relevant times "lessors" of motor vehicles under Mo. Stat. § 400.2A-103(1)(p).

1062. The Class Vehicles are and were at all relevant times "goods" within the meaning of Mo. Stat. § 400.2-105(1) and Mo. Stat. § 400.2A-103(1)(h).5. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Mo. Stat. § 400.2-314 and Mo. Stat. § 400.2A-212.

1063. These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

1064. Specifically, the Class Vehicles are inherently defective in that they contain the carbon monoxide defect.

1065. Defendant was provided notice of these issues by complaints filed against it including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs.

1066. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and the other Missouri Class members have been damaged in an amount to be proven at trial.

## COUNT 51: BREACH OF EXPRESS WARRANTY

### (Mo. Stat. §§ 400.2-313 and 400.2A-210)

### (By Plaintiff Mabery Individually and on Behalf of the Missouri Class)

1067.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

166

1068. Plaintiff brings this Count on behalf of herself and the Missouri Class against Defendant.

1069. Defendant is and was at all relevant times "merchants" with respect to motor vehicles under Mo. Stat. § 400.2-104(1) and "sellers" of motor vehicles under § 400.2-103(1)(d).

1070. With respect to leases, Defendant is and was at all relevant times "lessors" of motor vehicles under Mo. Stat. § 400.2A-103(1)(p).

1071. The Class Vehicles are and were at all relevant times "goods" within the meaning of Mo. Stat. § 400.2-105(1) and Mo. Stat. § 400.2A-103(1)(h).

1072. In connection with the purchase or lease of each one of its new vehicles, Defendant provides an express New Vehicle Limited Warranty ("NVLW") for a period of three years or 36,000 miles, whichever occurs first. Powertrain coverage is extended to five years or 60,000 miles.

1073. In addition to the written warranties Nissan issued, Nissan expressly warranted several attributes, characteristics, and qualities, as set forth above.

1074. Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Missouri Class members whole and because Nissan has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1075. Accordingly, recovery by Plaintiff and the Missouri Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff and the Missouri Class members seek all remedies as allowed by law.

1076. Also, as alleged in more detail herein, at the time that Nissan warranted and sold the vehicles they knew that the vehicles did not conform to the warranties and were inherently defective, and Nissan wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiff and the Missouri Class

167

members were therefore induced to purchase the Class Vehicles under false and/or fraudulent pretenses.

1077. Moreover, many of the damages flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Nissan's fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the Missouri Class members' remedies would be insufficient.

1078. Nissan has been provided notice of these issues by numerous complaints as described herein.

1079. As a direct and proximate result of Nissan's breach of express warranties, Plaintiff and the other Missouri Class members have been damaged in an amount to be determined at trial.

**O.    Claims Brought on Behalf of the Nevada Class**

**COUNT 52: VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT**

**(Nev. Rev. Stat. § 598.0903, et seq.)**

**(By Plaintiff Johnson Individually and on Behalf of the Nevada Class)**

1080. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1081. Plaintiff William Johnson (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the Nevada Class against Defendant.

1082. The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), NEV. REV. STAT. § 598.0903, et seq. prohibits deceptive trade practices. Nev. Rev. Stat. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person: "5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods or

168

1083. services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith"; "7. Represents that goods or services for sale or lease are of a particular standard, quality, or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style, or model"; "9. Advertises goods or services with intent not to sell or lease them as advertised"; or "15. Knowingly makes any other false representation in a transaction."

1084. In the course of their business, Defendant concealed and suppressed material facts concerning the Class Vehicles. Plaintiff and Nevada Class members did not and could not unravel Nissan's deception on their own.

1085. Defendant thus violated the Act by, at minimum: by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1086. Defendant engaged in misleading, false, unfair or deceptive acts or practices that violated the Nevada DTPA by failing to disclose and actively concealing the unsafe defect, by marketing its vehicles as reliable, safe, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, and that stood behind its vehicles after they were sold.

1087. Nissan intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Nevada Class.

1088. Nissan knew or should have known that its conduct violated the Nevada DTPA.

1089. Defendant owed Plaintiffs a duty to disclose the illegality and public health and safety risks of the Class Vehicles because they:

      a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that contained an unsafe defect;

169

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

　　　　b.　　intentionally concealed the foregoing from regulators, Plaintiff, Class members; and/or

　　　　c.　　made incomplete representations about the safety of the Class Vehicles generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1090. Defendant concealed the carbon monoxide defect. The value of the Class Vehicles has therefore greatly diminished. In light of the danger those vehicles present, they are now worth significantly less than they otherwise would be worth.

1091. Nissan's fraudulent concealment of the carbon monoxide defect was material to Plaintiff and the Nevada Class.

1092. Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the safety of the Class Vehicles and the true value of the Class Vehicles.

1093. Plaintiff and the Nevada Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Nevada Class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiff also suffered diminished value of their vehicles, as well as lost or diminished use.

1094. Defendant had an ongoing duty to all Nissan customers to refrain from unfair and deceptive practices under the Nevada DTPA. All owners of Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Nissan's deceptive and unfair acts and practices made in the course of Nissan's business.

170

1095. Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

1096. As a direct and proximate result of Defendant's violations of the Nevada DTPA, Plaintiff and the Nevada Class have suffered injury-in-fact and/or actual damage.

1097. Accordingly, Plaintiff and the Nevada Class seek their actual damages, punitive damages, an order enjoining Nissan's deceptive acts or practices, costs of Court, attorney's fees, and all other appropriate and available remedies under the Nevada Deceptive Trade Practices Act. Nev. Rev. Stat. § 41.600.

## COUNT 53: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.R.S. §§ 104.2314 and 104A.2212)

**(By Plaintiff Johnson Individually and on Behalf of the Nevada Class)**

1098. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1099. Plaintiff brings this Count on behalf of himself and the Nevada Class against Defendant.

1100. Defendant is and was at all relevant times "merchants" with respect to motor vehicles under N.R.S. § 104.2104(1) and "sellers" of motor vehicles under § 104.2103(1)(c).

1101. With respect to leases, Defendant is and was at all relevant times "lessors" of motor vehicles under N.R.S. § 104A.2103(1)(p).

1102. The Class Vehicles are and were at all relevant times "goods" within the meaning of N.R.S. §§ 104.2105(1) and 104A.2103(1)(h).

1103. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.R.S. §§ 104.2314 and 104A.2212.

1104. These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

1105. Specifically, the Class Vehicles are inherently defective in that they contain the carbon monoxide defect.

1106. Defendant was provided notice of these issues by complaints filed against it including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs.

1107. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the other Nevada Class members have been damaged in an amount to be proven at trial.

## COUNT 54: BREACH OF EXPRESS WARRANTY
## (N.R.S. §§ 104.2313 and 104A.2210)

### (By Plaintiff Johnson Individually and on Behalf of the Nevada Class)

1108.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1109. Plaintiff brings this Count on behalf of himself and the Nevada Class against Defendant.

1110. Defendant is and was at all relevant times "merchants" with respect to motor vehicles under N.R.S. § 104.2104(1) and "sellers" of motor vehicles under § 104.2103(1)(c).

1111. With respect to leases, Defendant is and was at all relevant times "lessors" of motor vehicles under N.R.S. § 104A.2103(1)(p).

1112. The Class Vehicles are and were at all relevant times "goods" within the meaning of N.R.S. §§ 104.2105(1) and 104A.2103(1)(h).

1113. In connection with the purchase or lease of each one of its new vehicles, Defendant provides an express New Vehicle Limited Warranty ("NVLW") for a period

172

of three years or 36,000 miles, whichever occurs first. Powertrain coverage is extended to five years or 60,000 miles.

1114. In addition to the written warranties Nissan issued, Nissan expressly warranted several attributes, characteristics, and qualities, as set forth above.

1115. Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Nevada Class members whole and because Nissan has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1116. Accordingly, recovery by Plaintiff and the Nevada Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff and the Nevada Class members seek all remedies as allowed by law.

1117. Also, as alleged in more detail herein, at the time that Nissan warranted and sold the vehicles they knew that the vehicles did not conform to the warranties and were inherently defective, and Nissan wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiff and the Nevada Class members were therefore induced to purchase the Class Vehicles under false and/or fraudulent pretenses.

1118. Moreover, many of the damages flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Nissan's fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the Nevada Class members' remedies would be insufficient.

1119. Nissan has been provided notice of these issues by numerous complaints as described herein.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

1120. As a direct and proximate result of Nissan's breach of express warranties, Plaintiff and the other Nevada Class members have been damaged in an amount to be determined at trial.

**P.    Claims Brought on Behalf of the New Hampshire Class**

**COUNT 55: VIOLATIONS OF N.H. CONSUMER PROTECTION ACT**

**(N.H. Rev. Stat. Ann. § 358-a:1, et seq.)**

**(By Plaintiff Hewey Individually and on Behalf of the New Hampshire Class)**

1121. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1122. Plaintiff Lyndsy Hewey (for the purpose of this section, "Plaintiff") brings this action on behalf of herself and the New Hampshire Class against Defendant.

1123. Plaintiff, the New Hampshire Class, and Defendant are "persons" under the New Hampshire Consumer Protection Act ("New Hampshire CPA"), N.H. Rev. Stat. § 358-A:1.

1124. Nissan's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. Rev. Stat. § 358-A:1.

1125. The New Hampshire CPA prohibits a person, in the conduct of any trade or commerce, from using "any unfair or deceptive act or practice," including "but … not limited to, the following: … (V) Representing that goods or services have … characteristics, … uses, benefits, or quantities that they do not have;" "(VII) Representing that goods or services are of a particular standard, quality, or grade, … if they are of another;" and "(IX) Advertising goods or services with intent not to sell them as

1126. advertised." N.H. Rev. Stat. § 358-A:2.

1127. In the course of their business, Defendant concealed and suppressed material facts concerning the Class Vehicles. Plaintiff and New Hampshire Class members did not and could not unravel Nissan's deception on their own.

1128. Defendant thus violated the Act by, at minimum: by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or

174

omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1129. Defendant engaged in misleading, false, unfair or deceptive acts or practices that violated the New Hampshire CPA by failing to disclose and actively concealing the unsafe defect, by marketing its vehicles as reliable, safe, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, and that stood behind its vehicles after they were sold.

1130. Nissan intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the New Hampshire Class.

1131. Nissan knew or should have known that its conduct violated the New Hampshire CPA.

1132. Defendant owed Plaintiffs a duty to disclose the illegality and public health and safety risks of the Class Vehicles because they:

    a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that contained an unsafe defect;

    b.    intentionally concealed the foregoing from regulators, Plaintiff, Class members; and/or

    c.    made incomplete representations about the safety of the Class Vehicles generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1133. Defendant concealed the carbon monoxide defect. The value of the Class Vehicles has therefore greatly diminished. In light of the danger those vehicles present, they are now worth significantly less than they otherwise would be worth.

1134. Nissan's fraudulent concealment of the carbon monoxide defect was material to Plaintiff and the New Hampshire Class.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

1135. Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the safety of the Class Vehicles and the true value of the Class Vehicles.

1136. Plaintiff and the New Hampshire Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the New Hampshire Class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiff also suffered diminished value of their vehicles, as well as lost or diminished use.

1137. Defendant had an ongoing duty to all Nissan customers to refrain from unfair and deceptive practices under the New Hampshire CPA. All owners of Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Nissan's deceptive and unfair acts and practices made in the course of Nissan's business.

1138. Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

1139. As a direct and proximate result of Defendant's violations of the New Hampshire CPA, Plaintiff and the New Hampshire Class have suffered injury-in-fact and/or actual damage.

1140. Because Nissan's willful conduct caused injury to New Hampshire Class members' property through violations of the New Hampshire CPA, the New Hampshire Class seeks recovery of actual damages or $1,000, whichever is greater, treble damages, costs and reasonable attorneys' fees, an order enjoining Nissan's unfair and/or deceptive acts and practices, and any other just and proper relief under N.H. REV. STAT. § 358-A:10.

**COUNT 56: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**(N.H. Rev. Stat. §§ 382-A:2-314 and 382-A:2A-212)**

**(By Plaintiff Hewey Individually and on Behalf of the New Hampshire Class)**

1141.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1142. Plaintiff brings this Count on behalf of herself and the New Hampshire Class against Defendant.

1143. Defendant is and was at all relevant times "merchants" with respect to motor vehicles under N.H. Rev. Stat. § 382-A:2-104(1) and "sellers" of motor vehicles under § 382-A:2-103(1)(d).

1144. With respect to leases, Defendant is and was at all relevant times "lessors" of motor vehicles under N.H. Rev. Stat. § 382-A:2A-103(1)(p).

1145. The Class Vehicles are and were at all relevant times "goods" within the meaning of N.H. Rev. Stat. §§ 382-A:2-105(1) and 382-A:2A-103(1)(h).

1146. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.H. Rev. Stat. §§ 382-A:2-314 and 382-A:2A-212.

1147. These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

1148. Specifically, the Class Vehicles are inherently defective in that they contain the carbon monoxide defect.

1149. Defendant was provided notice of these issues by complaints filed against it including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs.

1150. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the other New Hampshire Class members have been damaged in an amount to be proven at trial.

177

## COUNT 57: BREACH OF EXPRESS WARRANTY

### (N.H. Rev. Stat. §§ 382-A:2-313 and 382-A:2A-210)

### (By Plaintiff Hewey Individually and on Behalf of the New Hampshire Class)

1151.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1152. Plaintiff brings this Count on behalf of herself and the New Hampshire Class against Defendant.

1153. Defendant is and was at all relevant times "merchants" with respect to motor vehicles under N.H. Rev. Stat. § 382-A:2-104(1) and "sellers" of motor vehicles under § 382-A:2-103(1)(d).

1154. With respect to leases, Defendant is and was at all relevant times "lessors" of motor vehicles under N.H. Rev. Stat. § 382-A:2A-103(1)(p).

1155. The Class Vehicles are and were at all relevant times "goods" within the meaning of N.H. Rev. Stat. §§ 382-A:2-105(1) and 2A-103(1)(h).

1156. In connection with the purchase or lease of each one of its new vehicles, Defendant provides an express New Vehicle Limited Warranty ("NVLW") for a period of three years or 36,000 miles, whichever occurs first. Powertrain coverage is extended to five years or 60,000 miles.

1157. In addition to the written warranties Nissan issued, Nissan expressly warranted several attributes, characteristics, and qualities, as set forth above.

1158. Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the New Hampshire Class members whole and because Nissan has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1159. Accordingly, recovery by Plaintiff and the New Hampshire Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff and the New Hampshire Class members seek all remedies as allowed by law.

178

1160. Also, as alleged in more detail herein, at the time that Nissan warranted and sold the vehicles they knew that the vehicles did not conform to the warranties and were inherently defective, and Nissan wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiff and the New Hampshire Class members were therefore induced to purchase the Class Vehicles under false and/or fraudulent pretenses.

1161. Moreover, many of the damages flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Nissan's fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the New Hampshire Class members' remedies would be insufficient.

1162. Nissan has been provided notice of these issues by numerous complaints as described herein.

1163. As a direct and proximate result of Nissan's breach of express warranties, Plaintiffs and the other New Hampshire Class members have been damaged in an amount to be determined at trial.

**Q.    Claims Brought on Behalf of the New Jersey Class**

**COUNT 58: VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT**

**(N.J. Stat. Ann. § 56:8-1, et seq.)**

**(By Plaintiffs Moras and Loh, Individually and on Behalf of the New Jersey Class)**

1164. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1165. Plaintiffs Barbara Moras and Mason Loh (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the New Jersey Class against Defendant.

1166. Plaintiffs, the New Jersey Class members, and Nissan are persons under the New Jersey Consumer Fraud Act, N.J. Stat. Ann.§ 56:8-1(d).

179

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

1     1167. Nissan engaged in "sales" of "merchandise" within the meaning of New
2   Jersey Statutes § 56:8-1(c), (e). Nissan's actions as set forth herein occurred in the
3   conduct of trade or commerce.

4     1168. The New Jersey Consumer Fraud Act ("CFA") makes unlawful "[t]he act,
5   use or employment by any person of any unconscionable commercial practice, deception,
6   fraud, false pretense, false promise, misrepresentation, or the knowing concealment,
7   suppression or omission of any material fact with the intent that others rely upon such
8   concealment, suppression or omission, in connection with the sale or advertisement of
9   any merchandise or real estate, or with the subsequent performance of such person as
10  aforesaid, whether or not any person has in fact been misled, deceived or damaged
11  thereby . . . ."  N.J. Stat. Ann. § 56:8-2.

12    1169. In the course of Nissan's business, it knowingly failed to disclose and
13  actively concealed the carbon monoxide defect in the Class Vehicles. This was an
14  unlawful practice in that Nissan represented that the Class Vehicles have characteristics,
15  uses, benefits, and qualities which they do not have; represented that the Class Vehicles
16  are of a particular standard and quality when they are not; and advertised the Class
17  Vehicles with the intent not to sell them as advertised. Nissan knew or should have
18  known that its conduct violated the CFA.

19    1170. Nissan failed to disclose and actively concealed the dangerous risk of carbon
20  monoxide in the Class Vehicles.

21    1171. Nissan engaged in deceptive trade practices prohibited by the New Jersey
22  CFA, including (1) knowingly making a false representation as to the characteristics,
23  uses, and benefits of the Class Vehicles that had the capacity or tendency to deceive
24  Plaintiffs and the New Jersey Class members; (2) representing that the Class Vehicles are
25  of a particular standard, quality, and grade even though Nissan knew or should have
26  known they are not; (3) advertising the Class Vehicles with the intent not to sell them as
27  advertised; and (4) failing to disclose material information concerning the Class Vehicles
28

180

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

that was known to Nissan at the time of advertisement or sale with the intent to induce Plaintiffs and the New Jersey Class members to purchase or lease the Defective Vehicles.

1172. Nissan knew that Class Vehicles were defectively designed or manufactured, would fail without warning, and was not suitable for its intended use. Nissan, nevertheless, failed to warn Plaintiffs or the New Jersey Class members about these inherent dangers despite having a duty to do so.

1173. Nissan had the duty to Plaintiffs and the New Jersey Class members to disclose the carbon monoxide defect and the defective nature of the Class Vehicles because:

      a.    Nissan was in a superior position to know the true state of facts about the carbon monoxide defect and associated repair costs in the Class Vehicles;

      b.    Plaintiffs and the New Jersey Class members could not reasonably have been expected to learn or discover that the Class Vehicles had dangerous defects until manifestation of the defects;

      c.    Nissan knew that Plaintiffs and the New Jersey Class members could not reasonably have been expected to learn about or discover the carbon monoxide defect and its associated repair costs; and

      d.    Nissan actively concealed the Defect, its causes, and resulting effects, by asserting to Plaintiffs and New Jersey Class members that carbon monoxide pooled in their cabins for reasons other than the carbon monoxide defect.

1174. Nissan's practices significantly affected the public as consumers of the Class Vehicles, which pose an unreasonable risk of death or serious bodily injury to Plaintiffs and the New Jersey Class members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to filling with carbon monoxide.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

1175.  Whether or not a vehicle fills with carbon monoxide is a fact a reasonable consumer would consider important in selecting a vehicle to purchase or lease. When Plaintiff and the New Jersey Class members bought a Class Vehicle for personal, family, or household purposes, they reasonably expected the vehicle not to fill with carbon monoxide.

1176. Nissan's deceptive practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the New Jersey Class members, about the true safety and reliability of the Class Vehicles.

1177. Nissan's unlawful practices have caused substantial harm to consumers.

1178. The carbon monoxide defects alleged herein were material to Plaintiffs and to the New Jersey Class members. Had Plaintiffs and the New Jersey Class members known that the Class Vehicles had these material safety defects they would not have purchased the Class Vehicles or would not have paid as much for them.

1179. Plaintiffs and the New Jersey Class members suffered ascertainable loss of money or property caused by Nissan's unlawful practices. Plaintiffs and the New Jersey Class members overpaid for their vehicles and did not receive the benefit of their bargain. The value of the Class Vehicles has diminished now that the safety issues have come to light, and Plaintiffs and the New Jersey Class members now own or lease the Class Vehicles, which are unsafe.

1180. Plaintiffs and the New Jersey Class members are entitled to recover legal and/or equitable relief, treble damages, and reasonable attorneys' fees pursuant to New Jersey Statutes Annotated § 56:8-19.

1181. Pursuant to New Jersey Statutes Annotated § 56:8-20, Plaintiffs will mail a copy of the complaint to the Attorney General of New Jersey within ten (10) days of filing.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

## COUNT 59: BREACH OF EXPRESS WARRANTY

### (N.J. Stat. Ann. § 12A:2-313)

**(By Plaintiffs Moras and Loh, Individually and on Behalf of the New Jersey Class)**

1182.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1183. Plaintiffs bring this cause of action on behalf of themselves and the New Jersey Class against Defendant.

1184. Nissan is and was at all relevant times a "merchant" with respect to motor vehicles under New Jersey Statutes Annotated § 12A:2-104(1) and a "seller" of motor vehicles under § 2-103(1)(d).

1185. With respect to leases, Nissan is and was at all relevant times a "lessor" of motor vehicles under New Jersey Statutes Annotated § 12A:2A-103(1)(p).

1186. The Class Vehicles are and were at all relevant times "goods" within the meaning of New Jersey Statutes Annotated §§ 12A:2-105(1) and 2A-103(1)(h).

1187. In the course of selling the Class Vehicles, Nissan expressly warranted in writing that the Class Vehicles were covered by a warranty, as set forth above.

1188. Nissan breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Nissan. Nissan has not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1189. In addition to the Nissan's express warranty, Nissan expressly warranted several attributes, characteristics, and qualities, as set forth above.

1190. Furthermore, the limited warranty of repair and/or adjustments to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the New Jersey Class members whole, and because Nissan has failed and/or refused to adequately provide the promised remedies within a reasonable time.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

1191. Accordingly, recovery by Plaintiffs and the New Jersey Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs will seek all remedies as allowed by law.

1192. Also, as alleged in more detail herein, at the time that Nissan warranted and sold the vehicles they knew that the vehicles did not conform to the warranties and were inherently defective, and Nissan wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Class Vehicles.

1193. Moreover, many of the damages flowing from the purchase and use of the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on available remedies would be insufficient to make Plaintiffs and the New Jersey Class members whole.

1194. Finally, due to the Nissan's breach of warranties as set forth herein, Plaintiffs and the New Jersey Class members assert as an additional and/or alternative remedy, as set for in New Jersey Statutes Annotated § 12A:2-608, for revocation of acceptance of the goods, and for a return to Plaintiffs and to the New Jersey Class members, of the purchase price of all vehicles they currently own. Nissan has been provided notice of these issues by numerous complaints, including the complaints alleged herein.

1195. As a direct and proximate result of Nissan's breach of express warranties, Plaintiffs and the New Jersey Class members have been damaged in an amount to be determined at trial.

## COUNT 60: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.J. Stat. Ann. § 12A:2-314)

**(By Plaintiffs Moras and Loh, Individually and on Behalf of the New Jersey Class)**

1196.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

184

1197. Plaintiffs bring this cause of action on behalf of themselves and the New Jersey Class against Defendant.

1198. Plaintiffs, the New Jersey Class members, and Nissan are persons under the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1(d).

1199. Nissan is and was at all relevant times a "merchant" with respect to motor vehicles under New Jersey Statutes Annotated § 12A:2-104(1) and a "seller" of motor vehicles under § 2-103(1)(d).

1200. With respect to leases, Nissan is and was at all relevant times a "lessor" of motor vehicles under New Jersey Statutes Annotated § 12A:2A-103(1)(p).

1201. The Class Vehicles are and were at all relevant times "goods" within the meaning of New Jersey Statutes Annotated §§ 12A:2-105(1) and 2A-103(1)(h).

1202. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to New Jersey Statutes Annotated §§ 12A:2-314 and 2A-212.

1203. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that carbon monoxide pools in the vehicle.

1204. Nissan has been provided notice of these issues by numerous complaints as described herein.

1205. As a direct and proximate result of Nissan's breach of the warranties of merchantability, Plaintiffs and the New Jersey Class members have been damaged in an amount to be proven at trial.

## COUNT 61: BREACH OF CONTRACT

### (Based on New Jersey Law)

**(By Plaintiffs Moras and Loh, Individually and on Behalf of the New Jersey Class)**

1206. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

185

1207. Plaintiffs bring this cause of action on behalf of themselves and the New Jersey Class against Defendant.

1208. Plaintiffs, the New Jersey Class members, and Nissan are persons under the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1(d).

1209. To the extent Nissan's repair or adjust commitment is deemed not to be a warranty under New Jersey's Commercial Code, Plaintiffs plead a common law contract claim in the alternative. Nissan limited the remedies available to Plaintiffs and the New Jersey Class members to just repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Nissan, and/or warranted the quality or nature of those services to Plaintiffs and the New Jersey Class members.

1210. Nissan breached this contract obligation by failing to repair the Class Vehicles evidencing a sudden unintended acceleration problem, including those that were recalled, or to replace them.

1211. As a direct and proximate result of Nissan's breach of contract, Plaintiffs and the New Jersey Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT 62: UNJUST ENRICHMENT
### (Based on New Jersey Law)
**(By Plaintiffs Moras and Loh, Individually and on Behalf of the New Jersey Class)**

1212.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1213. Plaintiffs bring this cause of action on behalf of themselves and the New Jersey Class against Defendant.

1214. Plaintiffs, the New Jersey Class members, and Nissan are persons under the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1(d).

1215. Nissan had knowledge of the safety defects in the Class Vehicles, which it failed to disclose to Plaintiffs and the New Jersey Class members.

186

1216. As a result of their wrongful and fraudulent acts and omissions, as set forth above, pertaining to the design defect of their vehicles and the concealment of the defect, Nissan charged a higher price for its vehicles than the vehicles' true value. Nissan accordingly received a benefit from Plaintiffs and the New Jersey Class members to their detriment.

1217. Nissan appreciated, accepted, and retained the benefits conferred by Plaintiffs and the New Jersey Class members, who without knowledge of the safety defects paid a higher price for vehicles that Plaintiffs would have paid less money for had they known about the carbon monoxide defect. It would be inequitable and unjust for Nissan to retain these wrongfully obtained profits.

1218. Plaintiffs and the New Jersey Class members, therefore, are entitled to restitution and to seek an order establishing Nissan as constructive trustees of the profits unjustly obtained, plus interest.

**R.    Claims Brought on Behalf of the New York Class**

**COUNT 63: VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**

**(N.Y. Gen. Bus. Law § 349)**

**(By Plaintiff Carnevale, Individually and on Behalf of the New York Class)**

1219. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1220. Plaintiff Robert Carnevale (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the New York Class against Defendant.

1221. Plaintiff, the New York Class members, and Defendant are "persons" under N.Y. Gen. Bus. Law § 349(h), the New York Deceptive Acts and Practices Act ("NY DAPA").

1222. Defendant's actions as set forth herein occurred in the conduct of trade or commerce under the NY DAPA.

187

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

1223. The NY DAPA makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. Defendant's conduct, as set forth herein, constitutes deceptive acts or practices under this section.

1224. In the course of their business, Defendant concealed and suppressed material facts concerning the Class Vehicles. Plaintiff and New York Class members did not and could not unravel Nissan's deception on their own.

1225. Defendant thus violated the Act by, at minimum: by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

1226. Defendant engaged in misleading, false, unfair or deceptive acts or practices that violated the New York DAPA by failing to disclose and actively concealing the unsafe defect, by marketing its vehicles as reliable, safe, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, and that stood behind its vehicles after they were sold.

1227. Nissan intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the New York Class.

1228. Nissan knew or should have known that its conduct violated the New York DAPA.

1229. Defendant owed Plaintiffs a duty to disclose the illegality and public health and safety risks of the Class Vehicles because they:

    a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that contained an unsafe defect;

    b.   intentionally concealed the foregoing from regulators, Plaintiff, Class members; and/or

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

c.    made incomplete representations about the safety of the Class Vehicles generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1230. Defendant concealed the carbon monoxide defect. The value of the Class Vehicles has therefore greatly diminished. In light of the danger those vehicles present, they are now worth significantly less than they otherwise would be worth.

1231. Nissan's fraudulent concealment of the carbon monoxide defect was material to Plaintiff and the New York Class.

1232. Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the safety of the Class Vehicles and the true value of the Class Vehicles.

1233. Plaintiff and the New York Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the New York Class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiff also suffered diminished value of their vehicles, as well as lost or diminished use.

1234. Defendant had an ongoing duty to all Nissan customers to refrain from unfair and deceptive practices under the New York DAPA. All owners of Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Nissan's deceptive and unfair acts and practices made in the course of Nissan's business.

1235. Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

189

1236. As a direct and proximate result of Defendant's violations of the New York DAPA, Plaintiffs and the New York Class have suffered injury-in-fact and/or actual damage.

## COUNT 64: VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350

### (N.Y. Gen. Bus. Law § 350)

**(By Plaintiff Carnevale, Individually and on Behalf of the New York Class)**

1237.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1238. Plaintiff brings this claim on behalf of himself and the New York Class against Defendant.

1239. Defendant was engaged in the "conduct of business, trade or commerce," within the meaning of N.Y. Gen. Bus. Law § 350, the New York False Advertising Act ("NY FAA")

1240. The NY FAA makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …." N.Y. Gen. Bus. Law § 350-a.

1241. Nissan caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements and omissions that were untrue or misleading, and that were known by Nissan, or that through the exercise of reasonable care should have been known by Nissan, to be untrue and misleading to Plaintiffs and the New York class.

1242. Nissan intentionally and knowingly misrepresented and omitted material facts regarding the Class Vehicles with intent to mislead Plaintiff and the New York Class.

1243. Nissan's false advertising was likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs and New York Class members, about the unsafe nature of the carbon monoxide defect and the true value of the Class Vehicles.

1244. Nissan's violations of the NY FAA present a continuing risk to Plaintiffs and to the general public. Nissan's deceptive acts and practices affect the public interest.

1245. The Class Vehicles do not perform as advertised and contain a deadly defect, making them far less valuable than advertised.

1246. Plaintiffs and New York Class members who purchased Class Vehicles either would not have purchased them at all or paid less but for Nissan's false advertising in violation of the NY FAA. Plaintiffs and New York Class members who leased Class Vehicles either would not have leased them at all, or at a lower rate but for Nissan's false advertising in violation of the NY FAA.

1247. The Plaintiffs and the New York Class have suffered injury-in-fact and/or actual damages and ascertainable loss as a direct and proximate result of the Defendant's false advertising in violation of the NY FAA, including but not limited to purchasing or leasing a dangerous vehicle, diminished or complete lost value for the Class Vehicles they purchased or leased; lost or diminished use, enjoyment and utility of such vehicles; and annoyance, aggravation and inconvenience resulting from Defendant's violations of the NY FAA.

1248. Plaintiffs and the New York Class seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial, and (b) statutory damages in the amount of $500 each for New York class members. Because Nissan's conduct was committed willingly and knowingly, New York class members are entitled to recover three times actual damages, up to $10,000.

1249. The New York Class also seeks an order enjoining Nissan's false advertising, attorneys' fees, and any other just and proper relief under N.Y. Gen. Bus. Law § 350.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

## COUNT 65: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.Y. U.C.C. Law §§ 2-314 and 2A-212)

**(By Plaintiff Carnevale, Individually and on Behalf of the New York Class)**

1250.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1251. Plaintiff brings this claim on behalf of himself and the New York Class against Defendant.

1252. Defendant is and was at all relevant times "merchants" with respect to motor vehicles under N.Y. UCC Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

1253. With respect to leases, Defendant is and was at all relevant times "lessors" of motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

1254. The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

1255. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.Y. UCC Law §§ 2-314 and 2A-212.

1256. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that carbon monoxide pools in the vehicle.

1257. Nissan has been provided notice of these issues by numerous complaints as described herein.

1258. As a direct and proximate result of Nissan's breach of the warranties of merchantability, Plaintiff and the New York Class members have been damaged in an amount to be proven at trial.

## COUNT 66: BREACH OF EXPRESS WARRANTY

### (N.Y. U.C.C. Law §§ 2-313 and 2A-210)

**(By Plaintiff Carnevale, Individually and on Behalf of the New York Class)**

1259.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1260. Plaintiff brings this claim on behalf of himself and the New York Class against Defendant.

1261. Defendant is and was at all relevant times "merchants" with respect to motor vehicles under N.Y. UCC Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

1262. With respect to leases, Defendant is and was at all relevant times "lessors" of motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

1263. The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

1264. In connection with the purchase or lease of each one of its new vehicles, Defendant provides an express New Vehicle Limited Warranty ("NVLW") for a period of three years or 36,000 miles, whichever occurs first. Powertrain coverage is extended to five years or 60,000 miles.

1265. In addition to the written warranties Nissan issued, Nissan expressly warranted several attributes, characteristics, and qualities, as set forth above.

1266. Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the New York Class members whole and because Nissan has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1267. Accordingly, recovery by Plaintiff and the New York Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff and the New York Class members seek all remedies as allowed by law.

193

1268. Also, as alleged in more detail herein, at the time that Nissan warranted and sold the vehicles they knew that the vehicles did not conform to the warranties and were inherently defective, and Nissan wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiffs and the New York Class members were therefore induced to purchase the Class Vehicles under false and/or fraudulent pretenses.

1269. Moreover, many of the damages flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Nissan's fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs and the New York Class members' remedies would be insufficient.

1270. Nissan has been provided notice of these issues by numerous complaints as described herein.

1271. As a direct and proximate result of Nissan's breach of express warranties, Plaintiff and the other New York Class members have been damaged in an amount to be determined at trial.

**S.    Claims Brought on Behalf of the Ohio Class**

**COUNT 67: VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT**

**(Ohio Rev. Code §§ 1345.01, *et seq.*)**

**(By Plaintiff Lamont Gibson Individually and on Behalf of the Ohio Class)**

1272. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1273. Plaintiff Lamont Gibson (for the purpose of this section, "Plaintiff") brings this action on behalf of himself and the Ohio Class against Defendant.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

1274. Nissan, Plaintiffs, and the Ohio Class are "persons" within the meaning of Ohio Rev. Code § 1345.01(B). Nissan is a "supplier" as defined by Ohio Rev. Code § 1345.01(C).

1275. Plaintiffs and the Ohio Class are "consumers" as that term is defined in Ohio Rev .Code § 1345.01(D), and their purchase and leases of the Class Vehicles with the Defect Devices installed in them are "consumer transactions" within the meaning of Ohio Rev. Code § 1345.01(A).

1276. Ohio Rev. Code § 1345.02, prohibits unfair or deceptive acts or practices in

1277. connection with a consumer transaction. Ohio CSPA prohibits a supplier from (i) representing that goods have characteristics, uses or benefits which the goods do not have; (ii) representing that their goods are of a particular quality or grade that the product is not; and (iii) representing that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not.

1278. In the course of their business, Defendant concealed and suppressed material facts concerning the Class Vehicles. Plaintiff and Ohio Class members did not and could not unravel Nissan's deception on their own.

1279. Defendant thus violated the Act by, at minimum: by employing deception,

1280. deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1281. Defendant engaged in misleading, false, unfair or deceptive acts or practices that violated the Ohio CSPA by failing to disclose and actively concealing the unsafe defect, by marketing its vehicles as reliable, safe, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, and that stood behind its vehicles after they were sold.

1282. Nissan intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Ohio Class.

1283. Nissan knew or should have known that its conduct violated the Ohio CSPA.

195

1284. Defendant owed Plaintiffs a duty to disclose the illegality and public health and safety risks of the Class Vehicles because they:

    a. possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that contained an unsafe defect;

    b. intentionally concealed the foregoing from regulators, Plaintiff, Class members; and/or

    c. made incomplete representations about the safety of the Class Vehicles generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1285. Defendant concealed the carbon monoxide defect. The value of the Class Vehicles has therefore greatly diminished. In light of the danger those vehicles present, they are now worth significantly less than they otherwise would be worth.

1286. Nissan's fraudulent concealment of the carbon monoxide defect was material to Plaintiffs and the Ohio Class.

1287. Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the safety of the Class Vehicles and the true value of the Class Vehicles.

1288. Plaintiff and the Ohio Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Ohio Class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiff also suffered diminished value of their vehicles, as well as lost or diminished use.

1289. Defendant had an ongoing duty to all Nissan customers to refrain from unfair and deceptive practices under the Ohio CSPA. All owners of Class Vehicles

196

suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Nissan's deceptive and unfair acts and practices made in the course of Nissan's business.

1290. Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

1291. As a direct and proximate result of Defendant's violations of the Ohio CSPA, Plaintiffs and the Ohio Class have suffered injury-in-fact and/or actual damage.

1292. Pursuant to Ohio Rev. Code § 1345.09, Plaintiffs and the Ohio Class seek an order enjoining Nissan's unfair and/or deceptive acts or practices, actual damages - trebled, and attorneys' fees, costs, and any other just and proper relief, to the extend available under the Ohio CSPA.

## COUNT 68: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (Ohio Rev. Code Ann. §§ 1302.27 and 1310.19)
### (By Plaintiff Lamont Gibson Individually and on Behalf of the Ohio Class)

1293.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1294. Plaintiff brings this action on behalf of himself and the Ohio Class against Defendant.

1295. Defendant is and was at all relevant times "merchants" with respect to motor vehicles under Ohio Rev. Code §§ 1302.01(5) and 1310.01(A)(20), and "sellers" of motor vehicles under § 1302.01(4).

1296. With respect to leases, Defendant is and was at all relevant times "lessors" of motor vehicles under Ohio Rev. Code § 1310.01(A)(20).

1297. The Class Vehicles are and were at all relevant times "goods" within the meaning of Ohio Rev. Code §§ 1302.01(8) and 1310.01(A)(8).

1298. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ohio Rev. Code §§ 1302.27 and 1310.19.

1299. The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are inherently defective in that carbon monoxide pools in the vehicle and makes the car inherently dangerous for its intended use.

1300. Nissan has been provided notice of these issues by numerous complaints, including complaints by its own certified dealers, as described above.

1301. As a direct and proximate result of Nissan's breach of the warranties of merchantability, Plaintiff and the Ohio Class have been damaged in an amount to be proven at trial.

## COUNT 69: BREACH OF EXPRESS WARRANTY
### (Ohio Rev. Code § 1302.26, *et seq.*) (U.C.C. § 2-313))
### (By Plaintiff Lamont Gibson Individually and on Behalf of the Ohio Class)

1302. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1303. Plaintiff brings this action on behalf of himself and the Ohio Class against Defendant.

1304. Defendant is and was at all relevant times "merchants" with respect to motor vehicles under Ohio Rev. Code §§ 1302.01(5) and 1310.01(A)(20), and "sellers" of motor vehicles under § 1302.01(4).

1305. With respect to leases, Defendant is and was at all relevant times "lessors" of motor vehicles under Ohio Rev. Code § 1310.01(A)(20).

1306. The Class Vehicles are and were at all relevant times "goods" within the meaning of Ohio Rev. Code §§ 1302.01(8), and 1310.01(A)(8).

1307. In connection with the purchase or lease of each one of its new vehicles, Defendant provides an express New Vehicle Limited Warranty ("NVLW") for a period

198

of three years or 36,000 miles, whichever occurs first. Powertrain coverage is extended to five years or 60,000 miles.

1308. In addition to the written warranties Nissan issued, Nissan expressly warranted several attributes, characteristics, and qualities, as set forth above.

1309. Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the Ohio Class members whole and because Nissan has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1310. Accordingly, recovery by Plaintiffs and the Ohio Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs and the Ohio Class members seek all remedies as allowed by law.

1311. Also, as alleged in more detail herein, at the time that Nissan warranted and sold the vehicles they knew that the vehicles did not conform to the warranties and were inherently defective, and Nissan wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiffs and the Ohio Class members were therefore induced to purchase the Class Vehicles under false and/or fraudulent pretenses.

1312. Moreover, many of the damages flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Nissan's fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs and the Ohio Class members' remedies would be insufficient.

1313. Nissan has been provided notice of these issues by numerous complaints as described herein.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

1314. As a direct and proximate result of Nissan's breach of express warranties, Plaintiffs and the other Ohio Class members have been damaged in an amount to be determined at trial.

**T.    Claims Brought on Behalf of the Pennsylvania Class**

**COUNT 70: VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**

**(73 Pa. Stat. § 201-1,** *et seq.***)**

**(By Plaintiffs Laroy Gibson and Yuhas Individually and on Behalf of the Pennsylvania Class)**

1315. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1316. Plaintiffs Laroy Gibson and Michelle Yuhas (for the purpose of this section, "Plaintiffs") bring this claim on behalf of themselves and the Pennsylvania Class against Defendant.

1317. Plaintiffs are natural persons who purchased a Class Vehicle for personal, family or household purposes.

1318. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" as set forth in the statute.  73 Pa. Stat. § 201-3.

1319. Nissan engaged in unfair and deceptive acts in the conduct of trade or commerce in violation of the PUTPCPL by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and the Members of the Pennsylvania Class that the Class Vehicles suffer from a design defect (and the costs, risks, and diminished value of the vehicles as a result of this problem).  These acts and practices violate, at a minimum, the following sections of PUTPCPL § 201-2:

- Misrepresenting the source, sponsorship, approval, or certification of goods or services;

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

- Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;

- Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

- Advertising goods and services with intent not to sell them as advertised; and

- Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

1320. Nissan knew that its Class Vehicles were defectively designed or manufactured and unsuitable for their intended use of providing safe and reliable transportation.

1321. Nissan was under a duty to Plaintiffs and the Class to disclose the defective nature of the Class Vehicles and the Defect because:

    a. Nissan was in a superior position to know the true state of facts about the safety defect and associated repair costs in the Class Vehicles;

    b. Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Class Vehicles and had a dangerous safety defect until manifestation of the Defect;

    c. Nissan knew that Plaintiffs and the Class Members could not reasonably have been expected to learn or discover the Defect and the associated repair costs necessitated thereby until the manifestation of the defect.

    d. Nissan actively concealed the Defect and the associated repair costs by claiming the Defect does not exist and, in many cases, blaming Class Members.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

1322. In failing to disclose the Defect and the associated safety risks and repair costs that result from it, Nissan knowingly and intentionally concealed material facts and breached their duty not to do so.

1323. The facts concealed or not disclosed by Nissan to Plaintiffs and the Pennsylvania Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase a Class Vehicle or pay a lesser price. Had Plaintiffs and the Members of the Pennsylvania Class known about the defective nature of the Class Vehicles, they would not have purchased the Class Vehicles, would have paid less for them, or would have avoided the extensive repair costs associated therewith.

1324. Unfair or deceptive acts and practices as defined by the PUTPCPL also include "[f]ailing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made." 73 Pa. Stat. § 201-2(4)(xiv). Nissan violated the PUTPCPL by refusing to undertake measures to correct the Defect in Plaintiffs' vehicles at no cost to pursuant to the terms of the New Limited Vehicle Warranty applicable to all Class Vehicles.

1325. Nissan's failure to honor their warranty terms proximately caused injuries to Plaintiffs and other Pennsylvania Class members. Had Nissan honored their warranty, Plaintiffs and other Pennsylvania Class Members would not have incurred substantial repair costs.

1326. Pursuant to 73 Pa. Stat. § 201-9.2, Plaintiffs request that the Court grant treble damages.

**COUNT 71: BREACH OF EXPRESS WARRANTY**

**(Under Pennsylvania Law)**

**(By Plaintiffs Laroy Gibson and Yuhas Individually and on Behalf of the Pennsylvania Class)**

1327. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

202

1328. Plaintiffs bring this claim on behalf of themselves and on behalf of themselves and the Pennsylvania Class against Defendant.

1329. Nissan provided all purchasers and lessees of the Class Vehicles with the express warranties described herein, which became part of the basis of the parties' bargain. Accordingly, Nissan's warranties are express warranties under state law.

1330. In addition, Nissan made statements and/or promises to Class Members that its vehicles would be fully operational, safe, and reliable to drive.

1331. Nissan breached these warranties by selling and leasing Class Vehicles such that they were not fully operational, safe, or reliable to drive. Nissan has exacerbated the breach by failing to fix the Defect, either because Nissan failed to identify the problem or failed to provide free repairs or replacements during the applicable warranty periods.

1332. Plaintiffs notified Nissan of the breach within a reasonable time, and/or was not required to do so because affording Nissan a reasonable opportunity to cure its breaches would have been futile. Nissan has known about the Defect but chose instead to conceal it as a means of avoiding compliance with its warranty obligations.

1333. As a direct and proximate cause of Nissan's breach, Plaintiffs and the other Class Members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value. Plaintiffs and the Class Members have incurred and will continue to incur costs related to the Defect's diagnosis and repair.

1334. Any attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Nissan's warranty limitations are unenforceable because it knowingly sold a defective product without giving notice to Plaintiffs or the Pennsylvania Class.

1335. The time limits contained in Nissan's warranty period were also unconscionable and inadequate to protect Plaintiffs and Pennsylvania Class members. Among other things, Plaintiffs and Members of the Pennsylvania Class had no meaningful choice in determining these time limitations, the terms of which unreasonably

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

favored Nissan.  A gross disparity in bargaining power existed between Nissan and the Class Members because Nissan knew or should have known that the Class Vehicles were defective at the time of sale.

1336. Plaintiffs and Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Nissan's conduct.

## COUNT 72: BREACH OF IMPLIED WARRANTY
## (Under Pennsylvania Law)
## (By Plaintiffs Laroy Gibson and Yuhas Individually and on Behalf of the Pennsylvania Class)

1337.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1338. Plaintiffs bring this claim on behalf of themselves and the Pennsylvania Class against Defendant.

1339. Nissan was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Nissan knew or had reason to know of the specific use for which the Class Vehicles were purchased.

1340. Nissan provided Plaintiffs and the Members of the Pennsylvania Class with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold.  However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, inter alia, the Class Vehicles suffered from a defect at the time of sale. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

1341. Nissan impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles manufactured, supplied, distributed, and/or sold by

204

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

Nissan were safe and reliable for the purpose for which they were installed; and (ii) a warranty that the Class Vehicles would be fit for their intended use.

1342. Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the other Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

1343. Nissan's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

**U.    Claims Brought on Behalf of the South Carolina Class**

**COUNT 73: VIOLATIONS OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT**
**(S.C. Code Ann. § 39-5-10, *et seq.*)**
**(By Plaintiff Tucker Individually and on Behalf of the South Carolina Class)**

1344. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1345.  Plaintiff Doris Tucker (for the purpose of this section, "Plaintiff") brings this action on behalf of herself and the South Carolina Class against Defendant.

1346. Nissan, Plaintiffs, and the South Carolina Class are "persons" within the

1347. meaning of S.C. Code § 39-5-10(a).

1348. Nissan is engaged in "trade" or "commerce" within the meaning of S.C. Code § 39-5-10(b).

1349. The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code § 39-5-20(a).

1350. In the course of their business, Defendant concealed and suppressed material facts concerning the Class Vehicles. Plaintiff and Ohio Class members did not and could not unravel Nissan's deception on their own.

205

1351. Defendant thus violated the Act by, at minimum: by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1352. Defendant engaged in misleading, false, unfair or deceptive acts or practices that violated the South Carolina UTPA by failing to disclose and actively concealing the unsafe defect, by marketing its vehicles as reliable, safe, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, and that stood behind its vehicles after they were sold.

1353. Nissan intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the South Carolina Class.

1354. Nissan knew or should have known that its conduct violated the South Carolina UTPA.

1355. Defendant owed Plaintiffs a duty to disclose the illegality and public health and safety risks of the Class Vehicles because they:

    a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that contained an unsafe defect;

    b.    intentionally concealed the foregoing from regulators, Plaintiff, Class members; and/or

    c.    made incomplete representations about the safety of the Class Vehicles generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1356. Defendant concealed the carbon monoxide defect. The value of the Class Vehicles has therefore greatly diminished. In light of the danger those vehicles present, they are now worth significantly less than they otherwise would be worth.

1357. Nissan's fraudulent concealment of the carbon monoxide defect was material to Plaintiffs and the South Carolina Class.

206

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

1358. Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the safety of the Class Vehicles and the true value of the Class Vehicles.

1359. Plaintiff and the South Carolina Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the South Carolina Class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiff also suffered diminished value of their vehicles, as well as lost or diminished use.

1360. Defendant had an ongoing duty to all Nissan customers to refrain from unfair and deceptive practices under the South Carolina UTPA. All owners of Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Nissan's deceptive and unfair acts and practices made in the course of Nissan's business.

1361. Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

1362. As a direct and proximate result of Defendant's violations of the South Carolina UTPA, Plaintiffs and the Ohio Class have suffered injury-in-fact and/or actual damage.

1363. Pursuant to S.C. Code § 39-5-140(a), Plaintiffs and the South Carolina Class seek an order enjoining Nissan's unfair and/or deceptive acts or practices, damages, treble damages for willful and knowing violations, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the South Carolina UTPA.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

## COUNT 74: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (S.C. Code §§ 36-2-314 and 36-2A-212)

**(By Plaintiff Tucker Individually and on Behalf of the South Carolina Class)**

1364.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1365. Plaintiff brings this Count on behalf of herself and the South Carolina Class against Defendant.

1366. Defendant is and was at all relevant times "merchants" with respect to motor vehicles under S.C. Code §§ 36-2-104(1) and 36-2A-103(1)(t), and "sellers" of motor vehicles under § 36-2-103(1)(d).

1367. With respect to leases, Defendant is and was at all relevant times "lessors" of motor vehicles under S.C. Code § 36-2A-103(1)(p).

1368. The Class Vehicles are and were at all relevant times "goods" within the meaning of S.C. Code §§ 36-2-105(1) and 36-2A-103(1)(h).

1369. The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are inherently defective in that carbon monoxide pools in the vehicle and makes the car inherently dangerous for its intended use.

1370. Nissan has been provided notice of these issues by numerous complaints, including complaints by its own certified dealers, as described above.

1371. As a direct and proximate result of Nissan's breach of the warranties of merchantability, Plaintiff and the South Carolina Class have been damaged in an amount to be proven at trial.

## COUNT 75: BREACH OF EXPRESS WARRANTY
### (S.C. Code §§ 36-2-313 and 36-2A-210)

**(By Plaintiff Tucker Individually and on Behalf of the South Carolina Class)**

1372.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

1373. Plaintiff brings this action on behalf herself and the South Carolina Class against Defendant.

1374. Defendant is and was at all relevant times "merchants" with respect to motor vehicles under S.C. Code §§ 36-2-104(1) and 36-2A-103(1)(t), and "sellers" of motor vehicles under § 36-2-103(1)(d).

1375. With respect to leases, Defendant is and was at all relevant times "lessors" of motor vehicles under S.C. Code § 36-2A-103(1)(p).

1376. The Class Vehicles are and were at all relevant times "goods" within the meaning of S.C. Code §§ 36-2-105(1) and 36-2A-103(1)(h).

1377. In connection with the purchase or lease of each one of its new vehicles, Defendant provides an express New Vehicle Limited Warranty ("NVLW") for a period of three years or 36,000 miles, whichever occurs first. Powertrain coverage is extended to five years or 60,000 miles.

1378. In addition to the written warranties Nissan issued, Nissan expressly warranted several attributes, characteristics, and qualities, as set forth above.

1379. Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the South Carolina Class members whole and because Nissan has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1380. Accordingly, recovery by Plaintiffs and the South Carolina Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs and the South Carolina Class members seek all remedies as allowed by law.

1381. Also, as alleged in more detail herein, at the time that Nissan warranted and sold the vehicles they knew that the vehicles did not conform to the warranties and were inherently defective, and Nissan wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiffs and the South Carolina Class

209

members were therefore induced to purchase the Class Vehicles under false and/or fraudulent pretenses.

1382. Moreover, many of the damages flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Nissan's fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs and the South Carolina Class members' remedies would be insufficient.

1383. Nissan has been provided notice of these issues by numerous complaints as described herein.

1384. As a direct and proximate result of Nissan's breach of express warranties, Plaintiffs and the other South Carolina Class members have been damaged in an amount to be determined at trial.

## V.    Claims Brought on Behalf of the Tennessee Class

## COUNT 76: VIOLATIONS OF TENNESSEE  CONSUMER PROTECTION ACT OF 1977

## (Tenn. Code Ann. § 47-18-101, et seq.)

## (By Plaintiffs Alexander, Buchanan, McGlown, and Wagner, Individually and on Behalf of the Tennessee Class)

1385. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1386. Plaintiffs Shunsetha Alexander, Lakita Buchanan, Anthony McGlown, and Stacey Wagner (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves and the Tennessee Class against Defendant.

1387. Plaintiffs and the Tennessee Class are "natural persons" and "consumers" within the meaning of Tenn. Code § 47-18-103(2). Defendant is a "person[s]" within the meaning of Tenn. Code § 47-18-103(9).

1388. Nissan is engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tenn. Code § 47-18-103(9).

1389. The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code § 47-18-104.

1390. In the course of their business, Defendant concealed and suppressed material facts concerning the Class Vehicles. Plaintiff and Tennessee Class members did not and could not unravel Nissan's deception on their own.

1391. Defendant thus violated the Act by, at minimum: by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1392. Defendant engaged in misleading, false, unfair or deceptive acts or practices that violated the Tennessee CPA by failing to disclose and actively concealing the unsafe defect, by marketing its vehicles as reliable, safe, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, and that stood behind its vehicles after they were sold.

1393. Nissan intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Tennessee Class.

1394. Nissan knew or should have known that its conduct violated the Tennessee CPA.

1395. Defendant owed Plaintiffs a duty to disclose the illegality and public health and safety risks of the Class Vehicles because they:

    a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that contained an unsafe defect;

    b.    intentionally concealed the foregoing from regulators, Plaintiff, Class members; and/or

211

c.    made incomplete representations about the safety of the Class Vehicles generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1396. Defendant concealed the carbon monoxide defect. The value of the Class Vehicles has therefore greatly diminished. In light of the danger those vehicles present, they are now worth significantly less than they otherwise would be worth.

1397. Nissan's fraudulent concealment of the carbon monoxide defect was material to Plaintiffs and the Tennessee Class.

1398. Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the safety of the Class Vehicles and the true value of the Class Vehicles.

1399. Plaintiff and the Tennessee Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Tennessee members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiff also suffered diminished value of their vehicles, as well as lost or diminished use.

1400. Defendant had an ongoing duty to all Nissan customers to refrain from unfair and deceptive practices under the Tennessee CPA. All owners of Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Nissan's deceptive and unfair acts and practices made in the course of Nissan's business.

1401. Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

1402. As a direct and proximate result of Defendant's violations of the Tennessee CPA, Plaintiffs and the Tennessee Class have suffered injury-in-fact and/or actual damage.

1403. Pursuant to Tenn. Code § 47-18-109, Plaintiffs and the Tennessee Class seek an order enjoining Nissan's unfair and/or deceptive acts or practices, damages, treble damages for willful and knowing violations, pursuant to § 47-18-109(a)(3), punitive damages, and attorneys' fees, costs, and any other just and proper relief to the extent available under the Tennessee CPA.

## COUNT 77: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Tenn. Code §§ 47-2-314 and 47A-212)

**(By Plaintiffs Alexander, Buchanan, McGlown, and Wagner, Individually and on Behalf of the Tennessee Class)**

1404.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1405. Plaintiffs bring this Count on behalf of themselves and the Tennessee Class against Defendant.

1406. Defendant is and was at all relevant times "merchants" with respect to motor vehicles under Tenn. Code §§ 47-2-104(1) and 47-2A-103(1)(t), and "sellers" of motor vehicles under § 47-2-103(1)(d).

1407. With respect to leases, Defendant is and was at all relevant times "lessors" of motor vehicles under Tenn. Code § 47-2A-103(1)(p).

1408. The Class Vehicles are and were at all relevant times "goods" within the meaning of Tenn. Code §§ 47-2-105(1) and 47-2A-103(1)(h).

1409. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Tenn. Code §§ 47-2-314 and 47-2A-212.

1410. The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are

213

used. Specifically, the Class Vehicles are inherently defective in that carbon monoxide pools in the vehicle and makes the car inherently dangerous for its intended use.

1411. Nissan has been provided notice of these issues by numerous complaints, including complaints by its own certified dealers, as described above.

1412. As a direct and proximate result of Nissan's breach of the warranties of merchantability, Plaintiff and the Tennessee Class have been damaged in an amount to be proven at trial.

## COUNT 78: BREACH OF EXPRESS WARRANTY
### (Tenn. Code §§ 47-2-313 and 47-2A-210)
**(By Plaintiffs Alexander, Buchanan, McGlown, and Wagner, Individually and on Behalf of the Tennessee Class)**

1413.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1414. Plaintiffs bring this Count on behalf of themselves and the Tennessee Class against Defendant.

1415. Defendant is and was at all relevant times "merchants" with respect to motor vehicles under Tenn. Code §§ 47-2-104(1) and 47-2A-103(1)(t), and "sellers" of motor vehicles under § 47-2-103(1)(d).

1416. With respect to leases, Defendant is and was at all relevant times "lessors" of motor vehicles under Tenn. Code § 47-2A-103(1)(p).

1417. The Class Vehicles are and were at all relevant times "goods" within the meaning of Tenn. Code §§ 47-2-105(1) and 47-2A-103(1)(h).

1418. In connection with the purchase or lease of each one of its new vehicles Defendant provides an express New Vehicle Limited Warranty ("NVLW") for a period of three years or 36,000 miles, whichever occurs first. Powertrain coverage is extended to five years or 60,000 miles.

1419. In addition to the written warranties Nissan issued, Nissan expressly warranted several attributes, characteristics, and qualities, as set forth above.

214

1420. Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the Tennessee Class members whole and because Nissan has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1421. Accordingly, recovery by Plaintiffs and the Tennessee Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs and the Tennessee Class members seek all remedies as allowed by law.

1422. Also, as alleged in more detail herein, at the time that Nissan warranted and sold the vehicles they knew that the vehicles did not conform to the warranties and were inherently defective, and Nissan wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiffs and the Tennessee Class members were therefore induced to purchase the Class Vehicles under false and/or fraudulent pretenses.

1423. Moreover, many of the damages flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Nissan's fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs and the Tennessee Class members' remedies would be insufficient.

1424. Nissan has been provided notice of these issues by numerous complaints as described herein.

1425. As a direct and proximate result of Nissan's breach of express warranties, Plaintiffs and the other Tennessee Class members have been damaged in an amount to be determined at trial.

//

//

//

215

**W.     Claims Brought on Behalf of the Texas Class**

**COUNT 79: VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT**

**(Tex. Bus. & Com. Code § 17.41, *et seq.*)**

**(By Plaintiffs Jimenez and Montgomery Individually and on Behalf of the Texas Class)**

1426. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1427. Plaintiffs Sarai Jimenez and James Montgomery (for the purpose of this section, "Plaintiffs") bring this claim on behalf of themselves and the Texas Class against Defendant.

1428. Nissan's above-described acts and omissions constitute false, misleading, or deceptive acts or practices under the Texas Deceptive Trade Practices–Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, et seq. ("Texas DTPA").

1429. By failing to disclose and actively concealing the dangerous risk of carbon monoxide defect in the Class Vehicles, Nissan engaged in deceptive business practices prohibited by the Texas DTPA, including (1) representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that the Class Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising the Class Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving the Class Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) failing to disclose information concerning the Class Vehicles with the intent to induce consumers to purchase or lease the Class Vehicles.

1430. As alleged above, Nissan made numerous material statements about the safety and reliability of the Class Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Nissan's unlawful advertising and representations as a whole.

216

1431. Nissan's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Texas Class members, about the true safety and reliability of the Class Vehicles.

1432. In purchasing or leasing their vehicles, Plaintiffs relied on Nissan's misrepresentations and/or omissions with respect of the safety and reliability of the Class Vehicles. Nissan's representations turned out not to be true because the Class Vehicles can unexpectedly and dangerously accumulate carbon monoxide. Had the Plaintiffs known these facts, they would not have purchased or leased the Class Vehicles and/or paid as much for them.

1433. Nissan also breached express and implied warranties to Plaintiffs and the Texas Class, as set out above, and are, therefore liable to Plaintiffs and the Texas Class for damages under §§ 17.50(a)(2) and 17.50(b) of the Texas DTPA. Nissan's actions also constitute an unconscionable action or course of action under § 17.50(a)(3) of the Texas DTPA.

1434. Plaintiffs and the Texas Class sustained damages as a result of Nissan's unlawful acts and are, therefore, entitled to damages and other relief provided for under § 17.50(b) of the Texas DTPA. Because Nissan's conduct was committed knowingly and/or intentionally, Plaintiffs and the Texas Class are entitled to treble damages.

1435. For those Plaintiffs and Texas Class members who wish to rescind their purchases, they are entitled under § 17.50(b)(4) to rescission and other relief necessary to restore any money or property that was acquired from them based on violations of the Texas DTPA.

1436. Plaintiffs and the Texas Class also seek court costs and attorneys' fees under § 17.50(d) of the Texas DTPA.

//
//
//
//

217

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

## COUNT 80: BREACH OF EXPRESS WARRANTY

### (Tex. Bus. & Com. Code § 2.313)

### (By Plaintiffs Jimenez and Montgomery Individually and on Behalf of the Texas Class)

1437.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1438. Plaintiffs bring this claim on behalf of themselves and the Texas Class against Defendant.

1439. Nissan is and was, at all relevant times, a merchant with respect to motor vehicles under Tex. Bus. & Com. Code § 2.104.

1440. In the course of selling the Class Vehicles, Nissan expressly warranted in writing that the Class Vehicles were covered by a 36,000-mile warranty. Powertrain coverage is extended to five years or 60,000 miles.

1441. Nissan breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Nissan.  Nissan has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1442. In addition to its written warranties, Nissan expressly warranted several attributes, characteristics and qualities as set forth above.

1443. The limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the Texas Class members whole, and because Nissan has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

1444. Accordingly, recovery by Plaintiffs and the Texas Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1445. Also, as alleged in more detail herein, at the time that Nissan warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were

218

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

inherently defective, and Nissan wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiffs and the Texas Class members were therefore induced to purchase the vehicles under false and/or fraudulent pretenses. The enforcement under these circumstances of any limitations whatsoever precluding the recovery of incidental and/or consequential damages is unenforceable.

1446. Moreover, many of the damages flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Nissan's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the Class' remedies would be insufficient to make Plaintiffs and the Texas Class members whole.

1447. Finally, due to Nissan's breach of warranties as set forth herein, Plaintiffs and the Class assert as an additional and/or alternative remedy, as set forth in Tex. Bus. & Com. Code § 2.711, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class of the purchase price of all vehicles currently owned and for such other incidental and consequential damages as allowed under Tex. Bus. & Com. Code §§ 2.711 and 2.608.

1448. Nissan was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the Texas Class.

1449. As a direct and proximate result of Nissan's breach of express warranties, Plaintiffs and the Members of the Texas Class have been damaged in an amount to be determined at trial.

//
//
//
//
//

219

## COUNT 81: BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

### (Tex. Bus. & Com. Code § 2.314)

### (By Plaintiffs Jimenez and Montgomery Individually and on Behalf of the Texas Class)

1450. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1451. Plaintiffs bring this claim on behalf of themselves and the Texas Class against Defendant.

1452. Nissan is and was at all relevant times a merchant with respect to motor vehicles under Tex. Bus. & Com. Code § 2.104.

1453. A warranty that the Class Vehicles were in merchantable condition was implied by law, pursuant to Tex. Bus. & Com. Code § 2.314.

1454. The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that there are defects in the vehicle control systems that permit sudden unintended acceleration to occur.

1455. Nissan has been provided notice of these issues by numerous complaints, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the Texas Class members.

1456. As a direct and proximate result of Nissan's breach of the warranties of merchantability, Plaintiffs and the Texas Class members have been damaged in an amount to be proven at trial.

//
//
//
//
//

220

**X.    Claims Brought on Behalf of the Virginia Class**

**COUNT 82: VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT**

**(Va. Code Ann. §§ 59.1-196, et seq.)**

**(By Plaintiff Gerson Individually and on Behalf of the Virginia Class)**

1457. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1458. Plaintiff Ursula Gerson (for the purpose of this section, "Plaintiff") brings this action on behalf of herself and the Virginia Class against Defendant.

1459. Defendants, Plaintiff, and the Virginia Class are "persons" within the meaning of Va. Code § 59.1-198.

1460. Nissan is a "supplier" within the meaning of Va. Code § 59.1-198.

1461. The Virginia Consumer Protection Act ("Virginia CPA") makes unlawful "fraudulent acts or practices." Va. Code § 59.1-200(A).

1462. In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Plaintiff and Virginia Class members did not and could not unravel Nissan's deception on their own.

1463. Defendants thus violated the Act by, at minimum: by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

1464. Defendants engaged in misleading, false, unfair or deceptive acts or practices that violated the Nissan CPA by failing to disclose and actively concealing the unsafe defect, by marketing its vehicles as reliable, safe, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, and that stood behind its vehicles after they were sold.

1465. Nissan intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the Virginia Class.

221

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

1466. Nissan knew or should have known that its conduct violated the Virginia CPA.

1467. Defendants owed Plaintiffs a duty to disclose the illegality and public health and safety risks of the Class Vehicles because they:

      a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that contained an unsafe defect;

      b.    intentionally concealed the foregoing from regulators, Plaintiff, Class members; and/or

      c.    made incomplete representations about the safety of the Class Vehicles generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1468. Defendants concealed the carbon monoxide defect. The value of the Class Vehicles has therefore greatly diminished. In light of the danger those vehicles present, they are now worth significantly less than they otherwise would be worth.

1469. Nissan's fraudulent concealment of the carbon monoxide defect was material to Plaintiff and the Virginia Class.

1470. Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the safety of the Class Vehicles and the true value of the Class Vehicles.

1471. Plaintiff and the Virginia Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Virginia members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiff also suffered diminished value of their vehicles, as well as lost or diminished use.

1472. Defendants had an ongoing duty to all Nissan customers to refrain from unfair and deceptive practices under the Virginia CPA. All owners of Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Nissan's deceptive and unfair acts and practices made in the course of Nissan's business.

1473. Defendants' violations present a continuing risk to Plaintiff as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1474. As a direct and proximate result of Defendants' violations of the Virginia CPA, Plaintiff and the Virginia Class have suffered injury-in-fact and/or actual damage.

1475. Pursuant to Va. Code § 59.1-204(A)–(B), Plaintiff and the Virginia Class are entitled to the greater of actual damages or $500 for each Virginia Class member, attorneys' fees, and costs. Because Nissan's actions were willful, Plaintiffs and the Virginia Class should each receive the greater of treble damages or $1,000. *Id.*

## COUNT 83: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (Va. Code §§ 8.2-314 and 8.2A-212)

### (By Plaintiff Gerson Individually and on Behalf of the Virginia Class)

1476.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1477. Plaintiff brings this Count on behalf of herself and the Virginia Class against Defendant.

1478. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Va. Code § 8.2-104(1) and 8.2A-103(1)(t), and "sellers" of motor vehicles under § 8.2-103(1)(d).

1479. Defendants are and were at all relevant times "lessors" of motor vehicles under Va. Code § 8.2A-103(1)(p).

1480. The Class Vehicles are and were at all relevant times "goods" within the meaning of Va. Code §§ 8.2-105(1) and 8.2A-103(1)(h).

223

1481. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Va. Code §§ 8.2-314 and 8.2A-212.

1482. The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that there are defects in the vehicle control systems that permit sudden unintended acceleration to occur.

1483. Nissan has been provided notice of these issues by numerous complaints, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the Virginia Class members.

1484. As a direct and proximate result of Nissan's breach of the warranties of merchantability, Plaintiffs and the Virginia Class members have been damaged in an amount to be proven at trial.

## COUNT 84: BREACH OF EXPRESS WARRANTY
### (Va. Code §§ 8.2-313 and 8.2A-210)
### (By Plaintiff Gerson Individually and on Behalf of the Virginia Class)

1485. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1486. Plaintiff brings this Count on behalf of herself and the Virginia Class against Defendant.

1487. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Va. Code § 8.2-104(1) and 8.2A-103(1)(t), and "sellers" of motor vehicles under § 8.2-103(1)(d).

1488. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Va. Code § 8.2A-103(1)(p).

1489. The Class Vehicles are and were at all relevant times "goods" within the meaning of Va. Code §§ 8.2-105(1) and 8.2A-103(1)(h).

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

1490. In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express New Vehicle Limited Warranty ("NVLW") for a period of three years or 36,000 miles, whichever occurs first.

1491. Nissan breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Nissan. Nissan has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1492. In addition to its written warranties, Nissan expressly warranted several attributes, characteristics and qualities as set forth above.

1493. The limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the Virginia Class members whole, and because Nissan has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

1494. Accordingly, recovery by Plaintiff and the Virginia Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1495. Also, as alleged in more detail herein, at the time that Nissan warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Nissan wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles. Plaintiffs and the Virginia Class members were therefore induced to purchase the vehicles under false and/or fraudulent pretenses. The enforcement under these circumstances of any limitations whatsoever precluding the recovery of incidental and/or consequential damages is unenforceable.

1496. Moreover, many of the damages flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Nissan's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

limited remedy within a reasonable time, and any limitation on Plaintiffs' and the Class' remedies would be insufficient to make Plaintiff and the Virginia Class members whole.

1497. Finally, due to Nissan's breach of warranties as set forth herein, Plaintiff and the Class assert as an additional and/or alternative remedy for a revocation of acceptance of the goods, and for a return to Plaintiff and to the Class of the purchase price of all vehicles currently owned and for such other incidental and consequential damages.

1498. Nissan was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiff and the Virginia Class.

1499. As a direct and proximate result of Nissan's breach of express warranties, Plaintiff and the Members of the Virginia Class have been damaged in an amount to be determined at trial.

**Y.     Claims Brought on Behalf of the Washington Class**

**COUNT 85: VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT**

**(Wash. Rev. Code Ann. § 19.86.010, et seq.)**

**(By Plaintiff Taylor Individually and on Behalf of the Washington Class)**

1500. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1501. Plaintiff Rona Taylor (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of herself and the Washington Class against Defendant.

1502. Nissan, Plaintiff, and the Washington Class members are "persons" within the meaning of Washington Revised Code § 19.86.010(2).

1503. Nissan is engaged in "trade" or "commerce" within the meaning of Washington Revised Code § 19.86.010(2).

1504. The Washington Consumer Protection Act ("Washington CPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

226

1505. In the course of their business, Nissan participated in deceptive trade practices that violated the Washington CPA, as described above and below. Nissan is directly liable for these violations of law.

1506. Nissan failed to disclose and actively concealed the dangerous risk of carbon monoxide in the Class Vehicles.

1507. Nissan engaged in deceptive trade practices prohibited by the Washington CPA, including (1) knowingly making a false representation as to the characteristics, uses, and benefits of the Class Vehicles that had the capacity or tendency to deceive Plaintiff and the Washington Class members; (2) representing that the Class Vehicles are of a particular standard, quality, and grade even though Nissan knew or should have known they are not; (3) advertising the Class Vehicles with the intent not to sell them as advertised; and (4) failing to disclose material information concerning the Class Vehicles that was known to Nissan at the time of advertisement or sale with the intent to induce Plaintiff and the Washington Class members to purchase or lease the Defective Vehicles.

1508. Nissan knew that the Class Vehicles were defectively designed or manufactured, and the cabins could fill with carbon monoxide, would fail without warning, and was not suitable for its intended use. Nissan, nevertheless, failed to warn Plaintiff or the Washington Class members about these inherent dangers despite having a duty to do so.

1509. Nissan had the duty to Plaintiff and the Washington Class members to disclose the carbon monoxide defect and the defective nature of the Class Vehicles because:

    a.    Nissan was in a superior position to know the true state of facts about the carbon monoxide defect and associated repair costs in the Class Vehicles;

    b.    Plaintiff and the Washington Class members could not reasonably have been expected to learn or discover that the Class Vehicles had dangerous defects until manifestation of the defects;

227

c.   Nissan knew that Plaintiff and the Washington Class members could not reasonably have been expected to learn about or discover the carbon monoxide defect and its associated repair costs; and

d.   Nissan actively concealed the carbon monoxide defect, its causes, and resulting effects.

1510. Nissan's practices significantly affected the public as consumers of the Class Vehicles, which pose an unreasonable risk of death or serious bodily injury to Plaintiff and the Washington Class members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to filling with carbon monoxide.

1511.  Whether or not a vehicle fills with carbon monoxide is a fact a reasonable consumer would consider important in selecting a vehicle to purchase or lease. When Plaintiff and the Washington Class members bought a Class Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would have not fill with carbon monoxide.

1512. Nissan's deceptive practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Washington Class members, about the true safety and reliability of the Class Vehicles.

1513. By intentionally failing to disclose material information regarding the Class Vehicles, Nissan engaged in an unfair or deceptive act or practice, in that Nissan's practices were immoral, unethical, unscrupulous, or substantially injurious to consumers.

1514. Nissan's acts and practices were deceptive in the sense that they had the capacity or tendency to deceive, because they induced Plaintiff and the Washington Class members to purchase the Class Vehicles when they would not have done so, or would have paid materially less, had they been aware of the information Nissan withheld.

1515. Nissan's acts and practices proximately caused actual injury to Plaintiff and the other Washington Class members, as Plaintiff would not have purchased the Class Vehicles, or would have paid materially less for the Class Vehicles, if not for Nissan's misrepresentations and omissions.

228

1516. Nissan had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the Washington CPA in the course of its business.

1517. Nissan's violations present a continuing risk to Plaintiff as well as to the general public. Nissan's unlawful acts and practices complained of herein affect the public interest.

1518. Pursuant to Washington Revised Code § 19.86.090, Plaintiff and the Washington Class seek an order enjoining Nissan's unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Washington CPA. Because Nissan's actions were willful and knowing, Plaintiffs' damages should be trebled. *Id.*

**COUNT 86: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Wash. Rev. Code §§ 62A.2-313 and 62A.2A-210)**

**(By Plaintiff Taylor Individually and on Behalf of the Washington Class)**

1519.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1520. Plaintiff brings this cause of action on behalf of herself and the Washington Class against Defendant.

1521. Nissan, Plaintiff, and the Washington Class are "persons" within the meaning of Washington Revised Code § 19.86.010(2).

1522. Nissan is engaged in "trade" or "commerce" within the meaning of Washington Revised Code § 19.86.010(2).

1523. The Washington Consumer Protection Act ("Washington CPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

1524. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Washington Revised Code §§ 62A.2-314 and 62A.2A-212.

229

1525. The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are inherently defective in that cabins fill with carbon monoxide.

1526. Nissan has been provided notice of these issues by numerous complaints.

1527. As a direct and proximate result of Nissan's breach of the warranties of merchantability, Plaintiff and the Washington Class have been damaged in an amount to be proven at trial.

## COUNT 87: BREACH OF EXPRESS WARRANTY
### (Wash. Rev. Code §§ 62A.2-313 and 62A.2A-210)
### (By Plaintiff Taylor Individually and on Behalf of the Washington Class)

1528.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1529. Plaintiff brings this cause of action on behalf of herself and the Washington Class against Defendant.

1530. Nissan is and was at all relevant times a "merchant" with respect to motor vehicles under Washington Revised Code §§ 62A.2-104(1) and 62A.2A-103(1)(t), and a "seller" of motor vehicles under § 2.103(a)(4).

1531. With respect to leases, Nissan is and was at all relevant times "lessors" of motor vehicles under Washington Revised Code § 62A.2A-103(1)(p).

1532. The Class Vehicles are and were at all relevant times "goods" within the meaning of Washington Revised Code §§ 62A.2-105(1) and 62A.2A-103(1)(h).

1533. In the course of selling the Class Vehicles, Nissan expressly warranted in writing that the Class Vehicles were covered by a warranty, as set forth above.

1534. Nissan breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Nissan. Nissan has not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

1535. In addition to the Nissan's express warranty, Nissan expressly warranted several attributes, characteristics, and qualities, as set forth above.

1536. Furthermore, the limited warranty of repair and/or adjustments to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Washington Class members whole, and because Nissan has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1537. Accordingly, recovery by Plaintiff and the Washington Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff will seek all remedies as allowed by law.

1538. Also, as alleged in more detail herein, at the time that  Nissan warranted and sold the vehicles they knew that the vehicles did not conform to the warranties and were inherently defective, and Nissan wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Class Vehicles.

1539. Moreover, many of the damages flowing from the purchase and use of the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on available remedies would be insufficient to make Plaintiff and the Washington Class members whole.

1540. Accordingly, recovery by Plaintiffs and the other Washington Class members is not restricted to the limited warranty promising to repair and/or correct a manufacturing defect, and Plaintiff, individually and on behalf of the other Washington Class members, seeks all remedies as allowed by law.

1541. Also, as alleged in more detail herein, at the time Nissan warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Nissan had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Plaintiffs and the other

231

Washington Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1542. Finally, because of Nissan's breach of warranty as set forth herein, Plaintiff and the other Washington Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the other Washington Class members of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1543. Nissan has been provided notice of these issues by numerous complaints, including complaints by its own certified dealers, as described above.

1544. As a direct and proximate result of Nissan's breach of the warranties of merchantability, Nissan and the Washington Class have been damaged in an amount to be proven at trial.

## COUNT 88: FRAUDUENT CONCEALMENT AND/OR OMISSION
### (Based on Washington Law)

### (By Plaintiff Taylor Individually and on Behalf of the Washington Class)

1545. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1546. Plaintiff brings this cause of action on behalf of herself and the Washington Class against Defendant.

1547. As set forth above, Nissan concealed and/or suppressed material facts concerning the safety of their vehicles, which they were legally obligated to disclose.

1548. Nissan had a duty to disclose defects in the Class Vehicles' braking systems because Nissan consistently marketed the Class Vehicles as safe and proclaimed that safety is one of Nissan's highest corporate priorities. Once Nissan made representations to the public about safety, it was under a duty to disclose these omitted facts because where one does speak one must speak the whole truth and not conceal any facts which

232

materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

1549. Nissan made material omissions concerning a presently existing or past fact in that, for example, Nissan did not fully and truthfully disclose to its customers the true nature of the carbon monoxide defect which was not readily discoverable by them until many years after purchase or lease of the Class Vehicles. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

1550. In addition, Nissan had a duty to disclose these omitted material facts because they were known and/or accessible only to Nissan who had superior knowledge and access to the facts, and Nissan knew they were not known to or reasonably discoverable by Plaintiff and the Washington Class members. These omitted facts were material because they directly impacted the safety of the Class Vehicles.

1551. Nissan was in exclusive control of the material facts and such facts were not known to the public or the Washington Class members. Nissan also possessed exclusive knowledge of the defects rendering Class Vehicles inherently more dangerous and unreliable than similar vehicles.

1552. Nissan actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and the Washington Class members to purchase the defective Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

1553. Plaintiff and the Washington Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiff and the Washington Class members were justified. Nissan was in exclusive control of the material facts and such facts were not known to the public or to Plaintiff and the Washington Class members.

1554. Plaintiff and the Washington Class members reasonably relied on these omissions and suffered damages as a result.

233

1555. Nissan still has not made full and adequate disclosure and continues to defraud Plaintiff and the Washington Class.

1556. As a result of the concealment and/or suppression of the facts, Plaintiff and the Washington Class members sustained damage. Should Plaintiff and/or other Washington Class members seek to affirm the sale, these damages include the difference between the actual value of that which Plaintiff and/or such Washington Class members paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. Should Plaintiff and/or other Washington Class members seek to rescind the purchase, then Plaintiff and such Washington Class members are entitled to restitution and consequential damages.

1557. Nissan's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights and wellbeing of Plaintiff and the Washington Class members, for the purpose of enriching Nissan. Nissan's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof at trial.

## COUNT 89: UNJUST ENRICHMENT

### (Based on Washington Law)

### (By Plaintiff Taylor Individually and on Behalf of the Washington Class)

1558.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1559. Plaintiff brings this cause of action on behalf of herself and the Washington Class against Defendant.

1560. As a result of its wrongful and fraudulent acts and omissions, as set forth above, pertaining to the Class Vehicles, Nissan charged a higher price for the Class Vehicles than Plaintiff otherwise would have paid, and thus obtained monies which rightfully belong to Plaintiff and to Washington Class members.

234

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

1561. Nissan knowingly enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and the Washington Class members, each of whom paid a higher price for vehicles than they would have paid had they known the true facts regarding the condition of the Class Vehicles' braking systems.

1562. Plaintiff and the Washington Class members, therefore, are entitled to restitution and seek an order establishing Nissan as constructive trustees of the profits unjustly obtained, plus interest.

## X.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

A.    Determine that the claims alleged herein may be maintained as a class action, and issue an order certifying one or more Classes as defined above;

B.    Appoint Plaintiffs as the representatives of the Classes and their counsel as Class counsel;

C.    Award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiffs and the Class Members are entitled;

D.    Grant all relief available under the laws of California, Alabama, Arkansas, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Kansas, Illinois, Louisiana, Maryland, Michigan, Mississippi, Missouri Nevada, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, South Carolina, Tennessee, Texas, Virginia, and Washington;

E.    Award pre-judgment and post-judgment interest on such monetary relief;

F.    Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Nissan to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class Members with appropriate curative notice regarding the existence and cause of the Defect;

235

1        G.     Award reasonable attorneys' fees and costs;

2        H.     Grant such further relief that this Court deems appropriate.

3

4    Dated: January 6, 2021              Respectfully submitted,

5                                     Bailey & Glasser LLP

6

7                                     By: /s/ *Todd A. Walburg*

8                                        Todd A. Walburg
        twalburg@baileyglasser.com

9            **Bailey & Glasser LLP**
        1999 Harrison Street, Suite 660

10            Oakland, CA 94612
        Telephone: (510) 272-8000

11            Facsimile: (510) 463-0291

12

13            C. Brooks Cutter (SBN 121407)
        bcutter@cutterlaw.com

14            John R. Parker, Jr. (SBN 257761)
        jparker@cutterlaw.com

15            **Cutter Law P.C.**

16            401 Watt Avenue
        Sacramento, CA 95864

17            Telephone: (916) 290-9400

18

19            David C. Wright (SBN 177468)

20            dcw@mccunewright.com
        **McCune Wright Arevalo LLP**

21            3281 Guasti Road, Suite 100

22            Ontario, California 91761

23            Telephone: (909) 557-1250
        Facsimile: (909) 557-1275

24

25            Benjamin L. Bailey (Pro Hac Vice)

26            bbailey@baileyglasser.com
        Eric B. Snyder (Pro Hac Vice)

27            esnyder@baileyglasser.com

28            Jonathan D. Boggs (Pro Hac Vice)

236

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

jboggs@baileyglasser.com
**Bailey & Glasser LLP**
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110

Donald H. Slavik (Pro Hac Vice)
dslavik@slavik.us
**Slavik Law Firm, LLC**
2955 Village Drive, Suite 16
Steamboat Springs, Colorado 80487
Telephone: (970) 457-1011
Facsimile: (267) 878-7697

*Attorneys for Plaintiffs and
the Putative Class*

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: January 6, 2021                    Respectfully submitted,

Bailey & Glasser LLP

By: /s/ *Todd A. Walburg*
    Todd A. Walburg
    twalburg@baileyglasser.com
    **Bailey & Glasser LLP**
    1999 Harrison Street, Suite 660
    Oakland, CA 94612
    Telephone: (510) 272-8000
    Facsimile: (510) 463-0291

    C. Brooks Cutter (SBN 121407)
    bcutter@cutterlaw.com
    John R. Parker, Jr. (SBN 257761)
    jparker@cutterlaw.com

237

**Cutter Law P.C.**
401 Watt Avenue
Sacramento, CA 95864
Telephone: (916) 290-9400

David C. Wright (SBN 177468)
dcw@mccunewright.com
**McCune Wright Arevalo LLP**
3281 Guasti Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

Benjamin L. Bailey (Pro Hac Vice)
bbailey@baileyglasser.com
Eric B. Snyder (Pro Hac Vice)
esnyder@baileyglasser.com
Jonathan D. Boggs (Pro Hac Vice)
jboggs@baileyglasser.com
**Bailey & Glasser LLP**
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110

Donald H. Slavik (Pro Hac Vice)
dslavik@slavik.us
**Slavik Law Firm, LLC**
2955 Village Drive, Suite 16
Steamboat Springs, Colorado 80487
Telephone: (970) 457-1011
Facsimile: (267) 878-7697

*Attorneys for Plaintiffs and
the Putative Class*

238

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including counsel for Defendant.

*/s/ Todd A. Walburg*

Todd A. Walburg

239

Second Amended Class Action Complaint
Case No. SACV 20-00492-JLS (JDEx)